JAMES L. DAY (WSBA #20474)
THOMAS A. BUFORD (WSBA #52969)
RICHARD B. KEETON (WSBA #51537)
BUSH KORNFELD LLP
601 UNION STREET, SUITE 5000
SEATTLE, WA 98101
Tel: (206) 292-2110
Emails: jday@bskd.com, tbuford@bskd.com,
rkeeton@bskd.com

HONORABLE CHRISTOPHER M. ALSTON

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re | Chapter 11 |
| B-1208 PINE, LLC, | Case No. 24-10088-CMA |
| Debtor. | **NOTICE OF FILING OF REDLINE VERSIONS OF AMENDED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT FOR DEBTOR'S AMENDED PLAN OF LIQUIDATION** |

TO:            THE CLERK OF THE COURT
AND TO:     THE HONORABLE CHRISTOPHER M. ALSTON
AND TO:     PARTIES-IN-INTEREST

**PLEASE TAKE NOTICE** that on September 16, 2024, B-1208 Pine, LLC (the "Debtor"),

debtor and debtor in possession in the above-captioned chapter 11 case, filed its *Debtor's Plan of*

*Liquidation* [Docket No. 164] (the "Liquidation Plan").

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit A** is redlined version

of the *Debtor's Amended Plan of Liquidation* (the "Amended Liquidation Plan"), detailing the

revisions made from the Liquidation Plan to the Amended Liquidation Plan to reflect the Debtor's

proposed revisions in response to concerns raised by the Office of the U.S. Trustee to the Liquidation

Plan.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hj16j6016v

Case 24-10088-CMA   Doc 190   Filed 10/16/24   Ent. 10/16/24 15:42:27   Pg. 1 of 38

**PLEASE TAKE FURTHER NOTICE** that on September 16, 2024, the Debtor filed its *Disclosure Statement for Debtor's Plan of Liquidation* [Docket No. 165] (the "Disclosure Statement").

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit B** is redlined version of the *Disclosure Statement for Debtor's Amended Plan of Liquidation* (the "Amended Disclosure Statement"), detailing the revisions made from the Disclosure Statement to the Amended Disclosure Statement to reflect the Debtor's proposed revisions in response to concerns raised by the Office of the U.S. Trustee to the Disclosure Statement.

DATED this 16th day of October, 2024.

BUSH KORNFELD LLP

By  */s/ Richard B. Keeton*
    James L. Day, WSBA #20474
    Richard B. Keeton, WSBA #51537
Attorneys for the Debtor

NOTICE OF FILING OF REDLINED VERSIONS OF SECOND
AMENDED CHAPTER 11 PLAN OF REORGANIZATION AND
SECOND REVISED DISCLOSURE STATEMENT – Page 2

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hj16j6016v

# EXHIBIT A

**Redlined Amended Liquidation Plan**

JAMES L. DAY (WSBA #20474)     HONORABLE CHRISTOPHER M. ALSTON
THOMAS A. BUFORD (WSBA #52969)
RICHARD B. KEETON (WSBA #51537)
BUSH KORNFELD LLP
601 UNION STREET, SUITE 5000
SEATTLE, WA 98101
Tel: (206) 292-2110
Emails: jday@bskd.com, tbuford@bskd.com,
rkeeton@bskd.com

## UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re | Chapter 11 |
| B-1208 PINE, LLC, | Case No. 24-10088-CMA |
| Debtor. | **DEBTOR'S AMENDED PLAN OF LIQUIDATION** |

 Debtor B-1208 Pine, LLC (the "Debtor"), debtor and debtor in possession in the above-captioned chapter 11 bankruptcy case, proposes this *Debtor's Amended Plan of Liquidation* (the "Plan") pursuant to Subchapter II of Chapter 11 of the Bankruptcy Code.

## ARTICLE I.
### DISCLOSURE STATEMENT

 A. The Debtor has filed a Disclosure Statement pursuant to 11 U.S.C. § 1125 and Bankruptcy Rule 3016(c). The Disclosure Statement has been approved by the Bankruptcy Court prior to this Plan being submitted to Creditors. The Disclosure Statement provides useful information to aid and assist Creditors in voting on the Plan. YOU ARE URGED TO READ THE DISCLOSURE STATEMENT WITH CARE IN EVALUATING THE IMPACT OF THE PLAN UPON YOUR CLAIMS.

## ARTICLE II.
### DEFINITION OF TERMS

**A.** **Definitions**

 A term used in this Plan that is not defined below and that is defined in the Bankruptcy Code shall have the meaning ascribed in the Bankruptcy Code. When used in this Plan, the following terms shall have the meanings specified below, unless the context otherwise requires:

DEBTOR'S AMENDED PLAN OF LIQUIDATION – Page 1

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1.    <u>Administrative Expense Claim</u>:  An Allowed Claim entitled to priority under § 507(a)(2) of the Bankruptcy Code, including (a) Claims incurred by the Debtor since the Petition Date and allowed by the Court of a type described in § 503(b) of the Code; (b) all Allowed Claims of Professional Persons pursuant to §§ 330 and 331 of the Code and Bankruptcy Rule 2016; and (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930.

2.    <u>Allowed Claim</u>:  Any Claim in the amount of and of the priority classification set forth in the proof of such Claim that has been filed timely in the Bankruptcy Case, or in the absence of such proof, as set forth in the Debtor's Schedules of liabilities filed in the Bankruptcy Case, unless:

    (i) such Claim has been listed in such Schedules as disputed, contingent, or unliquidated, in which case such Claim shall be allowed only in such amount and such classification as is authorized by Final Order of the Bankruptcy Court;

    (ii) such Claim has been objected to or is objected to after Confirmation, in which case such claim is authorized by Final Order of the Bankruptcy Court; or,

    (iii) such Claim has been paid in full, withdrawn, or otherwise deemed satisfied in full.

3.    <u>Avoidance Actions</u>:  Any Claim or cause of action of the Estate arising out of or maintainable pursuant to Chapter V of the Bankruptcy Code or under any other similar applicable law.

4.    <u>Ballot</u>:  The form for acceptance or rejection of the Plan distributed to those Creditors entitled to vote on the Plan.

5.    <u>Bankruptcy Case</u>:  The chapter 11 case of the Debtor pending before the Bankruptcy Court under Case No. 24-10088-CMA.

6.    <u>Bankruptcy Code or Code</u>:  The Bankruptcy Code enacted November 6, 1978, as set forth in Title 11 of the United States Code, and as amended thereafter.

7.    <u>Bankruptcy Court</u> or <u>Court</u>:  The United States Bankruptcy Court for the Western District of Washington, at Seattle, before which the Bankruptcy Case is pending, or if that Court ceases to exercise jurisdiction over the Bankruptcy Case, the Court that does exercise jurisdiction.

8.    <u>Bankruptcy Rules</u>:  The Federal Rules of Bankruptcy Procedure.

9.    <u>Business Day</u>:  Any day except Saturday, Sunday or a "legal holiday" as defined in Bankruptcy Rule 9006(a)(6).

10.    <u>Cash</u>:  Cash or cash equivalents including, but not limited to, bank deposits, wire transfers, checks, and other similar items.

11.    <u>Cause(s) of Action</u>: Has the meaning as set forth in Article VII.G.1 of this Plan.

12.    <u>Claim</u>:  A claim, other than an Unclassified Claim, as defined in § 101(5) of the Bankruptcy Code.

---

DEBTOR'S <u>AMENDED</u> PLAN OF LIQUIDATION – Page 2

Bush Kornfeld llp
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hj01tm015s

13. <u>Claims Bar Date</u>: April 25, 2024, the deadline for filing Proofs of Claim in this Bankruptcy Case by all Persons other than Governmental Units; and May 27, 2024, the deadline for filing Proofs of Claim by Governmental Units.

14. <u>Class</u>:  A class of Claims or Interests as defined in Article III of this Plan.

15. <u>Confirmation</u>:  The entry of the Confirmation Order by the Bankruptcy Court.

16. <u>Confirmation Order</u>: The order of the Bankruptcy Court that confirms the Plan.

17. <u>Creditor</u>:  A "creditor" within the meaning of § 101(10) of the Bankruptcy Code.

18. <u>Debtor</u>:  B-1208 Pine, LLC, the debtor in possession in this Bankruptcy Case.

19. <u>Disbursing Agent</u>:  The entity responsible for making the required disbursement under the Plan following the Effective Date.

20. <u>Disputed Claim</u>:  A filed or scheduled Claim of an alleged Creditor that was listed in the Debtor's Schedules as "disputed," and which has not subsequently been allowed, or as to which a party-in-interest has filed an objection.

21. <u>District Court</u>:  The U.S. District Court for the Western District of Washington.

22. <u>Docket No.</u>:  The identifying number of the relevant document as reflected on the docket for the Bankruptcy Case that is maintained by the Bankruptcy Court.

23. <u>Effective Date</u>:  The first Business Day that is at least thirty (30) Business Days following the entry of the Confirmation Order.

24. <u>Entity</u>:  An "entity" as defined in § 101(15) of the Bankruptcy Code.

25. <u>Equity Interest</u>:  An equity interest in the Debtor of any class, whether preferred or common.

26. <u>Estate</u>:  The Estate created for the Debtor pursuant to § 541 of the Bankruptcy Code.

27. <u>Exculpated Parties</u>:  The Debtor, and each of its ~~members,~~ attorneys, consultants, financial advisors, accountants, and other advisors and agents (acting in such capacity).

28. <u>Final Order</u>:  An order of any court as to which all appeal rights have either expired or been exhausted.

29. <u>Governmental Unit</u>:  A "governmental unit" as defined in § 101(27) of the Bankruptcy Code.

30. <u>Holder</u>:  A holder of a Claim or Equity Interest, as the case may be.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hj01tm015s

31.     Lease(s):  An unexpired and enforceable lease of a unit in the Property under which the Debtor is the lessor.

32.     Lessees:  Collectively and at any time, the lessees under Leases.

33.     Net Income:  On a monthly basis, Property Income less (i) payment of all operating expenses, and (ii) an amount necessary, if any, to cause the Operating Reserve to be fully funded.

34.     Net Proceeds:  Gross proceeds actually collected from the disposition of an asset, less all costs incurred in completing such disposition, including without limitation all sales commissions, fees and expenses, and all taxes arising in connection with such disposition.

35.     Notice and Hearing:  Proceedings as contemplated under Bankruptcy Code § 102(1).

36.     Operating Reserve:  The minimum working capital cash reserve the Post-Confirmation Debtor shall maintain at all times, in the initial amount of $150,000, which minimum amount shall increase by three percent (3%) on January 1 of each year following the Effective Date.

37.     Person:  A "person" as defined in § 101(41) of the Bankruptcy Code.

38.     Petition Date:  January 16, 2024, the date upon which the petition was filed with the Bankruptcy Court commencing the Bankruptcy Case.

39.     Pivot Lender:  Pivot Apartments Lender LLC, a Delaware limited liability company, the Holder of the Class 2 Claim.

40.     Plan:  The *Debtor's Amended Plan of Liquidation*, as such may be amended, modified, and supplemented from time to time.

