Honorable Christopher M. Alston
Chapter 11
Hearing Date: November 14, 2024
Time: 9:30 a.m.
Hearing Location: Seattle, WA
Response Date: November 7, 2024

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re:<br><br>B-1208 PINE, LLC,<br><br>                        Debtor. | Case No. 24-10088-CMA<br><br>**AMENDED DISCLOSURE STATEMENT FOR PIVOT APARTMENT LENDER LLC'S PLAN OF LIQUIDATION FOR THE DEBTOR** |

> **THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**

Pivot Apartments Lender LLC (the "Secured Creditor" or the "Proponent"), a secured creditor and mortgagee of the Debtor, B-1208 PINE, LLC (the "Debtor") has filed its Plan of Liquidation for the Debtor (the "Plan") pursuant to Chapter 11 of the Bankruptcy Code. This Disclosure Statement for the Proponent's Plan of Liquidation for the Debtor (the "Disclosure Statement") is being submitted for the approval of the Bankruptcy Court for use in connection

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

with the Plan filed to sell substantially all of the assets of the estate of the Debtor pursuant to Section 1125 of Title 11 of the United States Code (the "Bankruptcy Code").[1]

A copy of the Plan accompanies this Disclosure Statement. A glossary of terms frequently used in this Disclosure Statement is set forth in Article 1 of the Plan.

**The Proponent and Debtor believe that Confirmation of the Plan is in the best interests of all the Debtor's creditors.**

<div align="center">SUMMARY OF THE PLAN</div>

The Bankruptcy Court entered an order on or about September 20, 2024 that confirmed that the Debtor's exclusive period to file and solicit a plan expired before the filing of this Disclosure Statement and the Plan. This Plan, submitted by Proponent, provides for the liquidation of the Debtor's assets including the liquidation of the real property and improvements thereon, commonly known as the Pivot Apartments, located at 1208 Pine Street, Seattle, Washington, and titled in the name of Debtor (the "Property" or the "Project") and for the use of the proceeds from the sale to pay Claims, as more fully described below and in the Plan.

The Proponent or Debtor, as the case may be, will engage broker Eastdil Secured or such other broker to whom Proponent and the Debtor agree (the "Broker") as its real estate advisor and such Broker shall market and auction the Property and the Property Causes of Action (the "Sale") pursuant to 11 U.S.C. §§ 363, 1123(a)(5)(D), and 1123(b)(4) to obtain the highest and best price, in accordance with the applicable provisions of the Bankruptcy Code, the bid procedures, attached hereto as **Exhibit "A"**, and the Plan. The Sale shall be conducted following confirmation of the Plan, but subject to certain conditions set forth in detail herein below and in the Plan. The Broker shall be retained subject to certain conditions set forth in the Broker Engagement Agreement to be filed with the Court prior to the Confirmation Hearing.

---

[1] Capitalized terms not defined herein shall have the definitions set forth in t Plan.

AMENDED DISCLOSURE STATEMENT- 2

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

In the event that the Available Cash on the Effective Date is insufficient to provide creditors of the Debtor's estate with the distributions required to be made on the Effective Date, any shortfall will be funded by the Proponent (by either reducing the distribution to be made on account of the Lender Secured Claim as more fully described below, or through Cash to be provided the Proponent) with any such shortfall funding constituting an administrative claim against the Debtor's estates payable from Cash after the Effective Date.

The table below provides a summary of the classification and treatment of Claims and Interests under the Plan. The figures set forth in the table below represents the Proponent's best estimate of the total amount of Claims and Interests filed or scheduled in this Case. These estimates have been developed by the Proponent based on its own research, the Bankruptcy Court's Claims Register, the Debtor's Schedules and certain other documents of public record. Although the Proponent believes that the amounts of the Claims set forth below are substantially correct, there can be no assurance that Claims and Interests will be allowed by the Bankruptcy Court in the amounts set forth below:

| Class | Claim/Interest | Treatment of Claim/Interest | Estimated Amount of Allowed Claims or Interests[2] | Estimated % Distribution on Claims/Interest |
|-------|----------------|------------------------------|---------------------------------------------------|---------------------------------------------|
| 1 | Other Secured Claims | Unimpaired | $0 | 100% |
| 2 | Lender Secured Claim | Impaired | Unknown[3] | Unknown |

---

[2] The amounts set forth in this schedule are not and should not be deemed admissions by the Proponent as to the validity or amount of any claim and Proponent reserves all rights to object to any claim in this case. The amounts listed in this column as to claims assumes all filed claims are allowed except where provided otherwise and includes such filed claims along with scheduled claims to the extent there is not a corresponding proof of claim. Claims (other than the Lender Secured Claim) could be the subject of objections, which, if granted, would increase the estimates provided herein of recoveries to holders of Allowed Claims.

[3] As more fully described below, the Claim in this Class shall be an amount to be determined through the distribution of the net proceeds of the Sale of the Debtor's Property. Thus, the amount of this Secured Claim shall be determined based on the net proceeds of the Sale of the Property. As of the Petition Date, Proponent asserts a Claim in the amount of $35,031,968.55, plus post-petition protective advances (if any), fees, expenses and costs, with interest from the Petition Date at the default rate specified in the note underlying the Lender Claim.

AMENDED DISCLOSURE STATEMENT- 3

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

| Class | Claim/Interest | Treatment of Claim/Interest | Estimated Amount of Allowed Claims or Interests[2] | Estimated % Distribution on Claims/Interest |
|---|---|---|---|---|
| 3 | Walsh Lien | Unimpaired | $4,256,401.00[4] | 100% |
| 4 | Priority Claims | Unimpaired | $0 | Unknown |
| 5 | General Unsecured Claims | Impaired | $77,008.96[5] | 100% |
| 6 | Interests in the Debtor | Unimpaired | n/a | 0% |

**CONFIRMATION OF THE PLAN**

Pursuant to Section 1128 of the Bankruptcy Code, the Bankruptcy Court has scheduled a hearing (the "Confirmation Hearing") to consider Confirmation of the Plan, **on January 9, 2025 at 1:30 p.m., prevailing Pacific Time, in the United States Bankruptcy Court for the Western District of Washington, United States Bankruptcy Court, 700 Stewart Street, Suite 6301, Seattle, Washington 98101**. The Bankruptcy Court has directed that objections, if any, to the Confirmation of the Plan be filed and served **on or before January 2, 2025 at 11:59 p.m. (prevailing Pacific time)**.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129(a) of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. The Proponent intends to seek Confirmation of the Plan. **The Proponent believes that the Plan will satisfy all applicable**

---

[4] The Walsh Lien is a "claim" based on the existing Lien of Walsh. Walsh has not filed a proof of claim. The amount and priority of the Walsh Lien is disputed, and the Plan provides that the Walsh Lien "Claim" constitutes a Disputed Claim. Nevertheless, the amount asserted here is the amount Walsh has asserted in litigation. However, the amount indicated above does not include post-petition interest and attorneys' fees that Walsh is seeking in its complaint in the State Court Litigation.

[5] This amount is an estimate based on what the Proponent believes will be the Allowed amount of Claims in this Class (excluding any deficiency claim by the Lender). Under section 4.4 of the Plan, if the Proponent is the Successful Bidder based on a credit bid, the Proponent will provide a distribution of $77,008.96 to holders of the General Unsecured Claims other than the Lender Unsecured Claim. The Disclosure Statement estimates that this will provide a 100% distribution. Such estimate is dependent on, among other things, the successful objection to certain claims, the exclusion of the Lender's deficiency claim from distributions in this Class, and the agreement for the waiver of the claim at Docket 1, Schedule F at 3.31 in the amount of $255,370.97 against the Debtor.

AMENDED DISCLOSURE STATEMENT- 4

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

Case 24-10088-CMA    Doc 211    Filed 11/19/24    Ent. 11/19/24 15:10:03    Pg. 4 of 39

1  **requirements of Section 1129(a) of the Bankruptcy Code**.  Confirmation and the entry of an

2  Order confirming the Plan makes the Plan binding upon the Debtor, its Interest Holder(s), all

3  Creditors, and other parties regardless of whether they have objected to the Plan.  If an impaired

4  Class votes against the Plan, the Proponent intends on seeking confirmation under Section

5  1129(b) of the Bankruptcy Code, which the Proponent believes will be satisfied.

6  As of the Effective Date, all holders of Claims or Interests will be precluded from

7  asserting any Claim against the Proponent, the Debtor, or the Debtor's assets or Property or other

8  interests in the Debtor based on any transaction or other activity of any kind that occurred before

9  the Confirmation Date except as otherwise provided in the Plan.

10  <center>**VOTING INSTRUCTIONS AND CONFIRMATION OF PLAN**</center>

11  **A.**     **Manner of Voting on Plan**

12  Before you vote on the Plan, this Disclosure Statement and the Plan should be read in its

13  entirety.  You should only use the Ballot sent to you with this Disclosure Statement, if any, to

14  cast your vote for or against the Plan.