41.     Post-Confirmation Debtor:  The Debtor on and following the Effective Date.

42.     Priority Tax Claims:  Allowed Claims of Governmental Units for the principal amount of a tax within the meaning of § 507(a)(8) of the Code, and statutory interest accruing thereon prior to the Petition Date.

43.     Professional Person:  A Person, including a trustee (if one is appointed), retained or to be compensated pursuant to §§ 326, 327, 328, 330, and/or 1103 of the Bankruptcy Court.

44.     (The) Property: Real property and improvements commonly known as the Pivot Apartments, located at 1208 Pine Street in Seattle, comprised of 95 residential units and almost 5,000 square feet of retail space.

45.     Property Income:  The rents, fees and other income generated from operating the Property.

46.     Pro Rata:  Proportionally, so that the ratio of the amount distributed on account of a particular Allowed Claim to the amount of such Allowed Claim is the same as the ratio of the amount

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

distributed on account of all Allowed Claims in the Class of which such particular Allowed Claim is a member to the total amount of all Allowed Claims in such Class.

47.    Sale Deadline:  The earlier of (i) the last day of the twelfth (12th) full month following the Effective Date, unless extended pursuant to the terms hereof; or (ii) the occurrence of a Sale Event.

48.    Sale Event:  The closing of a sale of the Property following the Effective Date.

49.    Secured Claim:  A Claim that is a Secured Claim against a Debtor determined in accordance with § 506(a) of the Bankruptcy Code.

50.    Schedules:  The schedules of assets, liabilities and executory contracts filed on behalf of the Debtor pursuant to § 521 of the Bankruptcy Code, and in accordance with the Bankruptcy Rules, as each has been, or may be, amended and supplemented from time to time.

51.    Set-Aside Account:  A segregated account into which undistributed funds shall be deposited pursuant to Section V.C. of this Plan.

52.    SOFA: The Statement of Financial Affairs (Official Form 207), as amended, the Debtor filed in the Bankruptcy Case on August 12, 2024, assigned Docket No. 148.

53.    SOFR Rate: The secured overnight financing rate, as published by the Federal Reserve Bank of New York on the Federal Reserve Bank of New York's website at www.newyorkfed.org, that is in effect from time to time on and following the Effective Date.

54.    Unclassified Claim:  A Claim that is not designated in a Class pursuant to § 1123(a)(1) of the Code, including Administrative Expense Claims and Priority Tax Claims.

55.    Unsecured Claim:  A Claim that is (a) based upon (i) a proof of claim executed and filed in accordance with Bankruptcy Rule 3003(c) prior to the Claims Bar Date, or (ii) the listing of the Claim in the Debtor's schedules of liabilities as other than disputed, contingent or unliquidated, and (b) not a Secured Claim or an Unclassified Claim.

56.    Walsh:  Walsh Construction Company II, LLC, an Illinois limited liability company, the general contractor in connection with the construction of the Property.

57.    Walsh Lawsuit:  A lawsuit originally filed in King County Superior Court, *Walsh Construction Company II, LLC v. Pine Esker, LLC, et al.*, Case No. 22-2-20748-5 SEA.  On January 23, 2024, Pivot Lender caused the Walsh Lawsuit to be removed from state court to the Bankruptcy Court pursuant to 28 U.S.C. § 1452(a), where it was assigned Adv. Proc. No. 24-01010 and remains pending.

**B.    Rules of Interpretation**

The rules of construction set forth in § 102 of the Bankruptcy Code shall apply to the Plan.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hj01tm015s

# ARTICLE III.
## CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims, as defined in § 101(5) of the Bankruptcy Code, against the Debtor are classified as set forth herein. A Claim is in a particular Class only to the extent it qualifies within the definition of such Class and is in a different Class to the extent it qualifies within the definition of such different Class.

Class 1: Secured Claim of Walsh
Class 2: Secured Claim of Pivot Lender
Class 3: Unsecured Claims of Lessees
Class 4: General Unsecured Claims
Class 5: Interests of Equity Holder

# ARTICLE IV.
## PROVISIONS FOR SATISFYING CLAIMS AND SPECIFYING TREATMENT OF EACH CLASS UNDER THE PLAN

The treatment of all Allowed Claims and Allowed Interests shall be as follows:

**A.     Unclassified Claims**

There are four Classes of Claims and one Class of Equity Interests, and certain other Claims are Unclassified Claims pursuant to applicable provisions of the Bankruptcy Code. If the Court confirms the Plan and the Plan becomes effective, the Class into which each Allowed Claim and Allowed Interest fits will determine the manner in which such Claim or Interest will be treated. The Classes and Unclassified Claims defined are as follows.

1.     <u>Unclassified Claims</u>.

a.     <u>Administrative Expense Claims</u>. As defined herein, Administrative Expense Claims are Allowed Claims for costs or expenses of the Chapter 11 Case that are allowed under sections 503(b) and 507(a)(1) of the Bankruptcy Code. Claims incurred in the ordinary course of the Debtor's business following the Petition Date shall be paid in the ordinary course of business in accordance with the terms and conditions of the particular agreements governing such obligations. Unless otherwise agreed to by the Professional Person, Claims of Professional Persons shall be paid on the later of the Effective Date or the date each such Claim becomes an Allowed Claim.

b.     <u>Priority Tax Claims</u>. As defined under the Plan, Priority Tax Claims are Allowed Claims of Taxing Agencies that are entitled to priority in accordance with section 507(a)(8) of the Bankruptcy Code. Priority Tax Claims include the principal portion of the applicable tax and interest accrued thereon through the Effective Date but do not include any penalties. The Debtor does not believe there are any Priority Tax Claims eligible for treatment under the Plan, and the Plan makes no provision for payment of any Priority Tax Claims.

DEBTOR'S <u>AMENDED</u> PLAN OF LIQUIDATION – Page 6

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hj01tm015s

**B.** **Classified Claims and Interests**

    **1.**    <u>Class 1</u>:  **Secured Claim of Walsh**

        Class 1 consists of the Secured Claim of Walsh (the "Class 1 Claim"), as more fully described below. The Class 1 Claim shall be paid according to the following terms:

        a.    <u>Identification of Claim</u>. The Class 1 Claim is based upon amounts allegedly owing Walsh in connection with the construction of the Property and pursuant to the terms of an AIA contract between Walsh and Pine Esker, LLC, the Debtor's indirect owner and the owner of the Property at the time the contract was entered into, that are secured by a mechanic's lien Walsh recorded against the Property on May 23, 2022.

        b.    <u>Allowance of Claim; Priority</u>. The Debtor listed Walsh's claim in the Schedules as contingent, unliquidated and disputed. ECF No. 1 at 23. Pursuant to Bankruptcy Code § 1111(a) and Bankruptcy Rule 3003(b)(1), every creditor in a chapter 11 case <u>must</u> file a Proof of Claim if the claim is scheduled as disputed, contingent or unliquidated. Walsh wholly failed to file a Proof of Claim, whether prior to the Claims Bar Date or otherwise. Pursuant to applicable authority, on the Effective Date the Class 1 Claim shall be *disallowed* as a Claim against the Debtor, and *allowed* as an *in rem* claim against the Property only, subject to the determination by entry of a Final Order of the amount and priority of the Class 1 Claim (the "<u>Walsh Final Order</u>").

        c.    <u>Satisfaction of Class 1 Claim</u>. The Debtor shall pay the Holder of the Class 1 Claim as set forth below:

        (1) <u>Retention of Security Interests</u>. Following the Effective Date, the Holder of the Class 1 Claim shall retain its lien on the Property in such amount and priority as determined by the Walsh Final Order (the "<u>Class 1 Lien</u>") until the Class 1 Claim has been paid in full. Upon entry of the Walsh Final Order, the terms of such Order shall control the amount, enforceability and priority of the Class 1 Lien.

        (2) <u>Interest Rate</u>. Interest shall accrue on the Class 1 Claim at the SOFR Rate that is in effect on the first day of each month following the Effective Date, plus one percent (1%).

        (3) <u>Payments; Source</u>. Subject to Section VII.C. of this Plan, the Holder of the Class 1 Claim shall receive no payments under the Plan until the Sale Deadline, at which time the Class 1 Claim shall be paid in full.

        d.    <u>Maturity</u>. All amounts then owing on the Class 1 Claim shall be due and payable on the Sale Deadline.

        e.    <u>Impairment</u>. Class 1 is impaired under the Plan. Pursuant to § 1129(b) of the Bankruptcy Code, in the event Class 1 does not accept the Plan, the Debtor requests that the Court confirm the Plan without the consent of Class 1.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hj01tm015s

**2.** **Class 2:** **Secured Claim of Pivot Lender**

Class 2 consists of the Secured Claim of Pivot Lender (the "Class 2 Claim"), as more fully described below. The Class 2 Claim shall be paid according to the following terms:

a.  **Identification of Claim.** The Class 2 Claim is comprised of amounts owing Pivot Lender in connection with a loan to the Debtor evidenced by, among other documents, that certain Loan Agreement, dated as of October 7, 2022, by and between the Debtor (as borrower) and Pivot Lender (as lender), in the original principal amount of $32,000,000. On April 11, 2024, Pivot Lender filed a Proof of Claim stating an amount owing as of the Petition Date of $35,031,968.55.

b.  **Determination and Allowance of Claim.** The Class 2 Claim shall be allowed, whether prior to or following Confirmation, in such amount as to which the Debtor and the Holder of the Class 2 Claim may agree or the Bankruptcy Court may approve following Notice and Hearing (the "Class 2 Allowed Claim").

c.  **Satisfaction of Class 2 Allowed Claim.** The Debtor shall pay the Holder of the Class 2 Allowed Claim as set forth below:

(1) **Retention of Security Interests.** Following the Effective Date, and notwithstanding Section VI.I hereof, the Holder of the Class 2 Claim shall retain its lien on the Property by way of its existing Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Class 2 Lien") until the Class 2 Allowed Claim has been paid in full.

(2) **Interest Rate.** Following the Effective Date, interest shall accrue on the Class 2 Claim at the non-default rate set forth in the loan documents evidencing the Class 2 Claim.

(3) **Payments.** Beginning in the first (1st) full month following the Effective Date and continuing each month until the Sale Deadline, the Post-Confirmation Debtor shall, on a monthly basis, pay to the Holder of the Class 2 Allowed Claim all Net Income, less payments required to be made pursuant to this Plan and/or the Confirmation Order or any other order of the Court, including but not limited to payments to Holders of Class 4 Claims, Administrative Expense Claims, Priority Tax Claims, and payments to Special Counsel and Professional Persons under Sections VII.G.2. and VIII.E, until the Sale Deadline. For the avoidance of doubt, the foregoing payments required under this paragraph shall not impair the Debtor's right to maintain a fully funded Operating Reserve. All payments under this paragraph shall be due not later than the fifteenth (15th) calendar day of each month.

(4) **Reporting.** Beginning in the second (2nd) full month following the Effective Date and continuing each month until the Sale Deadline, the Post-Confirmation Debtor shall send to the Holder of the Class 2 Claim a financial report reflecting the prior month's operations that includes an income statement, balance sheet and statement of receipts and disbursements. All reports owing under this paragraph shall be due not later than the twentieth (20th) calendar day of each month.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hj01tm015s

d.    <u>Maturity</u>.  All amounts then owing on the Class 2 Claim shall be due and payable on the Sale Deadline.

e.    <u>Impairment</u>.  Class 2 is impaired under the Plan.  Pursuant to § 1129(b) of the Bankruptcy Code, in the event Class 2 does not accept the Plan, the Debtor requests that the Court confirm the Plan without the consent of Class 2.