15  If you hold a Claim in Class 2, 3, and/or 5, a ballot for your acceptance or rejection of the

16  Plan will be included in the package of materials forwarded to you along with this Disclosure

17  Statement and the Plan. You should complete, date and sign your ballot and return it to Foster

18  Garvey PC, 1111 Third Avenue, Suite 3000, Seattle, Washington 98101-3296, Attn: Deborah A

19  Crabbe, Esq., attorneys for the Proponent.  All ballots must be **received** prior to **5:00 P.M.**

20  **Pacific Time on January 2, 2025**.  A copy of the form of the ballots is annexed hereto as **Exhibit**

21  **"B".**

22  **B.**     **Claim Holders Entitled to Vote**

23  Under the Bankruptcy Code, any holders of Claims in Classes that are "impaired" under

24  the Plan are entitled to vote to accept or reject the Plan, unless such Class does not receive or

25  retain any property under the Plan, in which case such Class is deemed to have rejected the Plan.

26

AMENDED DISCLOSURE STATEMENT- 5

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

Bankruptcy Code Section 1124 provides generally that a Class is impaired if the legal, equitable or contractual rights of the Claims or Interests in that Class are altered.

Subject to the exceptions provided below, any holder whose Claim is impaired under the Plan is entitled to vote if either (i) its Claim has been scheduled by the Debtor and such Claim is not scheduled as disputed, contingent or unliquidated; or (ii) such Claim holder has filed a proof of Claim which is not otherwise a Disputed Claim.

A holder of a Disputed Claim is not entitled to vote on the Plan unless such Claim is temporarily allowed by the Proponent or by an order of the Bankruptcy Court in an estimated amount which it deems proper for the purpose of voting to accept or reject the Plan. In other words, only holders of Allowed Claims in impaired classes may vote to accept or reject the Plan. A Claim to which an objection has been filed or a Claim (i) which is listed on the Debtor's Schedules as disputed, unliquidated or contingent; and (ii) with respect to which a superseding Proof of Claim has not been filed, is not an Allowed Claim for voting purposes, unless the Claim is settled by agreement, and the Bankruptcy Court allows the Claim (in whole or in part) by Final Order. Upon request of a party-in-interest, the Bankruptcy Court may temporarily allow or estimate a Disputed Claim for the purpose of voting on the Plan. Ballots cast in respect of Claims other than Allowed Claims will not be counted. In addition, a vote may be disregarded if the Bankruptcy Court determines that the acceptance or rejection of the Plan by the Creditor is not solicited or procured in good faith, or in accordance with the provisions of the Bankruptcy Code.

### C. Classes Not Impaired Under the Plan

The Proponent believes that the claim by the holder in Class 3 (Walsh Lien) is unimpaired pursuant to Section 1124 of the Bankruptcy Code, but in an abundance of caution, Class 3 will be solicited and entitled to vote on the Plan.

The equity interests in Class 6 (Equity Interests) pursuant to Section 1124 of the Bankruptcy Code are unimpaired under the Plan and therefore not entitled to vote on the Plan.

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

**D.      Classes Impaired Under the Plan**

Class 2 (Lender Secured Claim) and Class 5 (General Unsecured Claims) are impaired under the Plan and are eligible, subject to the limitations set forth in Section B above, to vote to accept or reject the Plan.  Any controversy as to whether any Claim or Class of Claims is impaired under the Plan shall, after notice of a hearing, be determined by the Bankruptcy Court.

**E.      Vote Required for Class Acceptance**

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a Class of impaired Claims as acceptance by at least two-thirds (2/3) in dollar amount and more than one half (1/2) in number of holders of Allowed Claims in that Class who cast ballots.

Section 1126(d) of the Bankruptcy Code defines acceptance of a plan by a class of Interest holders as acceptance by holders of at least two-thirds (2/3) in amount of the allowed interests of such class who cast ballots.

If there are no votes in a class, the Proponent intends on seeking a ruling by the Bankruptcy Court that such class will have been deemed to accept the Plan.

### NOTICE TO HOLDERS OF CLAIMS AND INTERESTS

This Disclosure Statement is being furnished by the Proponent to the Debtor's known creditors pursuant to Section 1125(b) of the Bankruptcy Code.  The Plan has been filed with the Bankruptcy Court and is incorporated herein by reference.  Parties in interest may view the Plan on the internet at http://www.wawb.uscourts.gov.[6]

The purpose of this Disclosure Statement is to enable you, as a Creditor, to make an informed decision in exercising your right to consider whether to object to the Plan, and, if applicable, whether to vote for or against the Plan.

The historical information concerning the Debtor has been prepared using certain filings made with the Bankruptcy Court.  The estimates of Claims and Interests set forth herein may vary from the final amounts of Claims or Interests allowed by the Bankruptcy Court. However,

---

[6] A password is necessary for access to view documents on the Internet.

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

the Plan provides for the Proponent's Claim in the amount of $35,031,968.55, plus post-petition protective advances (if any), fees, expenses and costs, with interest from the Petition Date at the default rate specified in the note underlying the Lender Claim, to the extent and in such amount as to post-petition amounts as the Bankruptcy Court may determine upon notice and a hearing, if necessary, though the amount of such claim that is a Lender Secured Claim will depend on the results of the sale process.

Notwithstanding any provision of the Plan to the contrary, definitions and descriptions contained herein respecting pre-Petition documents, agreements, or Claims are provided solely for the purpose of identification and classification thereof and do not constitute an admission by the Proponent of the existence, validity, allowance, or amount of any such claim, document or agreement. The Proponent expressly reserves the right to challenge the existence, validity, allowance, or amount of any such Claim, document or agreement.

This Disclosure Statement contains a summary of certain provisions of the Plan and the transactions contemplated thereunder, as well as descriptions of certain other related documents.

While the Proponent believes that these summaries are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents. Reference is made to the Plan and the documents referred to herein and therein for a complete statement of the terms and provisions thereof. In the event of any inconsistency between the terms of the Plan and this Disclosure Statement, the terms of the Plan shall be controlling. In reviewing the Plan and this Disclosure Statement, the reader should give special attention to "RISK FACTORS." No statements or information concerning the Debtor or its assets, results of business operations or financial condition are authorized by the Proponent, other than as set forth in this Disclosure Statement, its exhibit(s) and the Plan.

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified herein. The delivery of this Disclosure Statement shall not create,

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

under any circumstances, an implication that there has been no change in the facts set forth herein since the date hereof.

This Disclosure Statement is intended for the sole use of Creditors and Interest holders to be informed about the Plan. Each holder of a Claim or Interest should review this Disclosure Statement, its exhibit(s) and the Plan. Holders of Claims or Interests are urged to consult with their own legal and financial advisors.

No solicitation of votes to accept or reject the Plan may be made except pursuant to this Disclosure Statement and Section 1125 of the Bankruptcy Code. No Person has been authorized to use or promulgate any information concerning the Debtor or their business or the Plan, other than the information contained in this Disclosure Statement and the exhibits hereto. You should not rely on any information relating to the Debtor or their business or the Plan other than that contained in this Disclosure Statement and the exhibits hereto.

## BACKGROUND[7]

### A.     THE DEBTOR AND ITS PROPERTY.

#### The Debtor and the Property

The Debtor owns the Project. The Project is comprised of 95 residential units, almost 5,000 square feet of retail space, and is at approximately 90–95% occupancy.

Development and construction of the Project spanned seven years, although vertical construction largely occurred during the COVID-19 pandemic. In July 2015, SolTerra, LLC, dba Vibrant Cities ("SolTerra"), the Debtor's upstream parent, entered into a purchase and sale agreement to acquire the real property that would later become the Project. SolTerra is a Seattle-based multifamily, urban-focused development and investment company with expertise

---

[7] The Background section constitutes statements taken from the Debtor's First Amended Disclosure Statement for Debtor's First Amended Plan of Reorganization, with certain minor editing both by the Proponent and by Walsh. None of the statements in the Background section may be used against the Proponent in litigation, as the Proponent is relying on the Debtor for the accuracy of the statements therein.

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

1 in ground-up development, investment, construction, architectural, and property management.

2 *See* www.vibrantcities.com. James Wong and Pui Leung are SolTerra's cofounders.

3 In November 2015, SolTerra created Pine Esker, LLC, as the single-purpose entity to

4 manage the development of the property. Between July 2015 and the closing of the purchase of

5 the building site in August 2016, ownership raised its initial round of equity of approximately

6 $9 million from friends and family, who invested in the Project. The $9 million was used to pay

7 for the land acquisition and entitlement and permitting costs.

8 After more than three years of effort to obtain the necessary design approvals and permits,

9 ownership went to the market to raise the additional funds necessary to construct the Project.