**3.    <u>Class 3</u>:  Unsecured Claims of Lessees**

Class 3 consists of the Unsecured Claims of Lessees (the "<u>Class 3 Claims</u>").  Each Holder of a Class 3 Claim shall receive from the Debtor or Post-Confirmation Debtor the refund of its applicable security deposit in accordance with the terms of the applicable Lease, when and as due.

Class 3 is unimpaired under the Plan.

**4.    <u>Class 4</u>:  General Unsecured Claims**

Class 4 consists of all Unsecured Claims (the "<u>Class 4 Claims</u>").  The Class 4 Claims shall be treated as follows:

a.    <u>Allowance of Claims</u>.  Each Class 4 Claim shall be allowed or disallowed, as the case may be, whether prior to or following Confirmation, in such amount as to which the Debtor and the claimant may agree or the Court may approve following Notice and Hearing (each, a "<u>Class 4 Allowed Claim</u>").  The Debtor believes that all Class 4 Claims total approximately $700,000, without regard to any defenses, setoffs or counterclaims the Debtor may hold as to any such Claims.

b.    <u>Payment Terms</u>.  The Class 4 Allowed Claims shall be paid as follows:

(1)  Each Holder of a Class 4 Allowed Claim shall be paid in twelve (12) equal monthly payments, commencing in the third (3rd) full month following the Effective Date.  All payments due under the subparagraph shall be made on or before the twenty-fifth (25th) calendar day of each month in which a payment is due.

(2)  Upon the occurrence of a Sale Event, the remaining balance of all Class 4 Allowed Claims, if any, shall be paid in full.

c.    <u>Interest rate</u>:  No interest shall accrue on Class 4 Claims.

d.    <u>Impairment</u>.  Class 4 is impaired under the Plan.  Pursuant to § 1129(b) of the Bankruptcy Code, in the event Class 4 does not accept the Plan, the Debtor requests that the Court confirm the Plan without the consent of Class 4.

**Class 5:  Allowed Interests of Equity Holders**

Class 5 consists of Equity Interests.  The Holders of Equity Interests shall each retain such Equity Interests in the same equity class and priority, if any, following the Effective Date as existed as

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hj01tm015s

of the Petition Date. No distributions shall be made on account of Equity Interests until all Allowed Claims are paid in full in accordance with the Plan.

## ARTICLE V.
## CLAIMS OBJECTIONS AND TREATMENT OF DISPUTED CLAIMS

**A.      Administration of Claims**

Except as otherwise provided for herein, each Claim shall be allowed or disallowed, as the case may be, in such amount as the Court shall determine, whether prior to or following Confirmation, and whether pursuant to this Plan or otherwise, upon such notice as the Bankruptcy Court or Bankruptcy Rules shall permit except that, after the Effective Date, the Debtor may settle or compromise any controversies regarding Claims without notice or further order of the Court. The deadline to object to Claims shall be sixty (60) days after the Effective Date of the Plan.

**B.      Defenses and Counterclaims Assigned to Post-Confirmation Debtor**

On the Effective Date, the Debtor shall be deemed to have assigned to the Post-Confirmation Debtor, and the Post-Confirmation Debtor shall be deemed to have acquired and become the successor to, all defenses, counterclaims and setoffs, whether equitable or legal, of the Debtor to Claims held or asserted to be held against the Debtor. Any objection to Claims must be filed and served in accordance with Bankruptcy Rule 3007; provided, however, that the foregoing limitations do not apply to any Claims filed subsequent to Confirmation.

**C.      No Distribution on Disputed Claims**

Notwithstanding any provision of the Plan specifying the time for payment of distributions to Holders of Claims, no payment or distribution shall be made to the Holder of a Claim until such Claim becomes an Allowed Claim by entry of a Final Order. The Post-Confirmation Debtor shall deposit all such undistributed funds into the Set-Aside Account for later disposition. Notwithstanding the existence of a Disputed Claim in a Class to which a distribution under this Plan is due, such distribution to Holders of Allowed Claims in such Class shall not be affected by any delay in the resolution of the Disputed Claim. Upon the allowance of any Disputed Claim, the Post-Confirmation Debtor shall distribute funds from the Set-Aside Account to such Holder in the amount it would have received had its Claim been an Allowed Claim on the Effective Date.

## ARTICLE VI.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.      Assumption of Executory Contracts and Unexpired Leases**

The Plan constitutes a motion by the Debtor to assume each of the Leases as of the Effective Date pursuant to § 365(a) of the Bankruptcy Code, with cure amounts as set forth therein. The Debtor does not believe any cure will be due in connection with such assumption, and the Plan does not provide for any such cure. Notwithstanding the foregoing, any party to a Lease scheduled for assumption as provided in this Section VI.A that asserts a cure amount is owing shall timely file an

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hj01tm015s

objection to Confirmation of the Plan setting forth an itemized amount such party asserts is due, within the same deadline and in the same manner established for objections to Confirmation. A party's failure to assert such arrearage or to file an objection shall constitute such party's agreement to the assumption and a conclusive acknowledgment that no defaults or claims exist under said Lease that require a cure.

**B.    Rejection of Executory Contracts and Unexpired Leases**

The Plan constitutes a motion by the Debtor to reject all other executory contracts and unexpired leases of the Debtor as of the Effective Date that are subject to rejection under 11 U.S.C. § 365, with the sole exception of the Leases. Any Claim arising from the rejection of an executory contract or unexpired lease is a Class 4 Claim to the extent it is an Allowed Claim. Any Entity holding a Claim based upon the rejection of an executory contract or unexpired lease pursuant to this Section VI.B must file a Proof of Claim with the Bankruptcy Court within thirty (30) days after the Effective Date. The failure of any such Entity to file a Proof of Claim within the specified time period will result in the disallowance of such Claim.

**ARTICLE VII.**
**MEANS FOR EXECUTION OF THE PLAN**

**A.    Overview**

As detailed herein, the Post-Confirmation Debtor shall sell the Property not later than the Sale Deadline, the Net Proceeds from which shall be used to pay Allowed Claims to the extent of the Net Proceeds. The Holder of the Class 2 Claim shall also receive a cash payment following the Effective Date from accumulated rents the Debtor presently holds. Finally, all Causes of Action of the Debtor (as defined below) are specifically preserved for the Post-Confirmation Debtor and shall be assigned to a Liquidating Agent for investigation and pursuit, the proceeds from which shall be distributed as detailed below.

**B.    Sale of Property; Extension of Sale Deadline.**

Following the Effective Date, the Post-Confirmation Debtor shall engage a nationally-recognized firm to market and sell the Property. The process for selling the Property shall be for the highest sale price reasonably attainable to permit the closing of a sale not later than the Sale Deadline. Any sale of the Property shall be free and clear of liens, claims and encumbrances pursuant to Bankruptcy Code sections 1123(a)(5)(D) and 1141(c). Notwithstanding the foregoing, if (i) the Post-Confirmation Debtor is under contract to sell the Property (a "Pending Sale") when the Sale Deadline as defined above (the "Initial Sale Deadline") is set to occur, and (ii) the Pending Sale provides for a closing to occur not more than 60 days following the Initial Sale Deadline, the Initial Sale Deadline shall be deemed extended for 60 days to permit the Pending Sale to close.

**C.    Resolution of Priority Dispute/Allowance of Class 1 Claim**

As detailed in the Walsh Lawsuit, Walsh alleges (i) a Claim in an amount not less than $4,256,401, and (ii) that such alleged Claim is secured by a first-position lien on the Property, senior

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hj01tm015s

in right to the Class 2 Claim of Pivot Lender. Pivot Lender disputes both of these allegations, and alleges it is the beneficiary of a deed of trust against the Property that is senior in right to Walsh's contractor's lien. The Debtor disputes the amount of Walsh's claim, believes that Walsh is owed substantially less than its claimed amount based on (among other things) various defenses and counterclaims the Debtor holds against Walsh.

Unless the District Court determines otherwise, the Bankruptcy Court shall retain jurisdiction over the Walsh Lawsuit following the Effective Date, and the Bankruptcy Court or the District Court (as the case may be) shall determine the amount and priority of the Class 1 Claim by entry of a Final Order (the "Walsh Claim Determination"). Notwithstanding the Walsh Claim Determination, the Holder of the Class 1 Claim shall receive no distributions on such Claim other than in connection with a Sale Event, and in that case only to the extent of its Allowed Claim and its allowance as a Secured Claim. For the avoidance of doubt, if the Walsh Claim Determination results in either the Class 1 Claim being an Unsecured Claim, or a Secured Claim that is junior in priority to the Class 2 Claim, and the Net Proceeds from a Sale Event are insufficient to satisfy the amount of the Class 2 Claim deemed to be senior in priority to the Class 1 Claim, the Class 1 Claim shall receive no distribution from the Sale Event.

**D.    Release of Funds from Pivot Lender Reserve Accounts**

The Post-Confirmation Debtor shall owe two commercial tenants funds totaling approximately $200,000 as a reimbursement of tenant improvement expenditures (the "TI Reimbursements") when such tenants open for business. Upon that event, the Post-Confirmation Debtor shall provide notice to the Holder of the Class 2 Claim via electronic mail of such opening(s), and the Holder of the Class 2 Claim shall release funds from the Pivot Lender Soft Cost Reserve Account in the full amount necessary to reimburse such tenant not later than five (5) Business Days following its receipt of such notice. If the Post-Confirmation Debtor is required to pay, and does pay, the TI Reimbursements prior to the Effective Date, then the Holder of the Class 2 Claim shall release funds from the Pivot Lender Soft Cost Reserve Account in the full amount necessary to reimburse the Post-Confirmation Debtor in full for such payment(s).

**E.    Continued Operations of Property**

The Post-Confirmation Debtor shall continue to own, maintain, operate and manage the Property in its sole discretion and in the ordinary course of business without further notice or order of the Court pending a Sale Event. So long as it complies with other provisions of this Plan and the Confirmation Order, the Post-Confirmation Debtor shall have full discretion to take any action in connection with all aspects of the operation and maintenance of the Property.

**F.    Distributions Under the Plan**

**1.    Sources of Funds for Distribution.**

The distributions to each of the Classes under the Plan shall be made from cash on hand, Property Income and, ultimately, from the Net Proceeds of a Sale Event. All expenditures and distributions of funds from Property Income – whether to fund ongoing operations or distributions

DEBTOR'S AMENDED PLAN OF LIQUIDATION – Page 12

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hj01tm015s

required under the Plan – shall be free and clear of any liens, claims, interests or encumbrances of any Person.

**2. Disbursing Agent.**

The Post-Confirmation Debtor shall act as the Disbursing Agent, provided that an escrow agent shall act as Disbursing Agent in connection with a Sale Event.