10 The original total budget, including land costs, was $44.8 million. The $13.4 million of equity

11 and preferred equity that ownership raised, represented approximately 30% of the total Project

12 cost and a bank loan for the balance of the project cost represented approximately 70% of the

13 total Project cost. The equity and bank loan should have been sufficient to complete the project.

14 Utilizing the then market capitalization rate of 4.4%, ownership estimated the completed value

15 of the project to be $51.5 million, or an approximately $6.7 million profit for the equity investors.

16 The $44.8 million costs included a $3 million cash liquidity component, which would have been

17 returned to investors upon completion, increasing the resulting profit to equity of approximately

18 $9.8 million.

19 **COVID Leads to Increased Expenses and Delays.**

20 Unfortunately, while operational income and expense components of the 2019 proforma

21 were later met, construction costs and timelines were significantly impacted by the COVID-19

22 pandemic. In February 2020, the State declared a state of emergency due to the pandemic,

23 followed by a stay-at-home order a month later. With these state mandates, construction of the

24 Project was significantly delayed as workers and subcontractors had to stay home from time to

25 time, interest holding costs skyrocketed, and the construction site had to implement stringent

26 safety measures that significantly effected efficiencies. Worse still, the numerous increases in

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

the federal funds rate in response to COVID created increased borrowing rates and had a significant negative effect on valuations and lending options. Finally, supply chain disruptions drove up costs and significantly delayed completion, as subcontractors were unable to procure necessary material in a timely fashion. There were multiple issues with the City of Seattle, including difficulties in scheduling inspections of completed stages of construction so that work could continue. What normally would take a week often took 4 to 8 weeks to complete inspections.

These and other events significantly delayed the Debtor's occupancy timeline. The projected completion date for the project that Walsh Construction Company II, LLC ("Walsh"), the general contractor, provided was October 9, 2020. The Debtor did not receive its Temporary Certificate of Occupancy (TCO) – the certificate required to move residents and tenants into the building – until May 17, 2022. The project was delayed by more than 585 days, or 1 ½ years, resulting in significant additional interest expense and increased construction costs due to rising material prices and delays.

In January 2022, Colliers presented a potential buyer for the Project. The buyer was a national multifamily owner that owns and manages over 15,000 apartment units. On January 30, 2022, the buyer submitted a letter of intent ("LOI") to purchase the Project for $60 million after it reached 50% occupancy, which took approximately 6 months to achieve. However, by that time the Federal Reserve had announced its second rate hike, and the buyer terminated the LOI. In short, an on-time, or earlier, completion would likely have allowed the Debtor to monetize the Project and avoid this filing altogether.

**Additional Financing Became Necessary.**

Due to delay and increased material, labor and interest costs, ownership had to secure additional funding, in the form of loans from Mr. Omar Lee and Christine Lee (together, "Lee") for $4,000,000 in April 2022, and South Point Capital LLC ("South Point") for $2,660,000 for the completion of the project. This increased the total costs of the Project from $44.8M to

AMENDED DISCLOSURE STATEMENT- 11

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

$51.3M. As part of Lee and South Point's requirements and the Debtor's commitment to completing construction, Mr. Wong provided a personal guarantee to secure the loans.

In October 2022, the Debtor obtained a $32 million bridge loan the ("Pivot Lender Loan") from the Proponent, to take out the existing construction loan from Bank OZK/HIG. The Pivot Lender Loan had a two-year term with two six-month extension options. The Pivot Lender Loan had over $3 million of interest and construction work reserves. With expected NOI of $2.2 million and interest costs of $2.56 million, the Debtor's operating shortfall would only be $400,000 per year while the Debtor awaited a return to normalcy in the capital markets. The reserves were projected to be more than sufficient to backstop the Pivot Lender Loan.

**Pivot Lender Fails to Assure First-Position Lien.**

Unfortunately, the closing of the Pivot Lender Loan created another set of issues. When the Pivot Lender Loan to the Debtor closed in October 2022, the Proponent recorded a new deed of trust to secure its loan. Neither the Proponent nor its title insurer conditioned the loan on obtaining an executed subordination agreement from Walsh and its subcontractors as to their construction lien rights. As a result, Walsh claims a senior lien position, and litigation is now pending between Walsh and the Proponent as to their respective lien priorities.

**Walsh Records Lien; Priority Dispute.**

The Debtor encountered difficulties with Walsh and its resulting claim as well. Many cost increases had to be absorbed by the Debtor. The Debtor contends, however, other cost increases and delays were Walsh's responsibility in accordance with the parties' AIA contract. Unbeknownst to the Debtor or Proponent, Walsh recorded a lien against the Project for $4.3 million in December 2022, which Walsh alleges relates back to the commencement of its work on the Project. The Debtor believes the actual Walsh Claim amount is less than the amount Walsh asserts is owed. Prior to the time Walsh recorded its lien, the Debtor and Walsh attempted to resolve this Claim through mediation but to no avail, a circumstance compounded by the Walsh dispute with Proponent regarding the lien priority dispute.

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

As the relationship between the Debtor and Proponent deteriorated, Proponent made the decision that it would no longer release any funds from the interest reserve, and instead required the Debtor to use its own funds to pay monthly loan payments to Proponent. Unfortunately, ownership had used all its available cash to finish construction of the building. In August 2023, ownership began to take the rental income, which was previously deposited in a lender-controlled account, to pay all operating expenses from the rents and then sent the balance to Proponent to pay the interest payments on the Pivot Lender Loan.

**Fed Rate Hikes and Cap Rate Increases.**

Along the way, the Debtor engaged Cushman & Wakefield ("Cushman") in May 2023 to market the Property for sale. In a Broker's Opinion of Value, Cushman opined that the market value of the Project was between $44.3 million and $46.0 million. A sale in this range would net proceeds sufficient for full payment of the Pivot Lender Loan, the Walsh claim, the junior lenders, and general unsecured claimants. Unfortunately, that opportunity went away as a result of three additional Federal Reserve interest rate hikes of a total of 200 basis points, which also led to increased capitalization rates and lower appraised values. Instead of offers for the Property coming in at the mid-40-million-dollar range, offers from eight potential buyers were between $25 million to $34 million. Even if ownership were to sell at the highest end of the range, $34 million would not have been sufficient to pay off Walsh's lien and Proponent after taxes and fees.

**Foreclosure Causes Bankruptcy Filing.**

On or about December 15, 2023, Proponent commenced a non-judicial foreclosure proceeding, scheduling a trustee's sale for March 29, 2024. Thereafter, December 19, 2023, Proponent commenced litigation against the Debtor in King County Superior Court, *Pivot Apartments Lender, LLC v. B-1208 Pine, LLC,* Case No, 23-2-25097-4 SEA, seeking appointment of a receiver to take possession and control of the Property and its rents pending completion of the foreclosure. After Proponent declined to participate in any discussions with

AMENDED DISCLOSURE STATEMENT- 13

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

the Debtor seeking an alternative course, this bankruptcy case was commenced to preserve the Property as a source of recovery for all creditors.

### B. Significant Post-Petition Activity in the Bankruptcy Case

**1. Debtor-in-Possession.** The Debtor is operating its business and managing its affairs as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed to serve in this reorganization case.

**2. Adequate Assurances to Utilities.** On January 24, 2024, the Bankruptcy Court entered an order approving the Debtor's proposed adequate protection to utility providers (the "Utility Order"). ECF No. 39. After notice to Utility Providers and receiving no responses, the Utility Order became final on February 16, 2024.

**3. Use of Prepetition Cash Management Systems and Bank Accounts.** On January 24, 2024, the Bankruptcy Court entered an order approving on an interim basis the Debtor's continued use of prepetition cash management systems and bank accounts. ECF No. 42. On February 22, 2024, the Bankruptcy Court entered an order granting final approval of the Debtor's use of prepetition cash management systems and bank accounts. ECF No. 68.

**4. Employment of Professionals.** The Bankruptcy Court entered orders authorizing the employment of the following professionals pursuant to Bankruptcy Code § 327.

| Professional | Role | Order Entered | Docket No. |
|---|---|---|---|
| Bush Kornfeld LLP | Bankruptcy Counsel to Debtor | 2/16/24 | 63 |
| Cascade Capital Group, LLC | Financial Advisor to Debtor | 2/22/24 | 69 |
| Smith Currie Oles | Special Counsel to Debtor | 3/29/24 (but order subsequently revoked) | 89 |

**5. Approval of Debtor's Use of Cash Collateral.** On February 5, 2024, the Bankruptcy Court entered an order authorizing, on an interim basis, the Debtor's use of cash collateral and the granting of adequate protection in favor of Proponent pending a final hearing.

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

On February 23, 2024, the Bankruptcy Court entered an order granting final approval of the use of cash collateral and granting of adequate protection, subject to termination on the bases set forth in the order. ECF No. 72.