**G. Assignment and Disposition of Causes of Action and Avoidance Claims**

**1. Generally.**

On the Effective Date, and subject to the immediately following paragraph, the Debtor shall be deemed to have assigned to the Post-Confirmation Debtor, and the Post-Confirmation Debtor shall be deemed to have acquired and become the successor to, (i) all Avoidance Actions, and (ii) all claims and causes of action of the Debtor for relief against any other party other than Avoidance Actions (collectively, the "Causes of Action"). After evaluation of the risks and expense of pursuing such Causes of Action the Post-Confirmation Debtor, in the exercise of ordinary business judgment, shall investigate, pursue, prosecute and/or settle such Causes of Action.

**2. Disposition of Certain Causes of Action.**

The Debtor listed in the SOFA various transfers that were made prior to the Petition Date. *See* ECF No. 148 at 4–7. Some of these transfers were between two related entities and did not involve the Debtor but were listed in the SOFA in the interests of full disclosure (with any other potentially avoidable transfers among related entities, the "Related Entities Transfers"). There may also be a Cause of Action associated with the repayment of a mezzanine loan from H.I.G. Realty Credit Holdings, LLC to M-1208 Pine, LLC, the 100% owner of the Debtor, in October 2022 with funds from the loan to the Debtor evidenced by the Class 2 Claim (the "Mezz Loan Claim"). All Related Entity Transfers and the Mezz Loan Claim, in addition to any and all other potential Avoidance Claims and Causes of Action of the Debtor, whether known or unknown at this time (collectively, the "Preserved Claims") shall be preserved and, following the Effective Date, assigned to special master Michael Klein ("Special Master"), a panel Chapter 7 trustee~~a member of the panel of Chapter 7 trustees~~ for the Western District of Washington, ~~appointed by the Office of the U.S. Trustee, as special counsel ("Special Counsel")~~ to investigate if there are grounds under applicable law to seek to recover on any or all of the Preserved Claims and, if so, to pursue recovery of and/or compromise the same, at the Special Master~~Counsel~~'s discretion. ~~Special Counsel shall have the right to engage professionals of its choosing to assist it in its duties.~~ The fees and costs of the Special Master shall be paid on an hourly basis at Mr. Klein's then applicable hourly rate by the Post-Confirmation Debtor. The Special Master shall be authorized to employ Professional Persons upon such terms as the Special Master deems reasonable and appropriate without further notice or order of the Court. The Post-Confirmation Debtor shall pay the fees and costs of the Special Master~~Counsel~~ and his Professional Persons, if any, from Property Income, which fees and costs shall be deemed an operating expense for purposes of determination of Net Income. ~~–~~Mr. Klein will not be acting in his capacity as a Chapter 7 trustee in his role as Special Counsel. No bond shall be required of the Special Counsel. Special Counsel's role shall terminate upon completion of his final determination and report regarding the Preserved Claims.

DEBTOR'S AMENDED PLAN OF LIQUIDATION – Page 13

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hj01tm015s

Any funds recovered by Special Counsel on behalf of the Post-Confirmation Debtor from any Preserved Claim shall be remitted to the Post-Confirmation Debtor, and Special Counsel shall not act as a disbursing agent for any such funds. There shall be no indemnification of the Special Counsel by any party in regard to any liability arising in connection with the Special Counsel's role. All Net Proceeds from such Preserved Claims shall be distributed as provided in the Plan to any unsatisfied Allowed Claims in Classes 2 and 4 on a Pro Rata basis. In the event that the Special Counsel resigns or is no longer available for any reason, the Post-Confirmation Debtor shall designate another panel Chapter 7 trustee for the Western District of Washington, or similarly qualified counsel if no trustee is available, to serve as Special Counsel within twenty-one (21) days of such event. Notice of such replacement shall be provided to counsel for Pivot Lender and any Entity or Person that has filed a request for special notice or courtesy notice in the Chapter 11 Case.

**H. Maintenance of Insurance**

The Post-Confirmation Debtor shall continue to maintain insurance coverage in the same or more favorable amounts and type as the Debtor held as of the Petition Date.

**I. Continued Corporate Existence and Vesting of Assets in the Debtor**

On the Effective Date, the Debtor shall continue to exist in accordance with the laws of the jurisdiction in which it is formed and pursuant to its Limited Liability Company Agreement, as amended, in effect prior to the Effective Date, except to the extent such Agreement is amended under the Plan. Except as otherwise provided in the Plan, on and after the Effective Date, each item of property of the Debtor, including all claims, rights and causes of action and any property acquired by the Debtor shall vest in the Post-Confirmation Debtor free and clear of all Claims, liens, charges, other encumbrances and interests pursuant to Bankruptcy Code section 1141(c) except liens, charges and other encumbrances which the Debtor is required to grant or continue pursuant to Article IV of the Plan. On and after the Effective Date, the Post-Confirmation Debtor may operate its business and may use, acquire and dispose of property without supervision of or approval by the Bankruptcy Court in the exercise of ordinary business judgment.

**ARTICLE VIII.**
**MISCELLANEOUS PROVISIONS**

**A. Unnegotiated Distribution Checks**

Pursuant to § 347 of the Bankruptcy Code, ninety (90) days after any distribution to any Creditor by the Post-Confirmation Debtor provided for herein, the Post-Confirmation Debtor shall stop payment on any check on such distribution remaining unpaid to a Holder of an Allowed Claim and such funds (the "Unclaimed Funds") shall be returned to the Post-Confirmation Debtor. From and after the date the Post-Confirmation Debtor stops payment on any distribution check pursuant to this paragraph, the Holder of the Allowed Claim on account of which such check was issued shall be entitled to receive no further distributions on account of his claim and such Holder's Allowed Claim shall thereupon be deemed satisfied in full.

**B. Mailing List; Returned Distribution Checks**

DEBTOR'S AMENDED PLAN OF LIQUIDATION – Page 14

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hj01tm015s

The official listing of Creditor identities and mailing addresses is maintained by the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Western District of Washington (the "Official Mailing List"). It shall be the obligation of each Creditor and/or party in interest to assure that the Official Mailing List is current and accurate as to each such Person. In the event that a distribution check, that has been properly posted to the Person's address as set forth in the Official Mailing List, is returned as undeliverable by the United States Postal Service, the Post-Confirmation Debtor shall be authorized, but not required, to void such check with the applicable funds becoming subject to further distribution pursuant to this Plan, and the Claim of such Creditor being deemed satisfied in full.

**C.     Administrative Claim Bar Date**

The deadline for submission of all Claims entitled to priority pursuant to § 503(b) of the Bankruptcy Code incurred prior to Confirmation, with the exception of fees and costs of Professional Persons, shall be thirty (30) days following the Effective Date. Failure to file a Claim by this date shall conclusively bar the claimant from asserting his Claim, which Claim shall be forever discharged.

**D.     Payments Shall Be Timely**

The Post-Confirmation Debtor shall timely make all payments required under this Plan. Without limiting the generality of the foregoing, the Post-Confirmation Debtor shall be responsible for the timely payment of quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) following Confirmation of the Plan until the case is closed. After Confirmation of the Plan, the Post-Confirmation Debtor shall serve on the United States Trustee quarterly a financial report for each quarter (or portion thereof) the case remains open. The financial report shall include a statement of all disbursements made during the course of the relevant quarter, whether or not pursuant to the Plan.

**E.     Employment of Professional Persons**

The Post-Confirmation Debtor shall be authorized to employ and compensate Professional~~s~~ Persons following Confirmation upon such terms as the Post-Confirmation Debtor deems reasonable and appropriate without further notice or order of the Court.

**F.     Treatment of Negotiable Instruments**

Any negotiable instrument held by the Holder of a Claim shall be deemed exchanged, canceled or satisfied, as the case may be, on the Effective Date.

**G.     Exculpation**

The Exculpated Parties shall not have or incur any liability to any Person for any act taken or omitted to be taken in relation to <u>this Plan or Confirmation thereof</u> ~~this Bankruptcy Case~~<u>during the period between the Petition Date and Effective Date</u>, including, but not limited to, with respect to the formulation, preparation, dissemination, negotiation, implementation, confirmation, or approval of this Plan, or any contract, instrument, release, or other agreement or document provided for or

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hj01tm015s

contemplated in connection with the consummation of any transactions or actions to be taken in connection with this Plan; *provided, however*, that the provisions of this section shall not affect (i) the liability of any Person that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct; or (ii) any obligations expressly arising under the Plan. All the Exculpated Parties shall be entitled to rely in all respects upon the advice of counsel with respect to their duties and responsibilities under the Plan.

## H. Event of Default; Consequence of Default

An event of default shall occur if the Post-Confirmation Debtor fails to fulfill any material term of the Plan, including any payment due under the Plan. In such an event, the party alleging such default shall provide written notice of the alleged default to the Post-Confirmation Debtor and its attorneys (the "Default Notice"), at each of the following addresses, which shall be deemed received (i) if by Federal Express or expedited delivery service, the confirmed date of delivery; (ii) if by electronic mail, the date of the transmission of such electronic mail; and (iii) if by U.S. Mail, the third Business Day thereafter:

> B-1208 Pine, LLC
> Attn: James Wong
> 606 Maynard Ave S, Suite 251
> Seattle, WA 98104
> Email: jwong@vibrantcities.com

And:
> James L. Day
> Richard B. Keeton
> Bush Kornfeld LLP
> 601 Union Street, Suite 5000
> Seattle, WA 98101-2373
> Phone: 206-292-2110
> Fax: 206-292-2104
> Emails: jday@bskd.com and rkeeton@bskd.com

If, after forty-five (45) days following the Post-Confirmation Debtor's and its counsel's receipt of the Default Notice, the Post-Confirmation Debtor and such party have been unable to resolve, or the Post-Confirmation Debtor has been unable to cure, the asserted default, such party may proceed with any remedies available to it under applicable law, provided that nothing herein shall limit or affect the Post-Confirmation Debtor's right to seek appropriate relief from any court of competent jurisdiction.

## I. No Tax on Sale.

Pursuant to Bankruptcy Code section 1146(a) and WAC 458-61A-207, a sale of the Property at any time following Confirmation shall not be subject to any real estate excise tax, or any other tax within the scope of section 1146(a). For the avoidance of doubt, this exemption shall apply through and including the Sale Deadline, as such may be extended pursuant to the terms of this Plan.

DEBTOR'S AMENDED PLAN OF LIQUIDATION – Page 16

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hj01tm015s

## ARTICLE IX.
## PLAN IS BINDING

Except as specifically provided in this Plan or in the Confirmation Order, the distributions made to the various Classes of Creditors as provided for in this Plan shall be in full and complete satisfaction of their Allowed Claims and Allowed Interests. The terms of this Plan and the Confirmation Order shall be binding on all Persons regardless of whether (a) such Person's Claim was scheduled, (b) a Proof of Claim was filed, (c) the Claim is an Allowed Claim, (d) the Person's Claim was in a Class that was impaired, or (e) the Holder thereof voted to accept the Plan.

## ARTICLE X.
## MODIFICATIONS OF THE PLAN

Pursuant to the provisions of § 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor reserves the right to modify or alter the provisions of the Plan at any time prior to or subsequent to Confirmation.