**6.     Removal of State Court Litigation to Bankruptcy Court.** On December 16, 2022, Walsh commenced litigation against the Debtor and others, alleging (among other things) breach of contract and breach of good faith and fair dealing in King County Superior Court, Case No. 22-2-20748-5 SEA (the "State Court Litigation"). Walsh seeks an award of more than $4.2 million and to foreclose on its construction lien. On January 19, 2023, Walsh filed an amended complaint to, among other things, add Proponent as a defendant.

On January 23, 2024, Proponent filed a *Notice of Removal of Action*, effecting the removal of the State Court Litigation to this Court, which was assigned Adv. No. 24-ap-01010 (the "Adversary Proceeding").

**7.     Motion for Withdrawal of the Reference.** Pursuant to 28 U.S.C. § 1334(a), each district court has original and exclusive jurisdiction over all bankruptcy cases filed within the relevant district. However, 28 U.S.C. § 157(a) permits each district court to refer all bankruptcy cases to the bankruptcy court within such district. Pursuant to Local Civil Rule 87(a), the District Court for the Western District of Washington (the "District Court") adopted a standing referral of all bankruptcy cases to the Bankruptcy Court.

On March 7, 2024, Walsh filed a motion with the District Court for withdrawal of the reference pursuant to 28 U.S.C. § 157(d) that, if granted, would have transferred the Bankruptcy Case to the District Court. By order entered May 24, 2024, the District Court denied the motion without prejudice as being premature.

**8.     Claims Bar Date; Effect.** By order entered March 11, 2024, the Bankruptcy Court set the Claims Bar Date. Pursuant to Bankruptcy Code § 1111(a) and Bankruptcy Rule 3003(b)(1), every creditor whose Claim is listed in the Schedules as disputed, contingent or

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

unliquidated was required to file a Proof of Claim by the Claims Bar Date. Among possibly other Creditors, Walsh failed to file a Proof of Claim, timely or otherwise.

9. **The Debtor's Reorganization Efforts.** Debtor filed a First Amended Disclosure Statement [ECF No. 121] and First Amended Plan of Reorganization [ECF No. 120] on June 20, 2024.

On August 15, 2024, the Bankruptcy Court conducted a hearing on the Debtor's First Amended Plan of Reorganization and denied confirmation for, among other things, the First Amended Plan of Reorganization was not in the best interest of the creditors. On August 16, 2024, this Court entered an order [ECF No. 153] denying confirmation of the Debtor's plan.

On September 20, 2024, the Bankruptcy Court entered an order [ECF No. 174] that, among other things, revoked the Bankruptcy Court's approval of the Debtor's First Amendment Disclosure Statement.

## Summary of the Plan

The following summary of the terms of the Plan is qualified in its entirety by reference to the provisions of the Plan, a copy of which accompanies this Disclosure Statement, and which is incorporated herein by reference.

The Proponent submits that the treatment of Creditors under the Plan is the same or better than the treatment Creditors would receive if the Chapter 11 Case were converted to a Chapter 7. Therefore, the Proponent submits that the Plan is in the best interests of the Creditors and the Proponent recommends acceptance of the Plan by holders of Claims in all Classes.

**The Proposed Sale**

The Plan provides for the liquidation of the Debtor by selling the Debtor's only material asset, the Property, to generate proceeds to pay Allowed Claims of the Debtor's estate as more fully described herein and in the Plan.

The Proponent intends to sell the Property (and the Property Causes of Action) to obtain its highest and best price, in accordance with applicable provisions of the Bankruptcy Code. The

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

1  closing of the Sale shall take place following the Auction in accordance with the Bid Procedures.

2  In summary, the Broker will market the Property (and the Property Causes of Action) and conduct

3  an Auction following confirmation at which the Proponent will be entitled, within its discretion,

4  to submit a credit bid up to the Allowed amount of the Lender's Claim.  In the event there are no

5  other bidders for the Property other than the Lender (or its nominee(s), designee(s) or

6  assignee(s)), the amount of such credit bid shall be the minimum bid amount set forth in the Bid

7  Procedures.

8      The winning bidder at the Auction (the "Successful Bidder") shall take title to the

9  Property (and the Property Causes of Action) free and clear of all liens, claims and encumbrances

10  pursuant to Sections 363(f) and 1123(a)(5) of the Bankruptcy Code, and if the purchaser of the

11  Property is the Lender (or its designee, assignee or nominee) with a credit bid, the Walsh Lien,

12  which shall survive and the Property will be transferred to the Lender (or its designee, assignee

13  or nominee) subject to the Walsh Lien, to the extent it has not been expunged by a Final Order

14  of this Court.

15      In the event that the Available Cash on the Effective Date is insufficient to provide

16  creditors of the Debtor's estate with the distributions required to be made on the Effective Date,

17  any shortfall will be funded by the Proponent by either reducing the distribution to be made on

18  account of the Lender's Secured Claim in Class 2, or through Cash to be provided by the

19  Proponent with any such shortfall funding constituting an administrative claim against the

20  Debtor's estates payable from Available Cash after the Effective Date.

21      Upon completion of the Sale, Kriss & Feuerstein LLP, the Proponent's Disbursing Agent,

22  shall be authorized to execute any and all documents necessary to effectuate the conveyance of

23  the Property (and the Property Causes of Action) in accordance with the terms of the Plan,

24  including without limitation, Bargain and Sale Deed with Covenants, a Bill of Sale and all

25  required transfer tax returns and other applicable documents.  Furthermore, on the Effective Date,

26  the Debtor will provide the Successful Bidder, or its nominee, with an assignment and assumption

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

of all unexpired leases or executory contracts that are subject of an Assumption Notice at the Property, subject to the later approval of the assumption and assignment as provided in section 5.1 of the Plan.

**The Broker**[8]

The Proponent will engage Eastdil Secured or such other broker as the Proponent and Debtor agree to, who will handle the marketing and sale of the Property pursuant to the Bid Procedures. The Proponent will ensure that the Broker retained has ample experience in the sales of commercial real estate throughout this region. The Broker's Engagement Agreement will list the scope of the assignment and the compensation. If the Property is sold to the Proponent (or its designee, assignee, or nominee) with a credit bid, Broker shall be entitled to compensation of $50,000. If the Property is sold to any other person, the Broker shall be paid 0.75% of the gross sale price. The Broker shall be retained subject to certain conditions set forth in the Broker Engagement Agreement to be filed with the Court prior to the Confirmation Hearing.

  A.  **Classification of Claims and Interests**

Classification of claims is governed, in part, by Sections 1122 and 1123(a) of the Bankruptcy Code. 11 U.S.C. § 1123(a) requires that a plan designate classes of claims, requires that the plan specify the treatment of any impaired class of claims, and requires that the plan provide the same treatment for each claim of a particular class, unless the holder of a claim receiving less favorable treatment consents to such treatment. 11 U.S.C. § 1123(a)(1), (3) and (4). 11 U.S.C. § 1122(a) of the Bankruptcy Code provides, subject to an exception for administrative convenience, that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."

---

[8] The background information relating to the Broker is based on the Broker's website of the filing of the Disclosure Statement. More information on the Broker can be found on its website https://www.eastdilsecured.com/.

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

Article 3 of the Plan classifies the various Claims against and Interests in the Debtor into four (4) classes of Claims and one (1) class of Interests:

**Class 1 -**      **Other Secured Claims**

**Class 2 -**      **Lender Secured Claim**

**Class 3 -**      **Walsh Lien**

**Class 4 -**      **Priority Claims**

**Class 5 -**      **General Unsecured Claims**

**Class 6 -**      **Interests in Debtor**

As discussed above, Class 6 is unimpaired under the Plan and holders of claims or interests in such Class are conclusively deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.   As a result, no voting or balloting will be conducted of the creditors or interest holders in such Class under the Plan.  Classes 1, 2, 4, and 5 are impaired under the Plan and Class 3 is deemed to be impaired for voting purposes and, as such, holders of claims or interests in such classes will receive a ballot to vote on the Plan.  As set forth in Article 2 of the Plan, pursuant to Section 1123(a)(1) of the Bankruptcy Code, certain Administrative Claims against the Debtor have not been classified.  See "SUMMARY OF THE PLAN -- Treatment of Non-Classified Claims."

**Class 1 –Other Secured Claims.**  Class 1 consists of all Other Secured Claims against the Debtor (*i.e.*, other than the Secured Claims of Proponent).  The Proponent is informed and believes there are no "Other Secured Claims" and the only secured claims are those set forth in Class 2 and Class 3 based on the expected sale price of the Property and the amount of the Claims in Classes 2 and 3.  The Other Secured Claims in Class 1 are unimpaired under the Plan.