## ARTICLE XI.
## RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT

Notwithstanding Confirmation, until entry of a final decree, the Bankruptcy Court shall retain jurisdiction to ensure that the purposes and intent of the Plan are carried out. Without limiting the generality of the foregoing, the Court shall retain jurisdiction for the following purposes:

1.  Fixing and allowing any Claim as a cost and expense of the administration of the Bankruptcy Case;

2.  Re-examining any Claim that has been allowed;

3.  Hearing and determining objections to Claims. The failure of the Debtor to object to, or to examine any Claim for the purpose of voting, shall not be deemed to be a waiver of the Debtor's right to object to, or re-examine any claim in whole or in part;

4.  Hearing and determining any action brought by the Post-Confirmation Debtor on behalf of the Estate seeking to avoid any transfer of an interest of the Debtor in property, or any obligation incurred by Debtor, that is avoidable pursuant to applicable law;

5.  Hearing and determining all causes of action, controversies, disputes, or conflicts between or among the Debtor, and any other party, including those that were pending prior to Confirmation;

6.  Hearing and determining all questions and disputes regarding title to the property of the Estate;

DEBTOR'S AMENDED PLAN OF LIQUIDATION – Page 17

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hj01tm015s

7.   Correcting any defect, curing any omission, or reconciling any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purpose and intent of the Plan;

8.   Issuing any order necessary to implement the Plan or Confirmation Order, including, without limitation, such declaratory and injunctive orders as are appropriate to protect the Debtor, the Estate and the Post-Confirmation Debtor from actions of Creditors, or other parties-in-interest;

9.   Hearing and determining any dispute relating to the terms or implementation of the Plan or Confirmation Order, or to the rights or obligations of any parties-in-interest with respect thereto; and

10.   The modification of the Plan after Confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code in accordance with Article XI above.

## ARTICLE XII.
## ENTRY OF CLOSING ORDER BY THE BANKRUPTCY COURT

The Bankruptcy Court shall enter an order concluding and terminating the Reorganization Case upon application of the Post-Confirmation Debtor.

DATED this ~~16th~~____ day of ~~September~~October, 2024.

B-1208 PINE, LLC

By____/s/ DRAFT~~James H. Wong~~_____
James H. Wong
Its Manager

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hj01tm015s

# EXHIBIT B

**Redlined Amended Disclosure Statement**

JAMES L. DAY (WSBA #20474)                    HONORABLE CHRISTOPHER M. ALSTON
THOMAS A. BUFORD (WSBA #52969)
RICHARD B. KEETON (WSBA #51537)
BUSH KORNFELD LLP
601 UNION STREET, SUITE 5000
SEATTLE, WA 98101
Tel: (206) 292-2110
Emails: jday@bskd.com, tbuford@bskd.com,
rkeeton@bskd.com

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re | Chapter 11 |
| B-1208 PINE, LLC, | Case No. 24-10088-CMA |
| Debtor. | **DISCLOSURE STATEMENT FOR DEBTOR'S AMENDED PLAN OF LIQUIDATION** |

IMPORTANT: THIS DISCLOSURE STATEMENT CONTAINS INFORMATION RELATED TO THE PROPOSED PLAN OF LIQUIDATION WITH RESPECT TO B-1208 PINE, LLC (THE "DEBTOR"):

PLEASE READ THIS DOCUMENT WITH CARE. THIS DOCUMENT SUMMARIZES THE TERMS OF THE DEBTOR'S PROPOSED PLAN OF LIQUIDATION. THE DEBTOR MAY CONTINUE TO NEGOTIATE PAYMENT TERMS WITH ITS CREDITORS, AND THE SPECIFIC TREATMENT OF CLAIMS MAY CHANGE AS A RESULT, BUT THE DEBTOR BELIEVES THAT THE PAYMENT TERMS WHICH THE DEBTOR WILL ASK THE COURT TO APPROVE WILL NOT BE LESS FAVORABLE THAN THOSE DESCRIBED HEREIN.

TO ALL PARTIES IN INTEREST:

On January 16, 2024 (the "Petition Date"), the Debtor filed a petition commencing the above-captioned bankruptcy case (the "Bankruptcy Case") under chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq*. (the Bankruptcy Code"), in the above-captioned court (the "Bankruptcy Court" or the "Court"). The Debtor is presently acting as a debtor in possession. The Bankruptcy Case remains pending before the Bankruptcy Court.

This *Disclosure Statement for Debtor's Amended Plan of Liquidation* (the "Disclosure Statement") is submitted by the Debtor and contains information with respect to Debtor's Plan of Liquidation (the "Plan"). Pursuant to § 1125 of the Bankruptcy Code, this Disclosure Statement is being distributed to you along with a copy of the proposed Plan to allow you to make an informed

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hj01tg01er

decision in exercising your right to accept or reject the proposed Plan. This Disclosure Statement has been approved by order of the Court pursuant to § 1125 of the Bankruptcy Code as containing information of a kind, and in sufficient detail, as far as is reasonably practicable under the circumstances, that would enable a hypothetical reasonable investor to make an informed judgment about the Plan. In the event of inconsistencies between the Plan and the Disclosure Statement, however, the terms of the Plan shall control. The Court's approval of this Disclosure Statement does not constitute an endorsement of the proposed Plan by the Court.

THE ONLY REPRESENTATIONS THAT ARE AUTHORIZED OR THAT MAY BE MADE CONCERNING THE DEBTOR, THE VALUE OF ASSETS, OR THE PLAN ARE CONTAINED IN THIS DISCLOSURE STATEMENT. ANY FINANCIAL INFORMATION CONTAINED HEREIN OR INCORPORATED BY REFERENCE HAS BEEN PREPARED BY THE DEBTOR'S MANAGEMENT AND PROFESSIONAL ADVISORS AND IS EFFECTIVE AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED. THE READER SHOULD NOT INFER OR ASSUME THAT THERE HAVE BEEN NO CHANGES IN THE FACTS SET FORTH HEREIN SINCE THE DATE HEREOF.

FINANCIAL INFORMATION, WHILE PRESENTED WITH NUMERICAL SPECIFICITY, IS NECESSARILY BASED UPON A VARIETY OF ESTIMATES AND ASSUMPTIONS THAT, ALTHOUGH CONSIDERED REASONABLE AND PRUDENT BY THE DEBTOR'S MANAGEMENT, MAY NOT BE REALIZED AND WILL REMAIN SUBJECT TO INHERENT UNCERTAINTIES. THE FINANCIAL INFORMATION HAS NOT BEEN SUBJECTED TO AN AUDIT AND FOR THAT REASON THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS WITHOUT INACCURACY. HOWEVER, GREAT EFFORT HAS BEEN MADE TO ENSURE THAT ALL SUCH INFORMATION IS FAIRLY REPRESENTED.

## ARTICLE I.
## DEFINITIONS

Terms used in this Disclosure Statement not specifically defined herein or in the Bankruptcy Code shall be defined as set forth in the Plan that accompanies this Disclosure Statement. In particular, certain capitalized terms shall have the meanings ascribed for such terms in Article II of the Plan.

## ARTICLE II.
## BACKGROUND INFORMATION

A. **Historical Background and Events Leading to Bankruptcy Filing**

**The Debtor and the Property.** The Debtor owns real property and multi-family improvements commonly known as the Pivot Apartments, located at 1208 Pine Street in Seattle (the "Project"). The Project is comprised of 95 residential units and almost 5,000 square feet of retail space, and is at approximately 95% occupancy.

DISCLOSURE STATEMENT FOR DEBTOR'S AMENDED PLAN
OF LIQUIDATION – Page 2

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hj01tg01er

Case 24-10088-CMA    Doc 190    Filed 10/16/24    Ent. 10/16/24 15:42:27    Pg. 24 of 38

Development and construction of the Project spanned seven years, although vertical construction largely occurred during the COVID-19 pandemic. In July 2015, Solterra Cities, LLC, dba Vibrant Cities ("Solterra"), the Debtor's upstream parent, entered into a purchase and sale agreement to acquire the real property that would later become the Project. Solterra is a Seattle-based multifamily, urban-focused development and investment company with expertise in ground-up development, investment, construction, architectural, and property management. *See* www.vibrantcities.com. James Wong and Pui Leung are Solterra's cofounders.

In November 2015, Solterra created Pine Esker, LLC, as the single-purpose entity to own and manage the development of the Project. Between July 2015 and the closing of the purchase of the building site in August 2016, ownership raised its initial round of equity of approximately $9 million from friends and family, who put their hard-earned money into this great project. The $9 million went to pay for the land acquisition and entitlement and permitting costs.

After more than three years of effort to obtain the necessary design approvals and permits, ownership went to the market to raise the additional funds necessary to construct the Project. In June 2014, Pine Esker obtained a loan in the total amount of $31,300,000 to fund vertical construction costs (the "2019 Loan"). The lead bank on the 2019 Loan was OZK Bank, and the transaction required that the loan be split into two components. Pine Esker was required under the loan documents to (i) create a new Delaware entity (which was to become the Debtor) to both own the Property and serve as borrower under a senior loan in the amount of $21,910,000 (the "Senior Loan"), and (ii) create a second new Delaware entity (which was to become M-1208 Pine, LLC) to serve as borrower under a mezzanine loan from H.I.G. Realty Credit Holdings, LLC in the amount of $9,390,000, for a total of $31,390,000 (the "Mezz Loan"). M-1208 would be (and remains) the sole member of the Debtor, and Pine Esker would be the sole member of M-1208.

The Debtor was not contractually obligated on the Mezz Loan. Nevertheless, notwithstanding the division of the total loan into two components and nominally two different borrowers, under the express terms of the Mezz Loan all loan proceeds were to be contributed to the Debtor.

On or about June 14, 2019, the Senior Loan and the Mezz Loan both closed, and Pine Esker conveyed the Property to the Debtor via quit claim deed.

The original total construction budget, including land costs, was $44.8 million. The $13.4 million of equity and preferred equity that ownership raised, which represented approximately 30% of the total estimated project cost and a bank loan of approximately 70% for the balance of the project cost, should have been sufficient to complete the project. Utilizing the then market capitalization rate of 4.4%, ownership estimated the completed value of the project to be $51.5 million, or about a $6.7 million gain to share with the equity investors. The $44.8 million costs included a $3 million cash liquidity component, which would have been returned to investors upon completion, increasing the resulting equity to $9.8 million.

**COVID Leads to Increased Expenses and Delays.** Unfortunately, while operational income and expense components of the 2019 proforma were later met, construction costs and timelines were significantly impacted by the COVID-19 pandemic. In February 2020, the State declared a state of emergency due to the pandemic, followed by a stay-at-home order a month later. With these state

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hj01tg01er

mandates, construction of the Project was significantly delayed as workers and subcontractors had to stay home from time to time, interest holding cost skyrocketed, and the construction site had to implement stringent safety measures that significantly effected efficiencies. Worse still, the numerous increases in the federal funds rate in response to COVID-created increased borrowing rates and had a significant negative effect on valuations and lending options. Finally, supply chain disruptions drove up costs and significantly delayed completion, as subcontractors were unable to procure necessary material in a timely fashion. It was also difficult to get the City of Seattle to inspect completed stages so that work could continue. What normally would take a week often took 4 to 8 weeks to complete the inspections.

These and other events significantly delayed the Debtor's occupancy timeline. The projected completion date for the project that Walsh Construction Company II, LLC ("Walsh"), the general contractor, provided was October 9, 2020. The Debtor did not receive its Temporary Certificate of Occupancy (TCO) – the certificate required to move residents and tenants into the building – until May 17, 2022. The project was delayed by more than 585 days or by 1 ½ years, resulting in significant additional interest expense and increased construction costs due to rising material prices and delays.