**Class 2 – Lender Secured Claim**.  Class 2 consists of the Lender Secured Claim, which comprises the secured portion of the Lender Claim, which is secured by a first priority security interest in the Property.  The Plan allows the Lender Claim at $35,031,968.55, plus post-petition protective advances (if any), fees, expenses and costs, with interest from the Petition Date at the

AMENDED DISCLOSURE STATEMENT- 19

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

default rate specified in the note underlying the Lender Claim. The amount of the Lender Secured Claim shall be determined based on the extent to which the Lender Claim is secured by an interest in the Property, which shall be determined by the amount of net proceeds received from the Sale of the Property and the result of litigation with Walsh over the amount of and priority of the Walsh Lien. To the extent that the Lender Claim is not secured by an interest in the Property, the resulting unsecured portion of the Lender Claim shall constitute the Lender Unsecured Claim, which shall be a claim included in Class 5. Lender has agreed to waive any portion of its Lender Unsecured Claim that is a Class 5 claim, and Lender shall receive no payment on its Class 5 claim through the Plan. The Lender Secured Claim is impaired under the Plan.

**Class 3 – Walsh Lien**. Class 3 consists of the Walsh Lien. Under the Plan, the Walsh Lien is the lien of Walsh against the Property. The amount due under this Lien and the Lien's priority is disputed and to the extent it constitutes a Claim (notwithstanding that Walsh did not file a proof of claim and the Debtor's schedules lists the Walsh claim as contingent, disputed and unliquidated), it is a Disputed Claim. If the Walsh Lien becomes an Allowed Claim, it may be further limited in amount depending on the result of the Sale of the Property and the priority of and amount due under the Walsh Lien as determined by this Court. The Proponent believes that the claim by the holder in Class 3 (Walsh Lien) is unimpaired pursuant to Section 1124 of the Bankruptcy Code, but in an abundance of caution, Class 3 will be solicited and entitled to vote on the Plan.

**Class 4 - Priority Claims**. Class 4 consists of all Priority Claims against the Estate. The Priority Claims in Class 4 are unimpaired under the Plan.

**Class 5 –General Unsecured Claims**. Class 5 consists of all General Unsecured Claims against Debtor. The General Unsecured Claims in Class 5 are impaired under the Plan.

**Class 6 – Interests.** Class 6 consists of all Equity Interests in the Debtor. The Interests in Class 6 are unimpaired under this Plan.

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

**B.    Treatment of Claims and Interests Classified under the Plan**

Article 4 of the Plan provides for the treatment of Claims classified in Article 3 of the Plan as follows:

**Class 1 –Other Secured Claims.**  The holders of the Allowed Class 1 Other Secured Claims will receive on account of such claims Available Cash sufficient to pay such Claims in full, on the Effective Date or as soon thereafter as is reasonably practicable.

**Class 2 – Lender Secured Claim**.  The holder of the Allowed Class 2 Claim will receive on account of such claim on or about the Effective Date either a distribution of Available Cash sufficient to allow for payment in full of the Lender Secured Claim or the Property and the Property Causes of Action following a successful credit bid; provided, however, that such payment shall be reduced pursuant to section 6.2 of the Plan to the extent required to allow for payment in full on the Effective Date of the Claims in Class 1, Claims in Class 3 (to the extent Allowed), Claims in Class 4, the Statutory Fees and Administrative Claims and any other payments required to be made under the Plan.  In addition, on the Effective Date, the holder of the Allowed Class 2 Claim may apply the cash it holds as a reserve or other cash collateral to the balance due on the Lender Claim, in the manner provided for in the documents underlying the Lender Claim.

**Class 3 – Walsh Lien**.  Unless the holder of the Class 3 Claim agrees with the Proponent on different treatment, the holder of the Class 3 Claim, when Allowed, will receive on account of such Claim, payment in full, on the Effective Date or as soon thereafter as is reasonably practicable.  The Walsh Lien shall attach to the proceeds of the Sale of the Property and the Property Causes of Action, except if the purchaser of the Property is the Lender (or its designee, assignee or nominee) with a credit bid, in which case the Property is transferred subject to the Walsh Lien.  If a cash reserve is established on account of the Walsh Lien being a Disputed Claim, such cash reserve shall be in an interest bearing escrow account.

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

**Class 4 - Priority Claims**. The holders of the Class 4 Claims will receive from Available Cash sufficient to pay such Claims on the Effective Date or as soon thereafter as is reasonably practicable.

**Class 5 – General Unsecured Claims**. Unless a holder of an Allowed Class 5 Claim agrees with the Proponent on different treatment, each holder of an Allowed Class 5 General Unsecured Claim will receive on account of such claim a payment of a pro rata distribution of Available Cash after all payments to Class 1 Claims, the Class 2 Claim, the Class 3 Claim, the Class 4 Claims, the Statutory Fees and Administrative Claims, with, as to Claims in Class 1, Class 3 and Class 4, simple interest at the Federal Judgment Rate per annum from the Petition Date, with principal being paid in full prior to any payments being made on account of such interest, and with, as to the Class 2 Claim, default interest at the rate set forth in the note underlying the Lender Claim; provided. However, the claimant at Docket 1, Schedule F at 3.31 with a claim in the amount of $255,370.97 has advised Proponent that it has waived the claim against the Debtor, and as a result, the Proponent will provide a distribution of $77,008.96 or such other amount sufficient to pay holders of Claims in Class 5, other than the Lender Unsecured Claim and Schedule F 3.31 claim, in full, since the Proponent has agreed to waive the right to receive any distribution from such $77,008.96 as a member of this Class.

**Class 6 – Interests**. Holders of Allowed Class 6 Interests shall continue to retain and maintain such Interests in the Debtor and the Post-Confirmation Debtor following the Effective Date of the Plan in the same percentages as existed as of the Petition Date. Additionally, to the extent that there is any Available Cash after full payment of all Statutory Fees, Administrative Claims, the Class 1 Claims, the Class 2 Claim, the Class 3 Claim, the Class 4 Claims, the Class 5 Claims, default interest from the Petition Date forward for the Claim in Class 2 at the rates set forth in the applicable note(s) and interest from the Petition Date forward at the Federal Judgment Rate as to Claims in Class 1, Class 3, Class 4, with principal as to all such Classes being paid in full prior to any payments being made on account of such Allowed Class 6 Interests, but to the

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

extent such payments can be made, the holders of the Allowed Class 6 Interests shall receive such remaining Available Cash, pro rata, in accordance with their respective percentage interests in the Debtor.

### C.    Treatment of Non-Classified Claims

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims entitled to priority treatment under Section 507(a)(2) of the Bankruptcy Code or Claims of Governmental Units entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.  Article 2 of the Plan provides for the manner of treatment of such non-classified Claims.

**Administrative Claims.**  Administrative Claims are the costs and expenses of administration of this Case, allowable under Section 503(b) of the Bankruptcy Code, other than Bankruptcy Fees.  Administrative Claims include Claims for the provision of goods and services to the Debtor after the Petition Date, the liabilities incurred in the ordinary course of the Debtor's business (other than claims of governmental units for taxes or interest or penalties related to such taxes) after the Petition Date, Claims of professionals, such as attorneys, brokers, appraisers, and accountants, retained pursuant to an order of the Bankruptcy Court, for compensation and reimbursement of expenses under Section 330 of the Bankruptcy Code, and tax claims for the period from the Petition Date to the Effective Date of the Plan.

Each holder of an Allowed Administrative Claim shall receive cash in the full amount of its Administrative Claim.  All rights are reserved as to all parties, including the Proponent and Debtor, to object to any fee applications.  It is not believed that there will be any other Administrative Claims in this case, aside from the Broker's commission, which shall be paid via a buyer's premium, and the Debtor's bankruptcy counsel and financial advisor.

Each Administrative Claim, shall be paid by the Disbursing Agent in Cash in full on (i) the later of the Effective Date, the date payment of such Claim is due under the terms thereof or applicable law, or three business days after such Claim becomes an Allowed Administrative

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

1  Claim, or (ii) as may be otherwise mutually agreed in writing between the Disbursing Agent and

2  the holder of such Claim, provided, however, that any Allowed Administrative Claim incurred

3  by the Debtor in the ordinary course of its business shall be paid in full in accordance with the

4  terms and conditions of the particular transaction giving rise to such Allowed Administrative

5  Claim and any agreements relating thereto.

6  Article 2 of the Plan sets a final date for the filing of Administrative Claims against the

7  Debtor. The Administrative Bar Date is fourteen (14) days after entry of the Confirmation Order.

8  **Bankruptcy Fees.** All fees and charges assessed against the Debtor and its Estate under

9  Section 1930 of title 28 of the United States Code and any applicable interest thereon shall be

10  paid by the Disbursing Agent in Cash in full as required by statute, and until the closing,

11  conversion or dismissal of this case, whichever is earlier. The Disbursing Agent shall continue

12  to be responsible for the payment of any such fees and charges.