In January 2022, Colliers presented a potential buyer for the Project. The buyer was a national multifamily owner that owns and manages over 15,000 apartment units. On January 30, 2022, the buyer submitted a letter of intent ("LOI") to purchase the Project for $60 million after it reached 50% occupancy, which took approximately 6 months to achieve. However, by that time the Federal Reserve had announced its second rate hike, and the buyer terminated the LOI. In short, an on-time, or earlier, completion would likely have allowed the Debtor to monetize the Project and avoid this filing altogether.

**Additional Financing Became Necessary.** Due to delay and increased material, labor and interest costs, ownership had to secure additional funding, in the form of loans from Mr. Omar Lee and Christine Lee (together, "Lee") for $4,000,000 in April 2022, and South Point Capital LLC ("South Point") for $2,660,000 for the completion of the project. This increased the total costs of the Project from $44.8M to $51.3M.

**Pivot Lender Loan.** In October 2022, the Debtor obtained a $32 million bridge loan (the "Pivot Lender Loan") from Pivot Apartments Lender LLC ("Pivot Lender"), to pay off the existing Senior Loan and Mezz Loan in a single financing. On or about October 11, 2022, the Pivot Lender Loan closed, and both the Senior Loan and the Mezz Loan were paid off.

**Pivot Lender Fails to Assure First-Position Lien.** Unfortunately, the closing of the Pivot Lender Loan created another set of issues that the Debtor alleges were solely of Pivot Lender's making. When its loan to the Debtor closed in October 2022, Pivot Lender recorded a new deed of trust to secure its loan, rather than taking an assignment of the existing deed of trust then held by Bank OZK, and did not obtain a subordination agreement from Walsh and its subcontractors as to their construction lien rights. As a result, Walsh claims a senior lien position, and litigation is now pending between Walsh and Pivot Lender as to their respective lien priorities.

DISCLOSURE STATEMENT FOR DEBTOR'S AMENDED PLAN
OF LIQUIDATION – Page 4

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hj01tg01er

**Walsh Records Lien; Priority Dispute.** The Debtor had difficulties with Walsh on its claim as well. Many cost increases had to be absorbed by the Debtor. However, other cost increases and delays were Walsh's responsibility pursuant to the terms of the parties' AIA contract. Unbeknownst to the Debtor or Pivot Lender, Walsh recorded a lien against the Project for $4.3 million in December 2022 that Walsh alleges relates back to the commencement of its work. The Debtor believes the actual claim amount is substantially less than the amount claimed.

The relationship between the Debtor and Pivot Lender deteriorated due to Walsh's construction lien, and as a result Pivot Lender announced that it would not release any funds from the interest reserve but required the Debtor to bring additional funds to the table to fund monthly loan payments. Unfortunately, ownership had used all its available cash to finish construction of the building. In August 2023, ownership began to take the rental income, which was previously deposited in a lender-controlled account, paid all operating expenses from the rents and then send the balance to Pivot Lender to pay the interest payments.

**Fed Rate Hikes and Cap Rate Increases.** Along the way, the Debtor engaged Cushman & Wakefield ("Cushman") in May 2023 to market the property for sale. In a Broker's Opinion of Value, Cushman opined that the market value of the Project was between $44.3 million and $46.0 million. A sale in this range would net proceeds sufficient for full payment of the Pivot Lender Loan, the Walsh claim, the junior lenders, and general unsecured claimants. Unfortunately, that opportunity was crushed by three additional Federal Reserve interest rate hikes of a total of 200 basis points, which also led to increased capitalization rates and lower appraised values. Instead of offers coming in at the mid-40-million-dollar estimate, offers from eight potential buyers ranged from $25 million to $34 million. Even if ownership were to sell at the highest end of the range, $34 million would not have been sufficient to pay off Walsh's lien and the senior lender after taxes and fees.

**Foreclosure Causes Bankruptcy Filing.** On or about December 15, 2023, Pivot Lender commenced a non-judicial foreclosure proceeding, scheduling a trustee's sale for March 29, 2024. Thereafter, December 19, 2023, Pivot Lender commenced litigation against the Debtor in King County Superior Court, *Pivot Apartments Lender, LLC v. B-1208 Pine, LLC,* Case No, 23-2-25097-4 SEA, seeking appointment of a receiver to take possession and control of the Property and its rents pending completion of the foreclosure. After Pivot Lender declined to participate in any discussions with the Debtor seeking an alternative course, this case was commenced to preserve the Property as a source of recovery for all creditors.

**B.    Significant Post-Petition Activity in the Bankruptcy Case**

**1.    Debtor-in-Possession.** The Debtor is operating its business and managing its affairs as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed to serve in this reorganization case.

**2.    Adequate Assurances to Utilities.** On January 24, 2024, the Court entered an order approving the Debtor's proposed adequate protection to utility providers (the "Utility Order"). ECF Nos. 39. After notice to Utility Providers and receiving no responses, the Utility Order became final on February 16, 2024.

DISCLOSURE STATEMENT FOR DEBTOR'S AMENDED PLAN
OF LIQUIDATION – Page 5

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hj01tg01er

**3. Use of Prepetition Cash Management Systems and Bank Accounts.** On January 24, 2024, the Court entered an order approving on an interim basis the Debtor's continued use of prepetition cash management systems and bank accounts. ECF No. 42. On February 22, 2024, the Court entered an order granting final approval of the Debtor's use of prepetition cash management systems and bank accounts. ECF No. 68.

**4. Employment of Professionals.** The Court entered orders authorizing the employment of the following professionals pursuant to Bankruptcy Code § 327.

| Professional | Role | Order Entered | Docket No. |
|---|---|---|---|
| Bush Kornfeld LLP | Bankruptcy Counsel to Debtor | 2/16/24 | 63 |
| Cascade Capital Group, LLC | Financial Advisor to Debtor | 2/22/24 | 69 |
| Smith Currie Oles LLP | Special Counsel to Debtor | 3/29/24 | 89[1] |

**5. Approval of Debtor's Use of Cash Collateral.** On February 5, 2024, the Court entered an order authorizing, on an interim basis, the Debtor's use of cash collateral and the granting of adequate protection in favor of Pivot Lender pending a final hearing. On February 23, 2024, the Court entered an order granting final approval of the use of cash collateral and granting of adequate protection, subject to termination on the bases set forth in the order. ECF No. 72.

**6. Removal of State Court Litigation to Bankruptcy Court.** On December 16, 2022, Walsh commenced litigation against the Debtor and others, alleging (among other things) breach of contract and breach of good faith and fair dealing in King County Superior Court, Case No. 22-2-20748-5 SEA (the "State Court Litigation"). Walsh seeks an award of more than $4.2 million and to foreclose on its construction lien. On January 19, 2023, Walsh filed an amended complaint to, among other things, add Pivot Lender as a defendant.

On January 23, 2024, Pivot Lender filed a *Notice of Removal of Action*, effecting the removal of the State Court Litigation to this Court, which was assigned Adv. Proc. No. 24-01010 (the "Adversary Proceeding") and remains pending.

**7. Motion for Withdrawal of the Reference.** Pursuant to 28 U.S.C. § 1334(a), each district court has original and exclusive jurisdiction over all bankruptcy cases filed within the relevant district. However, 28 U.S.C. § 157(a) permits each district court to refer all bankruptcy cases to the bankruptcy court within such district. Pursuant to Local Civil Rule 87(a), the district court for the Western District of Washington (the "District Court") adopted a standing referral of all bankruptcy cases to the bankruptcy court.

On March 7, 2024, Walsh filed a motion with the District Court for withdrawal of the reference pursuant to 28 U.S.C. § 157(d) that, if granted, would have transferred the Bankruptcy Case to the District Court. By order entered May 24, 2024, the District Court denied the motion without prejudice as being premature.

---

[1] The Court subsequently vacated this order by way of its *Order Following Order to Show Cause*. *See* ECF No. 161.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hj01tg01er

**8.      Claims Bar Date; Effect.**  By order entered March 11, 2024, the Bankruptcy Court set the Claims Bar Date.  Pursuant to Bankruptcy Code § 1111(a) and Bankruptcy Rule 3003(b)(1), every creditor whose Claim is listed in the Schedules as disputed, contingent or unliquidated was required to file a Proof of Claim by the Claims Bar Date.  Among possibly other Creditors, Walsh failed to file a Proof of Claim, timely or otherwise.

**9.      Adversary Proceeding Continues.**  In May 2024, the Debtor through its Special Counsel filed a motion for summary judgment, seeking a determination that the portion of Walsh's claim related to delay damages, totaling approximately $1.9 million, should be disallowed on the basis that Walsh had wholly failed to comply with contractual provisions related to asserting such a claim. At the same time, Pivot Lender filed a motion for summary judgment seeking a determination that its deed of trust is senior to Walsh's construction lien on the basis of equitable subrogation.  At a hearing on August 1, 2024, the Court denied both motions.

**10.     Denial of Confirmation of First Amended Plan**.  On April 15, 2024, the Debtor filed its *Debtor's Plan of Reorganization* [ECF No. 90] and its *Disclosure Statement for Debtor's Plan of Reorganization* [ECF No. 91].  On June 20, 2024, the Debtor filed its *First Amended Plan of Reorganization* [ECF No. 120] ("First Amended Plan") and its *First Amended Disclosure Statement for Debtor's First Amended Plan of Reorganization* [ECF No. 121] ("First Amended Disclosure Statement").  On June 21, 2024, the Court entered an order approving the First Amended Disclosure Statement and set a hearing on confirmation of the First Amended Plan for August 15, 2024.  On August 16, 2024, the Court entered an order denying confirmation of the First Amended Plan.  ECF No. 153.

## ARTICLE III.
## FINANCIAL INFORMATION

### A.      Debtor's Assets

The Debtor's bankruptcy Schedules A/B reflect that, as of the Petition Date, the Debtor had the following assets:

### 1.      Real Property.

Real property and improvements comprising the Property, with a scheduled value of $31,721,374.

### 2.      Cash, Receivables and Deposits.

The Debtor's bankruptcy schedules reflect the following cash assets as of the Petition Date:

| | |
|---|---|
| Cash and Funds in Various Accounts | $20,828.31 |
| Tenant Security Deposits | $51,741.66 |
| Legal Retainer (Bush Kornfeld) | $162,289.50 |
| Accounts Receivable | $178,264.10 |
| **Total** | **$413,123.57** |

DISCLOSURE STATEMENT FOR DEBTOR'S <u>AMENDED</u> PLAN
OF LIQUIDATION – Page 7

Bush Kornfeld llp
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**3. Furniture, Fixtures and Equipment.**

The Debtor's bankruptcy schedules reflect various furnishings, fixtures, office equipment and appliances of unknown but non-material value.

**4. Pending Litigation.**

The SOFA reflects two lawsuits that were pending against the Debtor as of the Petition Date:

*Pivot Apartments Lender LLC v. B-1208 Pine, LLC,* King County Superior Court Case No. 23-2-25097-4 SEA, pursuant to which Pivot Lender sought appointment of a custodial receiver for the Property pending completion of Pivot Lender's foreclosure proceeding. This lawsuit was stayed upon the commencement of the Bankruptcy Case but remains pending.