13  **Professional Fees.** 11 U.S.C. § 330 of the Bankruptcy Code sets the standard for the

14  determination by the Bankruptcy Court of the appropriateness of fees to be awarded to

15  Professionals retained by the Debtor in a case under the Bankruptcy Code. In general, bankruptcy

16  legal services are entitled to command the same competency of counsel as other cases. "In that

17  light, the policy of this section is to compensate attorneys and other professionals serving in a

18  case under title 11 at the same rate as the attorney or other professional would be compensated

19  for performing comparable service other than in a case under title 11." 124 Cong. Rec. H11091

20  (Daily ed. Sept. 28, 1978).

21  Reasonable compensation due to the Debtor's retained professionals pursuant to Section

22  330 of the Bankruptcy Code, as determined by the Bankruptcy Court, shall be payable in full and

23  in Cash on the Effective Date unless otherwise agreed to in writing between the holder of such

24  claim and the Debtor and approved by the Bankruptcy Court.

25

26

AMENDED DISCLOSURE STATEMENT- 24

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

**D.     DISPUTED CLAIMS**

Article 8 of the Plan contains a mechanism for resolving disputes concerning the amount of certain Claims asserted against the Debtor's by any Entity.

**Time to Object.**  Proponent, shall have authority to file, prosecute, settle, compromise, withdraw or resolve objections to Claims as they see fit in its discretion.  Unless otherwise ordered by the Bankruptcy Court or provided in this Plan, the Proponent may file and serve any objection to any Claim or Interest at any time, but in no event after the Effective Date for Claims that are otherwise entitled to payment on the Effective Date or, for all Claims that are otherwise entitled to payment after the Effective Date, on the later of (i) ninety (90) days following the Effective Date; or (ii) sixty (60) days after the date proof of such Claim or Interest, or a request for payment of such Claim, is filed with the Bankruptcy Court, unless the time is extended by the Bankruptcy Court.

**E.     Distributions under the Plan**

Article 8 contains provisions governing the making of Distributions on account of Claims and Interests.  In general, except as otherwise provided in the Plan, and subject to Sections 8.7, 8.8 and 8.9 of the Plan, any payments, distributions or other performance to be made pursuant to this Plan on account of any Disputed Claim shall be deemed to be timely made if made on or within five (5) days following the later of (i) the Effective Date, (ii) the expiration of any applicable objection deadline with respect to such Disputed Claim, or (iii) such other times provided in this Plan.  All Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank.  Any escrowed, reserved or segregated funds will be held at a banking institution that is an authorized banking depository in the Western District of Washington.

**Disbursing Agent.**  Kriss & Feuerstein LLP will act as the Disbursing Agent in order to make Distributions under the Plan for all claims against the Debtor's Estate. The Disbursing Agent shall not be compensated for services rendered under the Plan.  **The Disbursing Agent shall not incur any liability, other than for gross negligence, willful misconduct, criminal**

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

conduct, or for any claim for liability pursuant to 28 U.S.C. § 959 in connection with carrying out its duties under the Plan, which liability shall be expressly limited to the period commencing from the date of the Disbursing Agent's receipt of the Available Cash and ending on the date that all disbursements contemplated by the Plan have been distributed.

Distributions shall be made: (1) at the addresses set forth on the Proofs of Claim or Proofs of Interests filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim or Proof of Interest; or (3) at the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Disbursing Agent has not received a written notice of a change of address.

**Unclaimed Distributions**.  Any distribution that is returned to the Disbursing Agent shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution (each, an "Unclaimed Distribution").  A distribution becomes an Unclaimed Distribution if three months have elapsed since a distribution is returned to the Disbursing Agent as undeliverable or six months have elapsed since a distribution check has gone uncashed and if no notice has been provided to the Disbursing Agent by the holder of the claim to which such distribution relates containing a valid address for such holder.  If such a notice is provided, then, after receipt of such additional information as the Disbursing Agent may require confirming the identity, address and ownership of such Claim, the Disbursing Agent shall make a distribution of all amounts reserved for such undeliverable distribution or unclaimed check to such Claim holder at the address provided in such notice within 14 days thereafter.  All Unclaimed Distributions shall become Available Cash and shall be distributed in accordance with this Plan.

**Distributions With Respect to Disputed Claims**.  During the pendency of any objection to any Claim, no Distribution under the Plan will be made to the holder of such Claim.  However, there will be set aside and reserved on behalf of such disputed Claim such cash or property as the holder thereof would be entitled to receive in the event such Claim was an Allowed Claim on the

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

date of such Distribution.  The Proponent may seek an order of the Bankruptcy Court estimating or limiting the amount of Cash or property that must be deposited in respect of any such Disputed Claims.  Cash held in reserve for Disputed Claims will be held in trust for the benefit of the holders of such Claims.

**Surrender of Instruments**.  No Creditor that holds a note or other instrument of the Debtor's evidencing such Creditor's Claim may receive any distribution with respect to such Claim or Interest unless and until the note or other instrument evidencing such Claim is surrendered pursuant to the provisions of the Plan except if the purchaser of the Property is the Lender with a credit bid, in which case the Property is transferred subject to the Walsh Lien.  In the event an instrument evidencing a Claim has been lost, stolen or mutilated, the Disbursing Agent may request reasonable affidavits and indemnification by a financially responsible party before making any distribution(s) to such Creditor.

### F.	Compliance with Tax Requirements

In connection with the Plan, the Debtor shall not be relieved of, and shall comply with, all withholding and reporting requirements imposed by federal, state and local taxing authorities, and distributions under the Plan shall be subject to such withholding and reporting requirements.

### G.	Effective Date

The Effective Date of the Plan is defined as the later of (i) one Business Day after the Confirmation Order becomes a Final Order; or (ii) the date all conditions to the Effective Date have been satisfied or waived by the entity entitled by this Plan to waive such condition and the Sale has closed.

### H.	Treatment of Executory Contracts and Unexpired Leases

All Executory Contracts or Unexpired Leases to which the Debtor is a party as of the Effective Date, other than residential leases, which were not previously rejected, assumed, or assumed and assigned by the Debtor shall be rejected and disaffirmed under the Plan as of the Effective Date in accordance with the provisions and requirements of Sections 365 and 1123 of

AMENDED DISCLOSURE STATEMENT- 27

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

Case 24-10088-CMA    Doc 211    Filed 11/19/24    Ent. 11/19/24 15:10:03    Pg. 27 of 39

the Bankruptcy Code, unless an Executory Contract or Lease is listed as assumed and assigned to a Successful Bidder on a notice to be filed by the Successful Bidder with the Bankruptcy Court (the "**Assumption Notice**"), with such notice being served by the Successful Bidder on the counterparty to each such Executory Contract or Unexpired Lease, no later than the date of the Closing; provided, however, that all Unexpired Leases that are residential leases from the Debtor to lessee occupied residences (as opposed to entities that sublet the residence) shall be assumed and assigned to the Successful Purchaser as of the Closing.

**Rejection Claims**. Holders of Claims created by the rejection of executory contracts and unexpired leases or the expiration or termination of any executory contract or unexpired lease must file in the Bankruptcy Court and serve on the Proponent a proof of claim within 21 days after service of the Assumption Notice or the expiration of the deadline to serve the Assumption Notice. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan as against the applicable Debtor, subject to objection by the Proponent. After receipt of such proof of claim, the Proponent shall have 21 days to file an objection, failing which such Claim shall be an Allowed Claim.

## I. Transfer of The Property

Except as otherwise provided in the Plan, on Effective Date, all of the assets and Property of the Debtor's Estate shall vest in the Disbursing Agent or, as to the Property and the Property Causes of Action, the Successful Bidder, free and clear of all Liens, Claims and encumbrances (except if the purchaser of the Property is the Lender with a credit bid, in which case the Property is transferred subject to the Walsh Lien). The Debtor shall cooperate with the execution of any and all documents needed to facilitate all transfers pursuant to the Plan, including the Property. On the Effective Date, any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date. Furthermore, on the Effective Date or as soon as practicable thereafter, all insurance claims and proceeds thereof to

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

which the Debtor was entitled, shall be assigned to the Lender or Successful Bidder, as the case may be.

**J.    Funding**

The Plan will be funded by monies made available from the Sale of the Property (and the Property Causes of Action). However, the Proponent shall advance such funds as are necessary to make payments required under the Plan if the Sale proceeds are insufficient to fund all payments required under the Plan, as provided in section 6.2 of the Plan.

The Disbursing Agent shall take all necessary steps and perform all acts to consummate the terms and conditions for the Plan, and the Debtor shall not interfere with the Disbursing Agent in the performance of its duties. The Confirmation Order shall contain appropriate provisions consistent with Section 1142 of the Bankruptcy Code, directing the Debtor and any other necessary party to execute or deliver or to join in the extension or delivery of any instrument required to affect the Plan or to perform any act necessary to consummate the Plan.

Except as set forth elsewhere in the Plan, all payments required to be made under the Plan shall be made by the Disbursing Agent for disbursement in accordance with the terms of the Plan.