*Walsh Construction Company II, LLC v. Pine Esker, LLC, et al.*, King County Superior Court Case No. 22-2-19086-8 SEA (the "Walsh Lawsuit"), pursuant to which Walsh alleges various claims against the Debtor and seeks to foreclose on its construction lien against the Property. Pivot Lender is also a defendant in the Walsh Lawsuit. As indicated above, on January 23, 2024, Pivot Lender caused the Walsh Lawsuit to be removed from state court to the Bankruptcy Court pursuant to 28 U.S.C. § 1452(a), where it was assigned Adv. Proc. No. 24-01010 and remains pending.

**5. Avoidance Claims.**

As defined in the Plan, an Avoidance Claim is "Any Claim or Cause of Action of the Estate arising out of or maintainable pursuant to Chapter V of the Bankruptcy Code or under any other similar applicable law." Generally, Avoidance Claims are comprised of (i) actions to avoid and recover preferential transfers pursuant to §§ 547 and 550 of the Bankruptcy Code (with a look-back period of 90 days prior to the Petition Date for non-insiders and one year prior to the Petition Date for insiders (as defined in Section 101(31) of the Bankruptcy Code)); (ii) actions to avoid and recover fraudulent transfers pursuant to §§ 548 and 550 of the Bankruptcy Code (with a look-back period of two years), or applicable non-bankruptcy law pursuant to §§ 544 and 550 of the Bankruptcy Code (with a look-back period that is greater than two years); or (iii) certain unauthorized transactions of the Debtor following the Petition Date pursuant to §§ 549 and 550 of the Bankruptcy Code.

The Debtor listed in the SOFA various payments that were by or among potential insiders or related entities, to investors and to Walsh. In addition, there may be an Avoidance Claim or other Cause of Action against the Mezz Lender for a recovery in connection with the satisfaction of the Mezz Loan from the proceeds of the Pivot Lender Loan, on the basis that the Debtor was not contractually obligated to pay that loan and on which the Debtor's principal was a guarantor (the "Potential Mezz Lender Claim"). Such a cause of action would also require a showing that the Debtor was insolvent at the time of the closing of the Pivot Lender Loan (October 2022) or became insolvent as a result of the closing. *See* 11 U.S.C. § 548(a)(1)(B)(ii).

As detailed in the Plan, all Avoidance Claims and other Causes of Action of the Debtor, whether known or unknown at this time, and including without limitation the Potential Mezz Lender Claim, shall be preserved following Confirmation (the "Preserved Claims") and will be assigned to special master Michael Klein ("Special Master"), a panel Chapter 7 trustee for the Western District of

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hj01tg01er

Washington, to investigate if there are grounds under applicable law to seek to recover on any or all of the Preserved Claims and, if so, to pursue recovery of and/or compromise the same, at the Special Master's discretion. Mr. Klein has conducted an internal conflicts check in regard to representation of other clients as required by any code or rules of professional conduct. No potential or actual conflicts were identified in such conflicts check. The fees and costs of Special Master shall be paid on an hourly basis at Mr. Klein's then applicable hourly rate by the Post-Confirmation Debtor. The Post-Confirmation Debtor shall pay the fees and costs of Special Master and his Professional Persons, if any, from Property Income, which fees and costs shall be deemed an operating expense for purposes of determination of Net Income. Mr. Klein will not be acting in his capacity as a Chapter 7 trustee in his role as Special Master. No bond shall be required of the Special Master. Special Master's role shall terminate upon completion of his final determination and report regarding the Preserved Claims. Any funds recovered by Special Master on behalf of the Post-Confirmation Debtor from any Preserved Claim shall be remitted to the Post-Confirmation Debtor, and Special Master shall not act as a disbursing agent for any such funds. There shall be no indemnification of the Special Master by any party in regard to any liability arising in connection with the Special Master's role. All Net Proceeds from such Preserved Claims shall be distributed as provided in the Plan to any unsatisfied Allowed Claims in Classes 2 and 4 on a Pro Rata basis. In the event that the Special Master resigns or is no longer available for any reason, the Post-Confirmation Debtor shall designate another panel Chapter 7 trustee for the Western District of Washington, or similarly qualified counsel if no trustee is available, to serve as Special Master within twenty-one (21) days of such event. Notice of such replacement shall be provided to counsel for Pivot Lender and any Entity or Person that has filed a request for special notice or courtesy notice in the Chapter 11 Case.

**B.    Debtor's Liabilities**

    **1.    Scheduled Secured Claims.** The Schedules reflect Secured Claims totaling $46,456,175.35, which includes (i) the disputed Secured Claim of Pivot Lender in the amount of $33,391,984.59; (ii) the disputed Secured Claim of Walsh in the amount of $4,256,401; (ii) various subcontractors whose Claims the Debtor understands are included in Walsh's Claim; (iv) the Secured Claim of Lee in the amount of $4,340,000; and (v) the Secured Claim of South Point Capital in the amount of $3,416,042. However, the Debtor incorrectly listed the claims of Lee and South Point Capital in its Schedules as Secured Claims, as the underlying debt obligation is not with the Debtor and the grantor in connection with the deeds of trust to both creditors was not the Debtor. The Plan therefore contains no treatment of the Claims of either Lee or South Point, and neither shall receive any distributions under the Plan.

    **2.    Non-Priority General Unsecured Claims.** The Schedules reflect general unsecured claims as of the Petition Date totaling approximately $337,462.

**C.    The Debtor's Financial Statements**

    Attached to this Disclosure Statement are the following:

        Exhibit A – Debtor's Projections for 2025
        Exhibit B – Assumptions Underlying the Projections

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**ARTICLE IV.**
**SUMMARY OF PROPOSED PLAN OF REORGANIZATION**

**A.    Explanation of Impaired and Unimpaired Claims**

The term "Impaired" as used herein refers to those creditors to whom this Disclosure Statement (and the related Ballots and other materials delivered together herewith) are being furnished and who are entitled to accept or reject the Plan.  All Classes are impaired under the Plan, and the holders of Claims in each Class are entitled to vote to accept or reject the Plan.

The term "Unimpaired" refers to those creditors or equity holders whose claims or interests remain unaltered by the liquidation effectuated by the Plan.  Because of this favorable treatment, these creditors are conclusively deemed to have accepted the Plan.  Accordingly, under Section 1126(f) of the Bankruptcy Code, it is not necessary to solicit acceptances from the holders of claims or interests in such classes.  Class 5 is Unimpaired under the Plan and thus, Class 5 is conclusively deemed to have accepted the Plan.

**B.    Classification of Claims and Interests**

**1.    Unclassified Claims**

The Bankruptcy Code automatically entitles certain types of claims to specific treatment.  Such claims are not impaired and are not entitled to vote on the Plan.  However, claimants holding such claims are entitled to object to the Plan, so long as the Plan's treatment of such claims is inconsistent with the requirements of the Bankruptcy Code.  Accordingly, the Debtor has not classified (i) Administrative Expense Claims, which are Allowed Claims for costs or expenses of the Bankruptcy Case that are allowed under sections 503(b) and 507(a)(2) of the Bankruptcy Code, which will primarily be comprised of the allowed claims of Professional Persons, and amounts owed the U.S. Trustee pursuant to 28 U.S.C. § 1930; or (ii) Priority Tax Claims, which unsecured income, employment, and other taxes described by 11 U.S.C. § 507(a)(8).  The treatment of Unclassified Claims is specified in the Plan.

**2.    Classified Claims and Equity Interests**

<u>Class 1</u>:  Secured Claim of Walsh
<u>Class 2</u>:  Secured Claim of Pivot Lender
<u>Class 3</u>:  Unsecured Claims of Lessees
<u>Class 4</u>:  General Unsecured Claims
<u>Class 5</u>:  Interests of Equity Holder

**C.    Treatment of Classified Claims and Equity Interests.**

DISCLOSURE STATEMENT FOR DEBTOR'S <u>AMENDED</u> PLAN
OF LIQUIDATION – Page 10

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

As detailed in the Plan, the Plan provides for the sale of the Property within twelve (12) months following the Effective Date. Each Allowed Claim in Classes 1–4 shall be paid in full from cash on hand, Net Income and the Net Proceeds from a sale of the Property. Section VIII.H. of the Plan defines, and sets forth the procedures Creditors shall follow in the event of, a default under the Plan and the remedies Creditors may exercise in the event a default remains uncured following the expiration of any applicable cure period. The Holders of the Equity Interests shall retain their interests following Confirmation and, through their Manager, will continue to own, manage and operate the Debtor and its property. YOU ARE ENCOURAGED TO REVIEW THE TREATMENT OF YOUR CLAIM UNDER THE PLAN WITH CARE.

## ARTICLE V.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Bankruptcy Code permits a debtor to propose to assume or reject executory contracts and unexpired leases of the debtor. Assumption by the Debtor of an executory contract or unexpired lease means that the Debtor has elected to continue to perform the obligations under such contract or lease, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any.

The Plan constitutes a motion by the Debtor to assume and assign to the Post-Confirmation Debtor each of the Leases. The Debtor does not believe any cure will be due in connection with the assumption of any of the Leases, and the Plan does not provide for any such cure.

Article VI of the Plan establishes a deadline for parties to an executory contract or unexpired lease that is (i) scheduled for assumption to object to the proposed cure amount pursuant to Bankruptcy Code § 365(b)(1)(A), or (ii) scheduled for rejection to file a Proof of Claims for damages resulting from such rejection pursuant to section 502(b)(6) of the Bankruptcy Code. Pursuant to the Plan, each rejected contract or lease shall be deemed rejected as of the Effective Date.

## ARTICLE VI.
## TAX CONSEQUENCES

The federal income tax consequences of the implementation of the Plan to a Holder of a Claim will depend, among other things, on (a) whether its Claim constitutes a debt or security for federal income tax purposes, (b) whether the Holder of the Claim receives consideration in more than one tax year, (c) whether the Holder of the Claim is a resident of the United States, (d) whether all of the consideration by the Holder of the Claim is deemed received by that Holder of the Claim as part of an integrated transaction, (e) whether the Holder of the Claim reports income using the accrual or cash method of accounting, and (f) whether the Holder of the Claim has previously taken a bad debt deduction or worthless security deduction with respect to the Claim.

THERE MAY BE OTHER CIRCUMSTANCES RELATED TO A PARTICULAR HOLDER OF A CLAIM THAT COULD CREATE TAX CONSEQUENCES FOR SUCH HOLDER, AND THE DEBTOR SPECIFICALLY DISCLAIMS ANY REPRESENTATION OR WARRANTY THAT THE FOREGOING LIST IS COMPLETE. ALL PARTIES IN INTEREST ARE ENCOURAGED TO

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hj01tg01er

READ THIS ENTIRE DISCLOSURE STATEMENT CAREFULLY, INCLUDING THE PLAN AND OTHER EXHIBITS, BEFORE DECIDING TO VOTE EITHER TO ACCEPT OR REJECT THE PLAN. HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD, HOWEVER, NOT CONSTRUE THE CONTENTS OF THE DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE AND SHOULD CONSULT WITH THEIR OWN ADVISORS AS TO ALL SUCH MATTERS.