**K.    Preservation of Rights of Action**

On the Effective Date all Causes of Action shall be transferred to the Proponent, except for the Property Causes of Action, which shall be transferred to Successful Bidder. No Causes of Action have been asserted by or on behalf of the Debtor against the Proponent, nor have any other Causes of Action been asserted against the Proponent by third parties in connection with the Debtor and the Property. The Proponent is not aware that any such Causes of Action against the Proponent exist.

**L.    Post-Confirmation Operating Reports and United States Trustee's Fees**

The Debtor's duty to prepare and file post-confirmation monthly operating reports shall continue until the closing of this case by means of a final decree, dismissal or conversion of this case, whichever is earlier. Within 10 days of the Effective Date or as soon as practicable

AMENDED DISCLOSURE STATEMENT- 29

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

1  thereafter, the Disbursing agent shall file a closing report detailing all disbursements made at the

2  closing on the Property. All outstanding quarterly fees and any applicable interest due thereon

3  payable to the Office of the United States Trustee shall be paid by the Disbursing Agent until

4  entry of a final decree, conversion or dismissal, whichever is earlier.

**M.     Transfer Taxes**

6  Pursuant to Section 1146(a) of the Bankruptcy Code and WAC 458-61A-207, the initial

7  issuance, transfer, or exchange of any security and the making or delivery of any instrument of

8  transfer in connection with or in furtherance of the Plan (including any instrument executed in

9  furtherance of the transactions contemplated by the Plan including but not limited to the deed

10  conveying the Property in accordance with the Sale and any deed further conveying the Property

11  within two years following the Sale by the Successful Bidder or its affiliate or designee) shall be

12  exempt and shall not be subject to tax under any law imposing a Transfer Tax, mortgage

13  recording tax or similar tax as set forth in the Plan. In connection therewith, the Successful

14  Bidder shall have the protections afforded under the "good faith" purchaser provisions of Section

15  363(m) of the Bankruptcy Code and all stay provisions under Bankruptcy Rule 6004(h) or

16  elsewhere will be waived.

**N.     Revocation of the Plan**

18  The Plan may be altered, amended, modified or withdrawn by the Proponent at any time

19  before Substantial Consummation of the Plan, as provided in Sections 1101(2)(A) and 1127 of

20  the Bankruptcy Code and Bankruptcy Rule 3019. Section 1127 of the Bankruptcy Code

21  authorizes the proponent of a plan of reorganization to modify such plan at any time prior to

22  confirmation of the plan so long as the plan, as modified, continues to meet certain technical

23  requirements of Sections 1122 and 1123 of the Bankruptcy Code with respect to the classification

24  of Claims and Interests and the contents of a plan. Prior to Confirmation, if the Proponent files

25  a modification to the Plan, pursuant to Section 1127(a) "the plan as modified becomes the plan."

26  No order of the Bankruptcy Court is required to modify the Plan under the terms of Section

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

1127(a); however, the proponent of a modification to a plan must comply with Section 1125 of the Bankruptcy Code with respect to the plan as modified.

The Proponent may revoke or withdraw the Plan at any time prior to Substantial Consummation of the Plan. If the Proponent revokes or withdraws the Plan, or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall constitute a waiver or release of any Claims by or against, or any Interest in the Debtor in any further proceedings involving the Debtor.

## O.   Retention of Jurisdiction

The Plan contains detailed provisions providing for the retention of jurisdiction by the Bankruptcy Court over the Case for the purposes of, *inter alia,* determining all disputes relating to Claims or Interests and other issues presented by or arising under the interpretation, implementation or enforcement of the Plan.

## RISK FACTORS

Plan payments are to be made from the Sale proceeds and, if necessary, the funds provided by the Proponent if there is a shortfall of the amounts necessary to make the Plan Effective as provided in section 6.2 of the Plan. There can be no assurance that the Sale of the Property will occur.

## CONFIRMATION OF THE PLAN

All Distributions to holders of Allowed Claims are contingent on the Plan being confirmed by this Court. Otherwise, neither the Disbursing Agent nor the Proponent is obligated to make the payments required hereunder.

### CONFIRMATION HEARING

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to consider confirmation of the Plan. **The Confirmation Hearing is scheduled to commence on January 9, 2025 at 1:30 p.m., Pacific Time, in the United States Bankruptcy Court for the**

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

Western District of Washington, United States Bankruptcy Court, 700 Stewart Street, Room 6301, Seattle, Washington, 98101.

The Bankruptcy Court has directed that **objections, if any, to confirmation of the Plan be filed and served on or before January 2, 2025 at 11:59 p.m. Pacific Time.** Objections must be served upon (i) Counsel to the Proponent, Foster Garvey PC, 111 Third Avenue, Suite 3000, Seattle, Washington 98101-3296, attn: Deborah A. Crabbe, Esq., and Kriss & Feuerstein LLP., 360 Lexington Avenue, Suite 1200, New York, New York 10017 – Attn: Jerold C. Feuerstein, Esq., Daniel N. Zinman, Esq. & Stuart L. Kossar, Esq. and (ii) The Office of the United States Trustee, 700 Stewart Street, Suite 5103, Seattle, Washington 98101, and be filed electronically in accordance with the Bankruptcy Court's ECF procedures.

## REQUIREMENTS FOR CONFIRMATION

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. These requirements include determinations by the Bankruptcy Court that: (i) the Plan has classified Claims and Interests in a permissible manner, (ii) the contents of the Plan comply with various technical requirements of the Bankruptcy Code, (iii) the Proponent has proposed the Plan in good faith, (iv) the Proponent has made disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan and the Case, (v) the Plan is in the "best interests" of all Creditors and Interest Holders; and (vi) the Plan is feasible. The Proponent believes that all of these conditions have been or will be met prior to the Confirmation Hearing.

**Best Interest Test.** The so-called "best interest" test requires that each impaired Creditor and impaired Interest Holder either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such entity would receive or retain if the Debtor were to be liquidated under chapter 7 of the Bankruptcy Code.

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

To determine what the holders in each Class of Claims or Interest would receive if the Debtor were liquidated under Chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets in a chapter 7 liquidation case. The amount that would be available for satisfaction of Allowed Claims against and Allowed Interests in the Debtor would consist of the proceeds resulting from the disposition of the Debtor's assets, augmented by the cash held by the Debtor. Such amount would be reduced by the amount of any Claim or Claims secured by the Debtor's assets, the costs and expenses of the liquidation, and such additional Administrative Claims and Priority Claims that may result from the termination of the Debtor's business. Such value is then juxtaposed against the amount creditors are receiving under the Plan to determine if the value each impaired creditor is receiving is the same or more than such creditor would receive from a Chapter 7 liquidation on the Confirmation Date.

The costs of liquidation under Chapter 7 would become Administrative Claims with the highest priority against the proceeds of liquidation. Such costs would include the fees payable to a Chapter 7 trustee, as well as those which might be payable to attorneys, financial advisors, appraisers, accountants and other professionals that such trustee may engage to assist in the liquidation. In addition, Chapter 7 costs would include any liabilities incurred or assumed pursuant to the transactions necessary to effectuate the liquidation. Moreover, claims entitled to administrative priority may arise by reason of any breach or rejection of any executory contracts entered into by the Debtor during the pendency of the Case in chapter 11.

After satisfying Administrative Claims arising in the course of the chapter 7 liquidation, the proceeds of the liquidation would then be payable to satisfy any unpaid expenses incurred during the time this Case was pending under chapter 11, including compensation for attorneys, financial advisors, appraisers, accountants and other professionals retained by the Debtor.

**Liquidation Analysis.** The Proponent has concluded that the Plan provides to each Creditor and Interest Holder a recovery with a *present value* which equals or exceeds the

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

distribution that such person would receive if the Debtor was to be liquidated under Chapter 7 of the Bankruptcy Code. The Plan provides for the liquidation of the Debtor's assets, but avoids the additional costs and expenses that would be incurred in Chapter 7, such as trustee's fees. In addition, the Plan provides for the payment by the Proponent to General Unsecured Claims in the amount of $77,008.96 so long as the claim at Docket 1, Schedule F at 3.312 in the amount of $255,370.97 and the Lender Unsecured Claim, if any, are waived against the Debtor. In Chapter 7, such payment to holders of General Unsecured Claims would not occur.

**Feasibility.** For the Plan to be confirmed, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor. This Plan calls for the Sale of the Debtor's Property to the Successful Bidder and for the Proponent to satisfy any shortfall in the event such Sale does not generate sufficient Cash to make the payments required under the Plan. Thus, the Plan meets the feasibility requirements of the Bankruptcy Code.