The Debtor anticipates that the tax consequences of the Plan to the Debtor will have no effect on its ability to consummate the Plan. Because the Debtor is a limited liability company, any tax consequences arising from implementation of the Plan will flow through to the Equity Holder and will not be payable by the Debtor.

TREASURY DEPARTMENT CIRCULAR 230 DISCLAIMER: TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE INTERNAL REVENUE SERVICE, WE INFORM YOU THAT (A) ANY U.S. FEDERAL TAX INFORMATION CONTAINED IN THIS COMMUNICATION (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED OR RELIED UPON, AND CANNOT BE USED OR RELIED UPON, FOR THE PURPOSE OF (1) AVOIDING TAX-RELATED PENALTIES UNDER THE INTERNAL REVENUE CODE OF 1986, AS AMENDED, OR (2) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TRANSACTION OR TAX MATTER(S) ADDRESSED HEREIN, AND (B) THIS DISCUSSION WAS WRITTEN IN CONNECTION WITH THE DEBTOR'S SOLICITING ACCEPTANCE OF THE PLAN THROUGH THIS DISCLOSURE STATEMENT.

## ARTICLE VII.
## LIQUIDATION ANALYSIS

Section 1129(a)(7) of the Bankruptcy Code requires that a creditor with a right to vote accept the Plan, or, alternately, that the creditor receive under the Plan at least as much as it would receive if the debtor's assets were liquidated in and the proceeds distributed under a Chapter 7 liquidation. This is generally known as the "best interests of creditors" test. As set forth below, the Plan satisfies the standard.

To apply the test, the Debtor's assets are valued in the context of a distressed liquidation in a Chapter 7 case by a Chapter 7 trustee appointed by the Bankruptcy Court. The estimated values take into account the costs and expenses of the liquidation, and such additional administrative and priority claims that may result from conversion of the case to a Chapter 7 for the purpose of liquidation. Net liquidation proceeds would be paid to general unsecured creditors only to the extent funds are available after secured creditors have been paid the full value of their collateral and priority creditors receive full payment on their claims.

In this case, a Chapter 7 trustee would inherit a 95-unit apartment complex in a legal proceeding through which, in the normal case, assets are liquidated promptly and efficiently. A trustee would need to operate the Property and have access to the rental income to pay operating expenses pending a sale. While section 721 of the Bankruptcy Code permits the Court to authorize a

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hj01tg01er

trustee to operate property of the Estate "for a limited period," it is very uncertain whether that would occur. Authority to use the Property's rental income ("cash collateral") under the terms of the existing orders would immediately terminate, and a trustee would need to obtain the Court's approval to use the rents to maintain the Property going forward pending a sale. Given that Pivot Lender commenced a foreclosure of its deed of trust and litigation seeking appointment of a receiver prior to the Petition Date, there is little reason to believe that it would consent to a trustee's use of cash collateral, but rather would immediately seek relief from stay so it could continue with the foreclosure process. Absent access to the rents, a trustee could not operate the Property, as even the most basic expenses would immediately begin going unpaid.

In addition, the Schedules and Proofs of Claim in this case reflect that, as of the Petition Date, the estimated market value of the Property was less than the total of the Claims of Pivot Lender and Walsh, even before deductions for costs of sale and real estate excise taxes. Under the circumstances, it is quite possible that a Chapter 7 trustee would move to abandon the Property under Bankruptcy Code section 554(a) as having inconsequential value and benefit to the Estate. If that occurred, only creditors having a lien on the Property would have a chance for any recovery, and only after full payment of all senior lien holders.

In addition, a Chapter 7 trustee would be entitled to seek its statutory commission in connection with a sale of the Property and distribution of proceeds, which would be significant here. For example, if the trustee distributed funds totaling $32,000,000, the commission would be $983,250.[2] *See* Bankruptcy Code § 326(a). Finally, unlike a sale pursuant to a confirmed Chapter 11 plan, a sale by a Chapter 7 trustee would not be exempt from real estate excise taxes. *See* WAC 458-61A-207. If a sale resulted in taxable proceeds of $32,000,000, for example, the savings from the exemption would total $1,194,075.[3]

The Plan in this case provides that the Property will be sold in not more than twelve months following the Effective Date. While likely impossible to quantify, a sale by the Property's developer and owner with a reasonable marketing period would doubtless yield a higher return than a distressed sale by a bankruptcy trustee with no personal knowledge of the Property. In addition, a sale by a debtor pursuant to the terms of a confirmed Chapter 11 plan would be exempt from real estate excise taxes.

The Plan also preserves, as they would be in a hypothetical Chapter 7 case, all Preserved Claims and assigns them to an independent third party for investigation and, if appropriate, for pursuit and recovery or settlement. The proceeds from the resolution of the Causes of Action would be distributed to Classes 2 and 4 on a Pro Rata basis.

---

[2] A commission calculator can be found at https://talkovlaw.com/bankruptcy-trustee-compensation-fee-calculator/

[3] A calculator for the excise tax that would be payable can be found at https://www.ortconline.com/Web2/ProductsServices/InformationServices/TransferTaxCalc/Form.aspx?state=wa.

DISCLOSURE STATEMENT FOR DEBTOR'S AMENDED PLAN
OF LIQUIDATION – Page 13

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

The comparison of recoveries between the Plan and a Chapter 7 case is set forth below. As set forth above, a sale of the Property under the Plan would almost certainly yield a greater return than a sale by a trustee, but the analysis below assumes an equal sale price. The analysis also omits recoveries on Causes of Action on the assumption that they would be equal in both instances (although, again, a trustee would be entitled to a commission on the funds distributed that would not be payable under the Plan):

| Estimated proceeds and expenses | Chapter 11 Plan | Chapter 7 |
|---|---|---|
| Sale of Property: | $32,000,000 | $32,000,000 |
| Less: Closing costs, commission | ($1,920,000) | ($1,920,000) |
| Real estate excise tax | $0.00 | ($1,021,875)[4] |
| Trustee's commission | $0.00 | ($983,250) |
| **Net proceeds:** | **$30,080,000** | **$28,074,875** |

Under the circumstances, it is clear that creditors would receive more under the Plan than through a Chapter 7 liquidation. The Plan therefore satisfies the "best interests of creditors" test under Bankruptcy Code section 1129(a)(7).

## ARTICLE VIII.
## RISK FACTORS

Distributions to Holders of Allowed Claims contemplated under the Plan are contingent upon assumptions, some or all of which could fail to materialize and preclude the Plan from becoming effective or reduce anticipated distributions. Most important, however, is that the Plan is subject to approval by the various Classes of Creditors entitled to vote on the Plan pursuant to the Bankruptcy Code and to confirmation of the Plan by the Bankruptcy Court. No assurance can be given that the Plan will be accepted by the requisite number and amount of Creditors or confirmed by the Court.

## ARTICLE IX.
## CONFIRMATION OF THE PLAN

### A.    Voting Procedures

A ballot to be used for voting your acceptance or rejection of the Plan of Reorganization is being mailed to you together with this Disclosure Statement and Plan. Holders of claims should read the instructions carefully, complete, date and sign the ballot, and transmit it in the envelope enclosed. IN ORDER TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED AT THE INDICATED ADDRESS BY THE TIME PROVIDED ON THE BALLOT. FAILURE TO VOTE OR A VOTE TO REJECT THE PLAN WILL NOT AFFECT THE TREATMENT TO BE ACCORDED A CLAIM OR INTEREST IF THE PLAN NEVERTHELESS IS CONFIRMED.

If more than one-half in number of claimants voting and at least two-thirds in amount of the Allowed Claims of such claimants in each Class of Claims vote to accept the Plan, such Classes will be deemed to have accepted the Plan. For purposes of determining whether a Class of Claims has

---

[4] Calculated on net proceeds of $30,080,000.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hj01tg01er

accepted or rejected the Plan, only the votes of those who have timely returned their ballots will be considered.

**B.    Hearing on Confirmation**

The hearing on confirmation of the Plan will be set before the Honorable Christopher M. Alston, United States Bankruptcy Judge, in U.S. Bankruptcy Court for the Western District of Washington in Seattle.  Notice of the time and date of that hearing shall be separately provided.  The Bankruptcy Court shall confirm the Plan at that hearing only if certain requirements, as set forth in § 1129 of the Bankruptcy Code, are satisfied.

**C.    Feasibility**

Bankruptcy Code section 1129(a)(11) requires a showing that "Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."  In this case, the Plan is a liquidating plan.  The Plan is not dependent upon any minimum performance or cash flow for the Property.  The Plan requires that the Post-Confirmation Debtor market and sell the Property for the greatest amount reasonably attainable within twelve months following the Effective Date.  The Plan also requires the Post-Confirmation Debtor to distribute what the Plan defines as "Net Income" to the Holder of the Class 2 Claim on a monthly basis, rather than requiring a specified minimum payment, so the Holder of the Class 2 Claim will receive the benefits of enhanced performance.  The Debtor therefore believes that the Plan easily meets the standard under Bankruptcy Code section 1129(a)(11).  To the extent necessary, the Debtor will present additional evidence at the hearing on Confirmation in support of such a finding.

**D.    Treatment of Dissenting Classes of Creditors**

Section 1129(b)(1) of the Bankruptcy Code requires the Bankruptcy Court to find that the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.  Upon such a finding, the Bankruptcy Court may confirm the Plan despite the objections of a dissenting class.  The Debtor has requested that the Court confirm the Plan even if Creditors holding Claims in impaired Classes do not accept the Plan, on the basis that the Plan does not discriminate unfairly, and it is fair and equitable, as to all Classes of Claims.

**E.    Effect of Confirmation of the Plan**

Pursuant to Bankruptcy Code section 1141, upon Confirmation, all property of the Estate shall be free and clear of all claims and interests of creditors, except as otherwise provided in the Plan or the Confirmation Order.  The Post-Confirmation Debtor shall be vested with all assets of the Debtor.  The provisions of the Plan shall bind the Debtor and all other parties in interest, including any Creditor of the Debtor, whether or not such Creditor is impaired under the Plan and whether or not such Creditor has accepted the Plan.  However, pursuant to section 1141(d)(3) of the Bankruptcy Code, the Debtor and Post-Confirmation Debtor shall not obtain a discharge of claims and indebtedness that arose before the Effective Date.

DISCLOSURE STATEMENT FOR DEBTOR'S AMENDED PLAN
OF LIQUIDATION – Page 15

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hj01tg01er

**F.     Exculpation**

        The Plan contains an exculpation provision for certain Exculpated Parties for any act taken or omitted to be taken in relation to or in connection with the Plan or Confirmation thereof.

~~F.~~**G.**    **Consequences of the Failure to Confirm the Plan**

        In the event the Court declines to confirm the Plan, the Debtor believes the most likely outcome is that the Court would ultimately convert the Bankruptcy Case to Chapter 7 and grant a motion from Pivot Lender for relief from the automatic stay so it could resume its foreclosure proceeding.  In that event, no other Creditor will receive any distribution on their Claim.

        DATED this ~~16th~~____ day of ~~September~~October, 2024.

                        B-1208 PINE, LLC


                        By____*/s/ DRAFT*~~James H. Wong~~_____
                             James H. Wong
                             Its Manager

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

hj01tg01er