<div align="center">

**EFFECT OF CONFIRMATION**

</div>

**A.     Limitation of Liability**

Section 1125(e) of the Bankruptcy Code, commonly referred to as the "safe harbor," protects persons acting in good faith and in compliance with the applicable provisions of the Bankruptcy Code, from civil claims arising in connection with solicitations of acceptances of plans of reorganization or participating in the offer, issuance, sale or purchase of a security under the Plan. Section 105(a) of the Bankruptcy Code provides that the Bankruptcy Court can "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." As set forth in section 9.2 of the Plan, neither the Proponent and the Disbursing Agent, nor any of their respective, managers, members, nor any of their agents or employees (acting in such capacity), nor any professional person employed by them, shall have or incur any liability to any Entity for any action taken or omitted to be taken in connection with or related to the

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

formulation, preparation, prosecution, dissemination, Confirmation, consummation or administration of this Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or the distribution of property under this Plan, or any other action taken or omitted to be taken in connection with the Case or this Plan, except as may be expressly provided for in such agreements or documents, and except for willful misconduct or gross negligence, breach of fiduciary duty, criminal conduct, ultra vires actions or the disclosure of confidential information that causes actual damages. In addition, any release exculpation or limitation of liability provided for in this Plan shall not release any attorney from any obligations owed under Rule 1.8(h) of the Washington State Rules of Professional Conduct for malpractice liability.

### B. INJUNCTION

Except (i) as otherwise provided in the Plan, (ii) as otherwise provided under a Final Order entered by the Bankruptcy Court, or (iii) with respect to the Debtor's and/or Proponent's obligations under the Plan, the entry of the Confirmation Order (and, if necessary, an order approving the Sale of the Property and the Property Causes of Action) shall forever stay, restrain and permanently enjoin on and after the Confirmation Date: (a) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from any property of the Estate, including the Property and the Property Causes of Action sold under the Plan (except if the purchaser of the Property is the Lender with a credit bid, in which case the Property is transferred subject to the Walsh Lien); or (b) the creation, perfection or enforcement of any lien or encumbrance against any property of the Estate, including the Property sold under the Plan (except if the purchaser of the Property is the Lender with a credit bid, in which case the Property is transferred subject to the Walsh Lien). Since the Plan provides for the liquidation of all or substantially all of the property of the Estate, the Confirmation of the Plan will not result in a discharge of the Debtor's pre-Petition Date Claims.

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

### C.    Plan and Confirmation Order as RELEASE

The Plan provides that the Debtor, its members, and anyone purporting to act or acting on their behalf, shall release and discharge Proponent (or its assignee, designee or nominee if it is the Successful Purchaser), its respective predecessors and successors-in-interest, including all shareholders, assigns, affiliates, partners, officers, directors, from all, any and all actions, causes of action, controversies, liabilities, obligations, rights, suits damages, judgments, claims, and demands whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertible directly or derivatively, existing or hereafter arising, in law, equity, or otherwise, other than from the obligations of Proponent (or its assignee, designee, or nominee) under the Plan, the Confirmation Order and any order(s) of this Court with respect to the Sale of the Property.

### ALTERNATIVES TO THE PLAN

If the Plan is not confirmed by the Bankruptcy Court the alternatives may include (a) liquidation of the Debtor under chapter 7 of the Bankruptcy Code or (b) the formulation, promulgation and confirmation or an alternative plan of reorganization involving a sale to a different purchaser; or (c) the dismissal of the Debtor's case.

The Proponent believes that the Plan provides a recovery to all Creditors and Interest Holders equal to or greater than would be obtainable in chapter 7 liquidation or foreclosure sale and believes that the Plan enables Creditors to realize the most value under the circumstances.

The Proponent reserves its right to file an amended plan and/or disclosure statement.

### CERTAIN FEDERAL INCOME TAX CONSEQUENCES

The following summary of certain U.S. Federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the particular circumstances pertaining to each holder of an Allowed Claim. Each holder of an Allowed Claim is urged to consult his own tax advisors. This summary does not cover all

AMENDED DISCLOSURE STATEMENT- 36

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

Case 24-10088-CMA    Doc 211    Filed 11/19/24    Ent. 11/19/24 15:10:03    Pg. 36 of 39

1  potential U.S. federal income tax consequences that could possibly arise under the Plan and does

2  not address the Plan's U.S. federal income tax consequences for any holder of an Allowed Claim

3  that is a partnership (or other pass-through entity) or otherwise subject to special tax rules.

4  The Proponent has not requested any ruling from the Internal Revenue Service or any

5  other taxing authority with respect to such matters nor will the Proponent, with respect to the

6  federal income tax consequences of the Plan, obtain any opinion of counsel.  Consequently, there

7  can be no assurance that the treatment set forth in the following discussion will be accepted by

8  the IRS.  The Proponent offers no statements or opinions that are to be relied upon by the creditors

9  as to the treatment of creditors' claims under the Plan.  Matters not discussed in this Disclosure

10  Statement may affect the tax consequences of the Plan on any particular holder of a Claim or

11  Equity Interest

12  This summary is based upon the laws in effect on the date of this Disclosure Statement

13  and existing judicial and administrative interpretations thereof, all of which are subject to change,

14  possibly with retroactive effect. Holders of Allowed Claims should consult their own tax advisors

15  as to the Plan's specific federal, state, local and foreign income and other tax consequences.

16  The tax consequences to Creditors and Interest Holders will differ and will depend on

17  factors specific to each Creditor or Interest Holder, including but not limited to: (i) whether the

18  Claim or Interest (or portion thereof) constitutes a claim for principal or interest; (ii) the origin

19  of the Claim or Interest; (iii) the type of consideration received by the Creditor or Interest Holder

20  in exchange for the Claim or Interest; (iv) whether the Creditor or Interest Holder is a United

21  States person or foreign person for tax purposes; (v) whether the Creditor or Interest Holder

22  reports income on the accrual or cash basis method; and (vi) whether the Creditor or Interest

23  Holder has taken a bad debt deduction or otherwise recognized loss with respect to a Claim or

24  Interest.

25  **THERE ARE MANY FACTORS WHICH WILL DETERMINE THE TAX**

26  **CONSEQUENCES TO EACH CREDITOR OR INTEREST HOLDER.**

AMENDED DISCLOSURE STATEMENT- 37

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX, AND IN SOME CASES, UNCERTAIN. THEREFORE, IT IS IMPORTANT THAT EACH CREDITOR OR INTEREST HOLDER OBTAIN HIS, HER OR ITS OWN TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH CREDITOR OR INTEREST HOLDER AS A RESULT OF THE PLAN.

THE DISCUSSION HEREIN IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY CREDITOR OR INTEREST HOLDER FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON A TAX PAYER. THE DISCUSSION HEREIN WAS WRITTEN TO SUPPORT THE TRANSACTIONS DESCRIBED IN THIS DISCLOSURE STATEMENT. EACH CREDITOR OR INTEREST HOLDER SHOULD SEEK ADVICE BASED UPON THE CREDITOR'S OR INTEREST HOLDER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

### ADDITIONAL INFORMATION

Requests for **information** and additional copies of this Disclosure Statement and the other materials delivered together herewith and all deliveries, correspondence and questions, as the case may be, relating to the Plan should be directed to:

(i) Counsel to the Proponent:    Foster Garvey PC,
1111 Third Avenue, Suite 3000,
Seattle, Washington 98101-3296,
Attn: Deborah A. Crabbe, Esq., and

Kriss & Feuerstein LLP.,
360 Lexington Avenue, Suite 1200,
New York, New York 10017
Attn: Jerold C. Feuerstein, Esq.,
Daniel N. Zinman, Esq.
Stuart L. Kossar, Esq., and/or

(ii) The U.S. Trustee:    Office of the United States Trustee,
700 Stewart Street, Suite 5103,
Seattle, Washington 98101

AMENDED DISCLOSURE STATEMENT- 38

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

Documents submitted in these cases are on file in the Office of the Clerk of the United States Bankruptcy Court, Western District of Washington, 700 Stewart Street, Suite 6301, Seattle, Washington 98101, and are ordinarily available for public inspection Monday through Friday, between the hours of 8:30 a.m. and 4:30 p.m.

DATED this 19th day of November, 2024.

**FOSTER GARVEY P.C.**

By: _/s/ Deborah A. Crabbe_____
    Deborah A. Crabbe, WSBA #22263
    1111 Third Avenue, Suite 3000
    Seattle, WA  98101
    Telephone: (206) 447-5325
    Email: deborah.crabbe@foster.com

*Attorneys for Pivot Apartment Lenders, LLC*

**KRISS & FEUERSTEIN LLP**

By:_/s/ Jerold C. Feuerstein_____
    Jerold C. Feuerstein, Esq., Pro Hac Vice
    Daniel N. Zinman, Esq., Pro Hac Vice
    360 Lexington Avenue, 12th Floor
    New York, New York 10017
    Telephone: (212) 661-2900
    Email: jfeuerstein@kandfllp.com
           dzinman@kandfllp.com

*Attorneys for Pivot Apartments Lender LLC*

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON  98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700