Honorable Christopher M. Alston
Chapter 11
Hearing Date: November 14, 2024
Time: 9:30 a.m.
Hearing Location: Seattle, WA
Response Date: November 7, 2024

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re:

B-1208 PINE, LLC,

                          Debtor.

Case No. 24-10088-~~MLB~~CMA

**AMENDED** DISCLOSURE
STATEMENT FOR PIVOT
APARTMENT LENDER LLC'S PLAN
OF LIQUIDATION FOR THE
DEBTOR

> **THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**

Pivot Apartments Lender LLC (the "Secured Creditor" or the "Proponent"), a secured creditor and mortgagee of the Debtor, B-1208 Pine, LLC (the "Debtor") has filed its Plan of Liquidation for the Debtor (the "Plan") pursuant to Chapter 11 of the Bankruptcy Code. This Disclosure Statement for the Proponent's Plan of Liquidation for the Debtor (the "Disclosure Statement") is being submitted for the approval of the Bankruptcy Court for use in connection with the Plan filed to sell substantially all of the assets of the estate of the Debtor pursuant to Section 1125 of Title 11 of the United States Code (the "Bankruptcy Code").[1]

A copy of the Plan accompanies this Disclosure Statement. A glossary of terms frequently used in this Disclosure Statement is set forth in Article 1 of the Plan.

---

[1] Capitalized terms not defined herein shall have the definitions set forth in ~~the~~t Plan.

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

AMENDED DISCLOSURE STATEMENT- 1

The Proponent ~~believes~~**and Debtor believe** that Confirmation of the Plan is in the best interests of all the Debtor's creditors.

### SUMMARY OF THE PLAN

The Bankruptcy Court entered an order on or about September 20, 2024 that confirmed that the Debtor's exclusive period to file and solicit a plan expired before the filing of this Disclosure Statement and the Plan. ~~To date, the Debtor has been unable to raise sufficient financing to fund a reorganization and the Debtor and Secured Creditor have not been able to agree on a consensual Chapter 11 plan. Consequently, the next logical step was for the~~ **This Plan, submitted by** Proponent ~~to file the Plan, which~~**,** provides for the liquidation of the Debtor's assets including the liquidation of the real property and improvements thereon, commonly known as the Pivot Apartments, located at 1208 Pine Street, Seattle, Washington, and titled in the name of Debtor (the "<u>Property</u>" or the "<u>Project</u>") and for the use of the proceeds from the sale to pay Claims, as more fully described below and in the Plan.

The Proponent ~~has engaged a~~**or Debtor, as the case may be, will engage** broker Eastdil Secured **or such other broker to whom Proponent and the Debtor agree** (the "<u>Broker</u>") as its real estate advisor and ~~it~~**such Broker** shall market and auction the Property and the Property Causes of Action (the "<u>Sale</u>") pursuant to 11 U.S.C. §§ 363, 1123(a)(5)(D), and 1123(b)(4) to obtain the highest and best price, in accordance with the applicable provisions of the Bankruptcy Code, the bid procedures, attached hereto as **Exhibit "A"**, and the Plan. The Sale shall be conducted following confirmation of the Plan, but subject to certain conditions set forth in detail herein below and in the Plan. The Broker shall be retained subject to certain conditions set forth in the Broker Engagement Agreement ~~annexed hereto as Exhibit "B"~~**to be filed with the Court prior to the Confirmation Hearing**.

In the event that the Available Cash on the Effective Date is insufficient to provide creditors of the Debtor's estate with the distributions required to be made on the Effective Date, any shortfall will be funded by the Proponent (by either reducing the distribution to be made on

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

account of the Lender Secured Claim as more fully described below, or through Cash to be provided the Proponent) with any such shortfall funding constituting an administrative claim against the Debtor's estates payable from Cash after the Effective Date.

The table below provides a summary of the classification and treatment of Claims and Interests under the Plan. The figures set forth in the table below represents the Proponent's best estimate of the total amount of Claims and Interests filed or scheduled in this Case. These estimates have been developed by the Proponent based on its own research, the Bankruptcy Court's Claims Register, the Debtor's Schedules and certain other documents of public record. Although the Proponent believes that the amounts of the Claims set forth below are substantially correct, there can be no assurance that Claims and Interests will be allowed by the Bankruptcy Court in the amounts set forth below:

| Class | Claim/Interest | Treatment of Claim/Interest | Estimated Amount of Allowed Claims or Interests[2] | Estimated % Distribution on Claims/Interest |
|-------|---------------|----------------------------|---------------------------------------------------|--------------------------------------------|
| 1 | Other Secured Claims | Unimpaired | $0 | 100% |
| 2 | Lender Secured Claim | Impaired | Unknown[3] | Unknown |
| 3 | Walsh Lien | Unimpaired | $4,256,401.00[4] | 100% |

---

[2] The amounts set forth in this schedule are not and should not be deemed admissions by the Proponent as to the validity or amount of any claim and Proponent reserves all rights to object to any claim in this case. The amounts listed in this column as to claims assumes all filed claims are allowed except where provided otherwise and includes such filed claims along with scheduled claims to the extent there is not a corresponding proof of claim. Claims (other than the Lender Secured Claim) could be the subject of objections, which, if granted, would increase the estimates provided herein of recoveries to holders of Allowed Claims.

[3] As more fully described below, the Claim in this Class shall be an amount to be determined through the distribution of the net proceeds of the Sale of the Debtor's Property. Thus, the amount of this Secured Claim shall be determined based on the net proceeds of the Sale of the Property. As of the Petition Date, Proponent asserts a Claim and the Plan Allows the Claim in the amount of $35,031,968.55, plus post-petition protective advances (if any), fees, expenses, and costs and protective advances, with interest from the Petition Date at the default rate specified in the note underlying the Lender Claim.

[4] The Walsh Lien is a "claim" based on the existing Lien of Walsh. Walsh has not filed a proof of claim. The amount and priority of the Walsh Lien is disputed, and the Plan provides that the Walsh Lien "Claim" constitutes a Disputed Claim. Nevertheless, the amount asserted here is the amount Walsh has asserted in litigation. However, the amount indicated above does not include post-petition interest and attorneys' fees that Walsh is seeking in its complaint in the State Court Litigation.

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

| Class | Claim/Interest | Treatment of Claim/Interest | Estimated Amount of Allowed Claims or Interests[2] | Estimated % Distribution on Claims/Interest |
|---|---|---|---|---|
| 4 | Priority Claims | Unimpaired | $0 | Unknown |
| 5 | General Unsecured Claims | Impaired | $~~1,159,816.63~~77,008.96[6] | ~~Unknown~~100% |
| 6 | Interests in the Debtor | Unimpaired | n/a | 0% |

## CONFIRMATION OF THE PLAN

Pursuant to Section 1128 of the Bankruptcy Code, the Bankruptcy Court has scheduled a ~~combined~~ hearing (the "Confirmation Hearing") to consider ~~approval of this Disclosure Statement and~~ Confirmation of the Plan, **on** ~~December ____~~ **January 9,** ~~2024~~**2025** **at** ~~10:00 a~~**1:30 p**.m., **prevailing** ~~eastern time~~**Pacific Time, in the United States Bankruptcy Court for the Western District of Washington, United States Bankruptcy Court, 700 Stewart Street, Suite 6301, Seattle, Washington 98101** ~~(although the hearing may take place remotely)~~. The Bankruptcy Court has directed that objections, if any, to the Confirmation of the Plan be filed and served **on or before** ~~December ____~~ **January 2,** ~~2024~~**2025** **at** ~~5:00~~**11:59 p.m. (prevailing** ~~eastern~~**Pacific time)**.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129(a) of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. The Proponent intends to seek

---

~~[5] This amount is an estimate based on what the Proponent believes will be the Allowed amount of Claims in this Class. Under section 4.4 of the Plan, if the Proponent is the Successful Bidder based on a credit bid, the Proponent will provide a distribution of $75,000 to holders of the General Unsecured Claims other than the Lender Unsecured Claim. This amount provides an approximate floor of a 6.5% distribution based on the estimated amount of other Unsecured Claims in this class. The Class is also entitled to additional distributions when and if senior Classes are paid in full.~~

[6] This amount is an estimate based on what the Proponent believes will be the Allowed amount of Claims in this Class (excluding any deficiency claim by the Lender). Under section 4.4 of the Plan, if the Proponent is the Successful Bidder based on a credit bid, the Proponent will provide a distribution of $77,008.96 to holders of the General Unsecured Claims other than the Lender Unsecured Claim. The Disclosure Statement estimates that this will provide a 100% distribution. Such estimate is dependent on, among other things, the successful objection to certain claims, the exclusion of the Lender's deficiency claim from distributions in this Class, and the agreement for the waiver of the claim at Docket 1, Schedule F at 3.31 in the amount of $255,370.97 against the Debtor.

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

AMENDED DISCLOSURE STATEMENT- 4

1  Confirmation of the Plan. **The Proponent believes that the Plan will satisfy all applicable**

2  **requirements of Section 1129(a) of the Bankruptcy Code**. Confirmation and the entry of an

3  Order confirming the Plan makes the Plan binding upon the Debtor, its Interest Holder(s), all

4  Creditors, and other parties regardless of whether they have objected to the Plan. If an impaired

5  Class votes against the Plan, the Proponent intends on seeking confirmation under Section

6  1129(b) of the Bankruptcy Code, which the Proponent believes will be satisfied.

7          As of the Effective Date, all holders of Claims or Interests will be precluded from

8  asserting any Claim against the Proponent, the Debtor, or the Debtor's assets or Property or other

9  interests in the Debtor based on any transaction or other activity of any kind that occurred before

10 the Confirmation Date except as otherwise provided in the Plan.

11                  VOTING INSTRUCTIONS AND CONFIRMATION OF PLAN

12                  **A.**  A. Manner of Voting on Plan

13          Before you vote on the Plan, this Disclosure Statement and the Plan should be read in its

14 entirety. You should only use the Ballot sent to you with this Disclosure Statement, if any, to

15 cast your vote for or against the Plan.

16          If you hold a Claim in Class 2, 3, and/or 5, a ballot for your acceptance or rejection of the

17 Plan will be included in the package of materials forwarded to you along with this Disclosure

18 Statement and the Plan, is. You should complete, date and sign your ballot and return it to Foster

19 Garvey PC, 1111 Third Avenue, Suite 3000, Seattle, Washington 98101-3296, Attn: Deborah A

20 Crabbe, Esq., attorneys for the Proponent. All ballots must be **received** prior to **5:00 P.M.**

21 **Pacific Time on**  December  **January 2,** 2024**2025**. A copy of the form of the ballots is

22 annexed hereto as **Exhibit "**C**B"**.

23                  **B.**  B. Claim Holders Entitled to Vote

24          Under the Bankruptcy Code, any holders of Claims in Classes that are "impaired" under

25 the Plan are entitled to vote to accept or reject the Plan, unless such Class does not receive or

26 retain any property under the Plan, in which case such Class is deemed to have rejected the Plan.

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

AMENDED DISCLOSURE STATEMENT- 5

*Formatted:* Justified, Indent: First line: 0.5", Line spacing: Exactly 24 pt, Numbered + Level: 1 + Numbering Style: A, B, C, ... + Start at: 1 + Alignment: Left + Aligned at: 0.5" + Indent at: 0.75"

*Formatted:* Justified, Indent: First line: 0.5", Line spacing: Exactly 24 pt, Numbered + Level: 1 + Numbering Style: A, B, C, ... + Start at: 1 + Alignment: Left + Aligned at: 0.5" + Indent at: 0.75"

Bankruptcy Code Section 1124 provides generally that a Class is impaired if the legal, equitable or contractual rights of the Claims or Interests in that Class are altered.

Subject to the exceptions provided below, any holder whose Claim is impaired under the Plan is entitled to vote if either (i) its Claim has been scheduled by the Debtor and such Claim is not scheduled as disputed, contingent or unliquidated; or (ii) such Claim holder has filed a proof of Claim which is not otherwise a Disputed Claim.

A holder of a Disputed Claim is not entitled to vote on the Plan unless such Claim is temporarily allowed by the Proponent or by an order of the Bankruptcy Court in an estimated amount which it deems proper for the purpose of voting to accept or reject the Plan. In other words, only holders of Allowed Claims in impaired classes may vote to accept or reject the Plan. A Claim to which an objection has been filed or a Claim (i) which is listed on the Debtor's Schedules as disputed, unliquidated or contingent; and (ii) with respect to which a superseding Proof of Claim has not been filed, is not an Allowed Claim for voting purposes, unless the Claim is settled by agreement, and the Bankruptcy Court allows the Claim (in whole or in part) by Final Order. Upon request of a party-in-interest, the Bankruptcy Court may temporarily allow or estimate a Disputed Claim for the purpose of voting on the Plan. Ballots cast in respect of Claims other than Allowed Claims will not be counted. In addition, a vote may be disregarded if the Bankruptcy Court determines that the acceptance or rejection of the Plan by the Creditor is not solicited or procured in good faith, or in accordance with the provisions of the Bankruptcy Code.

### C. C. Classes Not Impaired Under the Plan

ClaimsThe Proponent believes that the claim by Holders in Class 1 (Other Secured Claims).the holder in Class 3 (Walsh Lien). Class 4 (Priority Claims) and equity interests in Class 6 (Equity Interests) is unimpaired pursuant to Section 1124 of the Bankruptcy Code are unimpaired under the Plan, but in an abundance of caution, Class 3 will be solicited and therefore not entitled to vote on the Plan.

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

Formatted: Justified, Indent: First line: 0.5", Line spacing: Exactly 24 pt, Numbered + Level: 1 + Numbering Style: A, B, C, … + Start at: 1 + Alignment: Left + Aligned at: 0.5" + Indent at: 0.75"

The equity interests in Class 6 (Equity Interests) pursuant to Section 1124 of the Bankruptcy Code are unimpaired under the Plan and therefore not entitled to vote on the Plan.

### D. Classes Impaired Under the Plan

Claims by Holders in Class 2 (Lender Secured Claim) and Class 5 (General Unsecured Creditors Claims) are impaired under the Plan and are eligible, subject to the limitations set forth in Section B above, to vote to accept or reject the Plan. Any controversy as to whether any Claim or Class of Claims is impaired under the Plan shall, after notice of any a hearing, be determined by the Bankruptcy Court.

### E. Vote Required for Class Acceptance

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a Class of impaired Claims as acceptance by at least two-thirds (2/3) in dollar amount and more than one half (1/2) in number of holders of Allowed Claims in that Class who cast ballots.

Section 1126(d) of the Bankruptcy Code defines acceptance of a plan by a class of Interest holders as acceptance by holders of at least two-thirds (2/3) in amount of the allowed interests of such class who cast ballots.

If there are no votes in a class, the Proponent intends on seeking a ruling by the Bankruptcy Court that such class will have been deemed to accept the Plan.

### NOTICE TO HOLDERS OF CLAIMS AND INTERESTS

This Disclosure Statement is being furnished by the Proponent to the Debtor's known creditors pursuant to Section 1125(b) of the Bankruptcy Code. The Plan has been filed with the Bankruptcy Court and is incorporated herein by reference. Parties in interest may view the Plan on the internet at http://www.wawb.uscourts.gov.[7]

The purpose of this Disclosure Statement is to enable you, as a Creditor, to make an informed decision in exercising your right to consider whether to object to the Plan, and, if applicable, whether to vote for or against the Plan.

---

[7] A password is necessary for access to view documents on the Internet.

AMENDED DISCLOSURE STATEMENT- 7

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

The historical information concerning the Debtor has been prepared using certain filings made with the Bankruptcy Court. The estimates of Claims and Interests set forth herein may vary from the final amounts of Claims or Interests allowed by the Bankruptcy Court. However, the Plan provides for ~~the allowance of~~ the Proponent's Claim in the amount of $35,031,968.55, plus post-petition protective advances (if any), fees, expenses~~,~~ and costs, with interest from the Petition Date at the default rate specified in the note underlying the Lender Claim, to the extent and in such amount as to post-petition amounts as the Bankruptcy Court may determine upon notice and a hearing, if necessary, though the amount of such claim that is a Lender Secured Claim will depend on the results of the sale process.

Notwithstanding any provision of the Plan to the contrary, definitions and descriptions contained herein respecting pre-Petition documents, agreements, or Claims are provided solely for the purpose of identification and classification thereof and do not constitute an admission by the Proponent of the existence, validity, allowance, or amount of any such claim, document or agreement. The Proponent expressly reserves the right to challenge the existence, validity, allowance, or amount of any such Claim, document or agreement.

This Disclosure Statement contains a summary of certain provisions of the Plan and the transactions contemplated thereunder, as well as descriptions of certain other related documents.

While the Proponent believes that these summaries are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents. Reference is made to the Plan and the documents referred to herein and therein for a complete statement of the terms and provisions thereof. In the event of any inconsistency between the terms of the Plan and this Disclosure Statement, the terms of the Plan shall be controlling. In reviewing the Plan and this Disclosure Statement, the reader should give special attention to "RISK FACTORS." No statements or information concerning the Debtor or its assets, results of business operations or financial condition are authorized by the Proponent, other than as set forth in this Disclosure Statement, its exhibit(s) and the Plan.

AMENDED DISCLOSURE STATEMENT- 8

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

Case 24-10088-CMA    Doc 213-1    Filed 11/19/24    Ent. 11/19/24 15:57:25    Pg. 8 of 61

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified herein. The delivery of this Disclosure Statement shall not create, under any circumstances, an implication that there has been no change in the facts set forth herein since the date hereof.

This Disclosure Statement is intended for the sole use of Creditors and Interest ~~Holders~~holders to be informed about the Plan. Each holder of a Claim or Interest should review this Disclosure Statement, its exhibit(s) and the Plan. Holders of Claims or Interests are urged to consult with their own legal and financial advisors.

No solicitation of votes to accept or reject the Plan may be made except pursuant to this Disclosure Statement and Section 1125 of the Bankruptcy Code. No Person has been authorized to use or promulgate any information concerning the Debtor or their business or the Plan, other than the information contained in this Disclosure Statement and the exhibits hereto. You should not rely on any information relating to the Debtor or their business or the Plan other than that contained in this Disclosure Statement and the exhibits hereto.

<strong>BACKGROUND</strong>[8]

**A.** **THE DEBTOR AND ITS PROPERTY.**

**The Debtor and the Property**

The Debtor owns the Project~~.~~. The Project is comprised of 95 residential units ~~and~~, almost 5,000 square feet of retail space, and is at approximately 90–~~95~~% occupancy.

Development and construction of the Project spanned seven years, although vertical construction largely occurred during the COVID-19 pandemic. In July 2015, ~~Solterra Cities~~SolTerra, LLC, dba Vibrant Cities ("~~Solterra~~SolTerra"), the Debtor's upstream parent, entered into a purchase and sale agreement to acquire the real property that would later become

---

[8] The Background section constitutes statements taken from the Debtor's First Amended Disclosure Statement for Debtor's First Amended Plan of Reorganization, with minor editing both by the Proponent and by Walsh. None of the statements in the Background section may be used against the Proponent in litigation, as the Proponent is relying on the Debtor for the accuracy of the statements therein.

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

the Project.  ~~Solterra~~SolTerra is a Seattle-based multifamily, urban-focused development and investment company with expertise in ground-up development, investment, construction, architectural, and property management.  *See* www.vibrantcities.com.  James Wong and Pui Leung are ~~Solterra~~SolTerra's cofounders.

In November 2015, ~~Solterra~~SolTerra created Pine Esker, LLC, as the single-purpose entity to manage the development of the property.  Between July 2015 and the closing of the purchase of the building site in August 2016, ownership raised its initial round of equity of approximately $9 million from friends and family, who invested in the Project.  The $9 million was used to pay for the land acquisition and entitlement and permitting costs.

After more than three years of effort to obtain the necessary design approvals and permits, ownership went to the market to raise the additional funds necessary to construct the Project. The original total budget, including land costs, was $44.8 million.  The $13.4 million of equity and preferred equity that ownership raised, represented approximately 30% of the total Project cost and a bank loan ~~of approximately~~ for the balance of the project cost represented approximately 70% of the total Project cost.  The equity and bank loan should have been sufficient to complete the project.  Utilizing the then market capitalization rate of 4.4%, ownership estimated the completed value of the project to be $51.5 million, or an approximately $6.7 million profit for the equity investors.  The $44.8 million costs included a $3 million cash liquidity component, which would have been returned to investors upon completion, increasing the resulting profit to equity of approximately $9.8 million.

**COVID Leads to Increased Expenses and Delays.**

Unfortunately, while operational income and expense components of the 2019 proforma were later met, construction costs and timelines were significantly impacted by the COVID-19 pandemic.  In February 2020, the State declared a state of emergency due to the pandemic, followed by a stay-at-home order a month later.  With these state mandates, construction of the Project was significantly delayed as workers and subcontractors had to stay home from time to

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

time, interest holding costs skyrocketed, and the construction site had to implement stringent safety measures that significantly effected efficiencies. Worse still, the numerous increases in the federal funds rate in response to COVID created increased borrowing rates and had a significant negative effect on valuations and lending options. Finally, supply chain disruptions drove up costs and significantly delayed completion, as subcontractors were unable to procure necessary material in a timely fashion. ~~It was also difficult to schedule~~There were multiple issues with the City of Seattle ~~to inspect~~, including difficulties in scheduling inspections of completed stages of construction so that work could continue. What normally would take a week often took 4 to 8 weeks to complete inspections.

These and other events significantly delayed the Debtor's occupancy timeline. The projected completion date for the project that Walsh Construction Company II, LLC ("Walsh"), the general contractor, provided was October 9, 2020. The Debtor did not receive its Temporary Certificate of Occupancy (TCO) – the certificate required to move residents and tenants into the building – until May 17, 2022. The project was delayed by more than 585 days, or ~~by~~ 1 ½ years, resulting in significant additional interest expense and increased construction costs due to rising material prices and delays.

In January 2022, Colliers presented a potential buyer for the Project. The buyer was a national multifamily owner that owns and manages over 15,000 apartment units. On January 30, 2022, the buyer submitted a letter of intent ("LOI") to purchase the Project for $60 million after it reached 50% occupancy, which took approximately 6 months to achieve. However, by that time the Federal Reserve had announced its second rate hike, and the buyer terminated the LOI. In short, an on-time, or earlier, completion would likely have allowed the Debtor to monetize the Project and avoid this filing altogether.

**Additional Financing Became Necessary.**

Due to delay and increased material, labor and interest costs, ownership had to secure additional funding, in the form of loans from Mr. Omar Lee and Christine Lee (together, "Lee")

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

1   for $4,000,000 in April 2022, and South Point Capital LLC ("South Point") for $2,660,000 for

2   the completion of the project.  This increased the total costs of the Project from $44.8M to

3   $51.3M.  As part of Lee and South Point's requirements and the Debtor's commitment to

4   completing construction, Mr. Wong provided a personal guarantee to secure the loans.

5           In October 2022, the Debtor obtained a $32 million bridge loan the ("Pivot Lender Loan")

6   from the Proponent, to take out the existing construction loan from Bank OZK/HIG.  The Pivot

7   Lender Loan had a two-year term with two six-month extension options.  The Pivot Lender Loan

8   had over $3 million of interest and construction work reserves.  With expected NOI of $2.2

9   million and interest costs of $2.56 million, the Debtor's operating shortfall would only be

10  $400,000 per year while the Debtor awaited a return to normalcy in the capital markets.  The

11  reserves were projected to be more than sufficient to backstop the Pivot Lender Loan.

12          **Pivot Lender Fails to Assure First-Position Lien.**

13          Unfortunately, the closing of the Pivot Lender Loan created another set of issues.  When

14  the Pivot Lender Loan to the Debtor closed in October 2022, the Proponent recorded a new deed

15  of trust to secure its loan.  Neither the Proponent nor its title insurer conditioned the loan on

16  obtaining an executed subordination agreement from Walsh and its subcontractors as to their

17  construction lien rights.  As a result, Walsh claims a senior lien position, and litigation is now

18  pending between Walsh and the Proponent as to their respective lien priorities.

19          **Walsh Records Lien; Priority Dispute.**

20          The Debtor encountered difficulties with Walsh and its resulting claim as well.  Many

21  cost increases had to be absorbed by the Debtor.  ~~However~~The Debtor contends, however, other

22  cost increases and delays were Walsh's responsibility in accordance with the parties' AIA

23  contract.  Unbeknownst to the Debtor or Proponent, Walsh recorded a lien against the Project for

24  $4.3 million in December 2022, which Walsh alleges relates back to the commencement of its

25  work on the Project.  The Debtor believes the actual Walsh Claim amount is less than the amount

26  Walsh asserts is owed.  ~~Ownership~~Prior to the time Walsh recorded its lien, the Debtor and Walsh

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

1 ~~have gone to mediation~~attempted to resolve this Claim through mediation but to no avail, a

2 circumstance compounded by the Walsh dispute with Proponent regarding the lien priority

3 dispute.

4      As the relationship between the Debtor and Proponent deteriorated, Proponent made the

5 decision that it would no longer release any funds from the interest reserve, and instead required

6 the Debtor to use its own funds to pay monthly loan payments to Proponent.  Unfortunately,

7 ownership had used all its available cash to finish construction of the building.  In August 2023,

8 ownership began to take the rental income, which was previously deposited in a lender-controlled

9 account, to pay all operating expenses from the rents and then ~~send~~sent the balance to Proponent

10 to pay the interest payments on the Pivot Lender Loan.

11

12      **Fed Rate Hikes and Cap Rate Increases.**

13      Along the way, the Debtor engaged Cushman & Wakefield ("Cushman") in May 2023 to

14 market the Property for sale.  In a Broker's Opinion of Value, Cushman opined that the market

15 value of the Project was between $44.3 million and $46.0 million.  A sale in this range would net

16 proceeds sufficient for full payment of the Pivot Lender Loan, the Walsh claim, the junior

17 lenders, and general unsecured claimants.  Unfortunately, that opportunity went away as a result

18 of three additional Federal Reserve interest rate hikes of a total of 200 basis points, which also

19 led to increased capitalization rates and lower appraised values.  Instead of offers for the Property

20 coming in at the mid-40-million-dollar range, offers from eight potential buyers were between

21 $25 million to $34 million.  Even if ownership were to sell at the highest end of the range, $34

22 million would not have been sufficient to pay off Walsh's lien and Proponent after taxes and fees.

23      **Foreclosure Causes Bankruptcy Filing.**

24      On or about December 15, 2023, Proponent commenced a non-judicial foreclosure

25 proceeding, scheduling a trustee's sale for March 29, 2024.  Thereafter, December 19, 2023,

26 Proponent commenced litigation against the Debtor in King County Superior Court, *Pivot*

AMENDED DISCLOSURE STATEMENT- 13

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

1     *Apartments Lender, LLC v. B-1208 Pine, LLC,* Case No, 23-2-25097-4 SEA, seeking

2     appointment of a receiver to take possession and control of the Property and its rents pending

3     completion of the foreclosure.  After Proponent declined to participate in any discussions with

4     the Debtor seeking an alternative course, this bankruptcy case was commenced to preserve the

5     Property as a source of recovery for all creditors.

6         **B.**    <u>**Significant Post-Petition Activity in the Bankruptcy Case**</u>

7         **1.**     **Debtor-in-Possession.**  The Debtor is operating its business and managing its

8     affairs as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9     No trustee or examiner has been appointed to serve in this reorganization case.

10        **2.**     **Adequate Assurances to Utilities.**  On January 24, 2024, the ~~court~~<u>Bankruptcy</u>

11    <u>Court</u> entered an order approving the Debtor's proposed adequate protection to utility providers

12     (the "<u>Utility Order</u>").  ECF No. 39.  After notice to Utility Providers and receiving no responses,

13     the Utility Order became final on February 16, 2024.

14        **3.**     **Use of Prepetition Cash Management Systems and Bank Accounts.**  On

15    January 24, 2024, the ~~court~~<u>Bankruptcy Court</u> entered an order approving on an interim basis the

16     Debtor's continued use of prepetition cash management systems and bank accounts.  ECF No.

17     42.  On February 22, 2024, the ~~court~~<u>Bankruptcy Court</u> entered an order granting final approval

18     of the Debtor's use of prepetition cash management systems and bank accounts.  ECF No. 68.

19        **4.**     **Employment of Professionals.**  The <u>Bankruptcy</u> Court entered orders authorizing

20     the employment of the following professionals pursuant to Bankruptcy Code § 327.

| Professional | Role | Order Entered | Docket No. |
|---|---|---|---|
| Bush Kornfeld LLP | Bankruptcy Counsel to Debtor | 2/16/24 | 63 |
| Cascade Capital Group, LLC | Financial Advisor to Debtor | 2/22/24 | 69 |
| Smith Currie Oles | Special Counsel to Debtor | 3/29/24 (but order subsequently revoked) | 89 |

5. **Approval of Debtor's Use of Cash Collateral.** On February 5, 2024, the ~~court~~Bankruptcy Court entered an order authorizing, on an interim basis, the Debtor's use of cash collateral and the granting of adequate protection in favor of Proponent pending a final hearing. On February 23, 2024, the ~~court~~Bankruptcy Court entered an order granting final approval of the use of cash collateral and granting of adequate protection, subject to termination on the bases set forth in the order. ECF No. 72.

6. **Removal of State Court Litigation to Bankruptcy Court.** On December 16, 2022, Walsh commenced litigation against the Debtor and others, alleging (among other things) breach of contract and breach of good faith and fair dealing in King County Superior Court, Case No. 22-2-20748-5 SEA (the "State Court Litigation"). Walsh seeks an award of more than $4.2 million and to foreclose on its construction lien. On January 19, 2023, Walsh filed an amended complaint to, among other things, add Proponent as a defendant.

On January 23, 2024, Proponent filed a *Notice of Removal of Action*, effecting the removal of the State Court Litigation to this ~~court~~Court, which was assigned Adv. No. 24-ap-01010 (the "Adversary Proceeding").

7. **Motion for Withdrawal of the Reference.** Pursuant to 28 U.S.C. § 1334(a), each district court has original and exclusive jurisdiction over all bankruptcy cases filed within the relevant district. However, 28 U.S.C. § 157(a) permits each district court to refer all bankruptcy cases to the bankruptcy court within such district. Pursuant to Local Civil Rule 87(a), the ~~district court~~District Court for the Western District of Washington (the "District Court") adopted a standing referral of all bankruptcy cases to the ~~bankruptcy court~~Bankruptcy Court.

On March 7, 2024, Walsh filed a motion with the District Court for withdrawal of the reference pursuant to 28 U.S.C. § 157(d) that, if granted, would have transferred the Bankruptcy Case to the District Court. By order entered May 24, 2024, the District Court denied the motion without prejudice as being premature.

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

1   **8.     Claims Bar Date; Effect.**  By order entered March 11, 2024, the Bankruptcy
2   Court set the Claims Bar Date.  Pursuant to Bankruptcy Code § 1111(a) and Bankruptcy Rule
3   3003(b)(1), every creditor whose Claim is listed in the Schedules as disputed, contingent or
4   unliquidated was required to file a Proof of Claim by the Claims Bar Date.  Among possibly
5   other Creditors, Walsh failed to file a Proof of Claim, timely or otherwise.

6   9.     **The Debtor's Reorganization Efforts.**  Debtor filed a First Amended Disclosure
7   Statement [ECF No. 121] and First Amended Plan of Reorganization [ECF No. 120] on June 20,
8   2024.

9       On August 15, 2024, the Bankruptcy Court conducted a hearing on the Debtor's First
10  Amended Plan of Reorganization and denied confirmation for, among other things (i), the First
11  Amended Plan of Reorganization was not in the best interest of the creditors and (ii) the First
12  Amended Plan of Reorganization general unsecured class of claims and convenience class of
13  claims had been gerrymandered to obtain a consenting class.  On August 16, 2024, this Court
14  entered an order [ECF No. 153] denying confirmation of the Debtor's plan.

15      On September 20, 2024, the Bankruptcy Court entered an order [ECF No. 174] that,
16  among other things, revoked the Bankruptcy Court's approval of the  Debtor's First Amendment
17  Disclosure Statement.

18                          **Summary of the Plan**

19      The following summary of the terms of the Plan is qualified in its entirety by reference
20  to the provisions of the Plan, a copy of which accompanies this Disclosure Statement, and which
21  is incorporated herein by reference.

22      The Proponent submits that the treatment of Creditors under the Plan is the same or better
23  than the treatment Creditors would receive if the Chapter 11 Case were converted to a Chapter
24  7. Therefore, the Proponent submits that the Plan is in the best interests of the Creditors and the
25  Proponent recommends acceptance of the Plan by holders of Claims in all Classes.

26

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

**The Proposed Sale**

The Plan provides for the liquidation of the Debtor by selling the Debtor's only material asset, the Property, to generate proceeds to pay Allowed Claims of the Debtor's ~~estates~~estate as more fully described herein and in the Plan.

The Proponent intends to sell the Property (and the Property Causes of Action) to obtain its highest and best price, in accordance with applicable provisions of the Bankruptcy Code. The closing of the Sale shall take place following the Auction in accordance with the Bid Procedures. In summary, the Broker will market the Property (and the Property Causes of Action) and conduct an Auction following confirmation at which the Proponent will be entitled, within its discretion, to submit a credit bid ~~in~~up to the Allowed amount of the Lender's Claim. ~~The Closing~~In the event there are no other bidders for the Property other than the Lender (or its nominee(s), designee(s) or assignee(s)), the amount of such credit bid shall ~~take place after~~be the ~~Auction~~minimum bid amount set forth in the Bid Procedures.

The winning bidder at the ~~auction~~Auction (the "Successful Bidder") shall take title to the Property (and the Property Causes of Action) free and clear of all liens, claims and encumbrances pursuant to Sections 363(f) and 1123(a)(5) of the Bankruptcy Code, ~~except that the Successful Bidder may take the Property subject to the Proponent's mortgage, which may be assigned to a lender to the Successful Bidder,~~ and if the purchaser of the Property is the Lender (or its designee, assignee or nominee) with a credit bid, the Walsh Lien, which shall survive and the Property will be transferred to the Lender (or its designee, assignee or nominee) subject to the Walsh Lien, to the extent it has not been expunged by a Final Order of this Court.

In the event that the Available Cash on the Effective Date is insufficient to provide creditors of the Debtor's ~~estates~~estate with the distributions required to be made on the Effective Date, any shortfall will be funded by the Proponent by either reducing the distribution to be made on account of the Lender's Secured Claim in Class 2, or through Cash to be provided by the

Foster Garvey PC
1111 Third Avenue, Suite 3000
Seattle, Washington 98101-3296
Phone (206) 447-4400 Fax (206) 447-9700

Proponent with any such shortfall funding constituting an administrative claim against the Debtor's estates payable from Available Cash after the Effective Date.

Upon completion of the Sale, Kriss & Feuerstein LLP, the Proponent's Disbursing Agent, shall be authorized to execute any and all documents necessary to effectuate the conveyance of the Property (and the Property Causes of Action) in accordance with the terms of the Plan, including without limitation, Bargain and Sale Deed with Covenants, a Bill of Sale and all required transfer tax returns and other applicable documents. Furthermore, on the Effective Date, the Debtor will provide the Successful Bidder, or its nominee, with an assignment and assumption of all unexpired leases or executory contracts that are subject of an Assumption Notice at the Property, subject to the later approval of the assumption and assignment as provided in section 5.1 of the Plan.

**The Broker**[9]

The Proponent ~~has hired~~will engage Eastdil Secured or such other broker as the ~~Broker~~Proponent and Debtor agree to, who will handle the marketing and sale of the Property pursuant to the Bid Procedures. ~~Eastdil Secured~~The Proponent will ensure that the Broker retained has ample experience in the sales of commercial real estate throughout this region. The Broker's Engagement Agreement ~~lists~~will list the scope of the assignment and the compensation. If the Property is sold to the Proponent (or its designee, assignee, or nominee) with a credit bid, Broker shall be entitled to compensation of $50,000. If the Property is sold to any other person, the Broker shall be paid 0.75% of the gross sale price. ~~(See~~The Broker shall be retained subject to certain conditions set forth in the Broker Engagement Agreement~~, at ¶ 2)~~ to be filed with the Court prior to the Confirmation Hearing.

---

[9] The background information relating to the Broker is based on the Broker's website of the filing of the Disclosure Statement. More information on the Broker can be found on its website ~~(http://www.hentze-dor.com)~~https://www.eastdilsecured.com/.

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

**A. Classification of Claims and Interests**

Classification of claims is governed, in part, by Sections 1122 and 1123(a) of the Bankruptcy Code. 11 U.S.C. § 1123(a) requires that a plan designate classes of claims, requires that the plan specify the treatment of any impaired class of claims, and requires that the plan provide the same treatment for each claim of a particular class, unless the holder of a claim receiving less favorable treatment consents to such treatment. 11 U.S.C. § 1123(a)(1), (3) and (4). 11 U.S.C. § 1122(a) of the Bankruptcy Code provides, subject to an exception for administrative convenience, that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."

Article 3 of the Plan classifies the various Claims against and Interests in the Debtor into four (4) classes of Claims and one (1) class of Interests:

**Class 1 -**     **Other Secured Claims**

**Class 2 -**     **Lender Secured Claim**

**Class 3 -**     **Walsh Lien**

**Class 4 -**     **Priority Claims**

**Class 5 -**     **General Unsecured Claims**

**Class 6 -**     **Interests in Debtor**

As discussed above, Class ~~1, Class, 3, Class 4, and Class~~ 6 ~~are~~is unimpaired under the Plan and holders of claims or interests in such ~~Classes~~Class are conclusively deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. As a result, no voting or balloting will be conducted of the creditors or interest holders in such ~~Classes~~Class under the Plan. Classes 1, 2, 4, and 5 are impaired under the Plan and Class 3 is deemed to be impaired for voting purposes and, as such, holders of claims or interests in such classes will receive a ballot to vote on the Plan. As set forth in Article 2 of the Plan, pursuant to Section 1123(a)(1) of the Bankruptcy Code, certain Administrative Claims against the Debtor have not been classified. See "SUMMARY OF THE PLAN -- Treatment of Non-Classified Claims."

AMENDED DISCLOSURE STATEMENT- 19

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

**Class 1 –Other Secured Claims.**  Class 1 consists of all Other Secured Claims against the Debtor (*i.e.*, other than the Secured Claims of Proponent).  The Proponent is informed and believes there are no "Other Secured Claims" and the only secured claims are those set forth in Class 1 are not impaired2 and Class 3 based on the expected sale price of the Property and the amount of the Claims in Classes 2 and 3.  The Other Secured Claims in Class 1 are unimpaired under the Plan.

**Class 2** – **Lender Secured Claim**.  Class 2 consists of the Lender Secured Claim, which comprises the secured portion of the Lender Claim, which is secured by a first priority security interest in the Property.  The Plan allows the Lender Claim at $35,031,968.55, plus post-petition protective advances (if any), fees, expenses, and costs and protective advances, with interest from the Petition Date at the default rate specified in the note underlying the Lender Claim.   The amount of the Lender Secured Claim shall be determined based on the extent to which the Lender Claim is secured by an interest in the Property, which shall be determined by the amount of net proceeds received from the Sale of the Property and the result of litigation with Walsh over the amount of and priority of the Walsh Lien.  To the extent that the Lender Claim is not secured by an interest in the Property, the resulting unsecured portion of the Lender Claim shall constitute the Lender Unsecured Claim, which shall be a claim included in Class 5.  Lender has agreed to waive any portion of its Lender Unsecured Claim that is a Class 5 claim, and Lender shall receive no payment on its Class 5 claim through the Plan.  The Lender Secured Claim is impaired under the Plan.

**Class 3 – Walsh Lien**.  Class 3 consists of the Walsh Lien.  Under the Plan, the Walsh Lien is the lien of Walsh against the Property.  The amount due under this Lien and the Lien's priority is disputed and to the extent it constitutes a Claim (notwithstanding that Walsh did not file a proof of claim and the Debtor's schedules lists the Walsh claim as contingent, disputed and unliquidated), it is a Disputed Claim.  If the Walsh Lien becomes an Allowed Claim, it may be

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

further limited in amount depending on the result of the Sale of the Property and the priority of and amount due under the Walsh Lien as determined by this Court. The Proponent believes that the claim by the holder in Class 3 (Walsh Lien) is unimpaired under pursuant to Section 1124 of the Bankruptcy Code, but in an abundance of caution, Class 3 will be solicited and entitled to vote on the Plan.

**Class 4 - Priority Claims**. Class 4 consists of all Priority Claims against the Estate. The Priority Claims in Class 4 are unimpaired under the Plan.

**Class 5 – General Unsecured Claims**. Class 5 consists of all General Unsecured Claims against Debtor. The General Unsecured Claims in Class 5 are impaired under the Plan.

**Class 56 – Interests.** Class 56 consists of all Equity Interests in the Debtor. he The Interests in Class 56 are unimpaired under this Plan.

**B.     Treatment of Claims and Interests Classified under the Plan**

Article 4 of the Plan provides for the treatment of Claims classified in Article 3 of the Plan as follows:

**Class 1 – Other Secured Claims.** The holders of the Allowed Class 1 Other Secured Claims will receive on account of such claims Available Cash sufficient to pay such Claims in full, on the Effective Date or as soon thereafter as is reasonably practicable.

**Class 2** – **Lender Secured Claim**. The holder of the Allowed Class 2 Claim will receive on account of such claim on or about the Effective Date either a distribution of Available Cash sufficient to allow for payment in full of the Lender Secured Claim or the Property and the Property Causes of Action following a successful credit bid; provided, however, that such payment shall be reduced pursuant to section 6.2 of the Plan to the extent required to allow for payment in full on the Effective Date of the Claims in Class 1, Claims in Class 3 (to the extent Allowed), Claims in Class 4, the Statutory Fees and Administrative Claims and any other payments required to be made under the Plan. In addition, on the Effective Date, the holder of

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

the Allowed Class 2 Claim may apply the cash it holds as a reserve or other cash collateral to the balance due on the Lender Claim, in the manner provided for in the documents underlying the Lender Claim.

**Class 3 – Walsh Lien**. Unless the holder of the Class 3 Claim agrees with the Proponent on different treatment, the holder of the Class 3 Claim, when Allowed, will receive on account of such Claim, payment in full, on the Effective Date or as soon thereafter as is reasonably practicable. The Walsh Lien shall attach to the proceeds of the Sale of the Property and the Property Causes of Action, except if the purchaser of the Property is the Lender (or its designee, assignee or nominee) with a credit bid, in which case the Property is transferred subject to the Walsh Lien. If a cash reserve is established on account of the Walsh Lien being a Disputed Claim, such cash reserve shall be in an interest bearing escrow account.

**Class 4 - Priority Claims**. The holders of the Class 4 Claims will receive from Available Cash sufficient to pay such Claims on the Effective Date or as soon thereafter as is reasonably practicable.

**Class 5 – General Unsecured Claims**. Unless a holder of an Allowed Class 5 Claim agrees with the Proponent on different treatment, each holder of an Allowed Class 5 General Unsecured Claim will receive on account of such claim a payment of a pro rata distribution of Available Cash after all payments to Class 1 Claims, the Class 2 Claim, the Class 3 Claim, the Class 4 Claims, the Statutory Fees and Administrative Claims, with, as to Claims in Class 1, Class 3 and Class 4, simple interest at the Federal Judgment Rate per annum from the Petition Date, with principal being paid in full prior to any payments being made on account of such interest, and with, as to the Class 2 Claim, default interest at the rate set forth in the note underlying the Lender Claim; provided, however. However, that if the claimant at Docket 1, Schedule F at 3.31 with a claim in the amount of $255,370.97 has advised Proponent is that it has waived the Successful Bidder based on a credit bidclaim against the Debtor, and as a result, the Proponent will provide a distribution of $75,00077,008.96 or such other amount sufficient to pay

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

holders of Claims in Class 5, other than the Lender Unsecured Claim, and Schedule F 3.31 claim, in full, since the Proponent ~~agreeing~~has agreed to waive the right to receive any distribution from such $~~75,000~~77,008.96 as a member of this Class.

**Class 6 – Interests**. Holders of Allowed Class 6 Interests shall continue to retain and maintain such Interests in the Debtor and the Post-Confirmation Debtor following the Effective Date of the Plan in the same percentages as existed as of the Petition Date. Additionally, to the extent that there is any Available Cash after full payment of all Statutory Fees, Administrative Claims, the Class 1 Claims, the Class 2 Claim, the Class 3 Claim, the Class 4 Claims, the Class 5 Claims, default interest from the Petition Date forward for the Claim in Class 2 at the rates set forth in the applicable note(s) and interest from the Petition Date forward at the Federal Judgment Rate as to Claims in Class 1, Class 3, Class 4, with principal as to all such Classes being paid in full prior to any payments being made on account of such Allowed Class 6 Interests, but to the extent such payments can be made, the holders of the Allowed Class 6 Interests shall receive such remaining Available Cash, pro rata, in accordance with their respective percentage interests in the Debtor.

**C. Treatment of Non-Classified Claims**

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims entitled to priority treatment under Section 507(a)(2) of the Bankruptcy Code or Claims of Governmental Units entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code. Article 2 of the Plan provides for the manner of treatment of such non-classified Claims.

**Administrative Claims.** Administrative Claims are the costs and expenses of administration of this Case, allowable under Section 503(b) of the Bankruptcy Code, other than Bankruptcy Fees. Administrative Claims include Claims for the provision of goods and services to the Debtor after the Petition Date, the liabilities incurred in the ordinary course of the Debtor's business (other than claims of governmental units for taxes or interest or penalties related to such

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

taxes) after the Petition Date, Claims of professionals, such as attorneys, brokers, appraisers, and accountants, retained pursuant to an order of the Bankruptcy Court, for compensation and reimbursement of expenses under Section 330 of the Bankruptcy Code, and tax claims for the period from the Petition Date to the Effective Date of the Plan.

Each holder of an Allowed Administrative Claim shall receive cash in the full amount of its Administrative Claim.  ~~The~~All rights are reserved as to all parties, including the Proponent ~~reserves all rights~~and Debtor, to object to any fee applications.  It is not believed that there will be any other Administrative Claims in this case, aside from the Broker's commission, which shall be paid via a buyer's premium, and the Debtor's bankruptcy counsel ~~to the Debtors~~and financial advisor.

Each Administrative Claim, shall be paid by the Disbursing Agent in Cash in full on (i) the later of the Effective Date, the date payment of such Claim is due under the terms thereof or applicable law, or three business days after such Claim becomes an Allowed Administrative Claim, or (ii) as may be otherwise mutually agreed in writing between the Disbursing Agent and the holder of such Claim, provided, however, that any Allowed Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim and any agreements relating thereto.

Article 2 of the Plan sets a final date for the filing of Administrative Claims against the Debtor.  The Administrative Bar Date is fourteen (14) days after entry of the Confirmation Order.

**Bankruptcy Fees.**  All fees and charges assessed against the Debtor and its Estate under Section 1930 of title 28 of the United States Code and any applicable interest thereon shall be paid by the Disbursing Agent in Cash in full as required by statute, and until the closing, conversion or dismissal of this case, whichever is earlier. The Disbursing Agent shall continue to be responsible for the payment of any such fees and charges.

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

1      **Professional Fees.**  11 U.S.C. § 330 of the Bankruptcy Code sets the standard for the
2      determination by the Bankruptcy Court of the appropriateness of fees to be awarded to
3      Professionals retained by the Debtor in a case under the Bankruptcy Code.  In general, bankruptcy
4      legal services are entitled to command the same competency of counsel as other cases.  "In that
5      light, the policy of this section is to compensate attorneys and other professionals serving in a
6      case under title 11 at the same rate as the attorney or other professional would be compensated
7      for performing comparable service other than in a case under title 11."  124 Cong. Rec. H11091
8      (Daily ed. Sept. 28, 1978).

9      Reasonable compensation due to the Debtor's retained professionals pursuant to Section
10     330 of the Bankruptcy Code, as determined by the Bankruptcy Court, shall be payable in full and
11     in Cash on the Effective Date unless otherwise agreed to in writing between the holder of such
12     claim and the Debtor and approved by the Bankruptcy Court.

### D.    DISPUTED CLAIMS

14     Article 8 of the Plan contains a mechanism for resolving disputes concerning the amount
15     of certain Claims asserted against the Debtor's by any Entity.

16     **Time to Object.**  Proponent, shall have authority to file, prosecute, settle, compromise,
17     withdraw or resolve objections to Claims as they see fit in its discretion.  ~~The rights of anyone~~
18     ~~who has objected to such Claim(s) prior to the Effective Date as to such objection shall be~~
19     ~~transferred to the Proponent after the Effective Date.~~ Unless otherwise ordered by the Bankruptcy
20     Court or provided in this Plan, the Proponent may file and serve any objection to any Claim or
21     Interest at any time, but in no event after the Effective Date for Claims that are otherwise entitled
22     to payment on the Effective Date or, for all Claims that are otherwise entitled to payment after
23     the Effective Date, on the later of (i) ninety (90) days following the Effective Date; or (ii) sixty
24     (60) days after the date proof of such Claim or Interest, or a request for payment of such Claim,
25     is filed with the Bankruptcy Court, unless the time is extended by the Bankruptcy Court.

26

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

AMENDED DISCLOSURE STATEMENT- 25

### E. Distributions under the Plan

Article 8 contains provisions governing the making of Distributions on account of Claims and Interests. In general, except as otherwise provided in the Plan, and subject to Sections 8.7, 8.8 and 8.9 of the Plan, any payments, distributions or other performance to be made pursuant to this Plan on account of any Disputed Claim shall be deemed to be timely made if made on or within five (5) days following the later of (i) the Effective Date, (ii) the expiration of any applicable objection deadline with respect to such Disputed Claim, or (iii) such other times provided in this Plan. All Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank. Any escrowed, reserved or segregated funds will be held at a banking institution that is an authorized banking depository in the Western District of Washington.

**Disbursing Agent.** Kriss & Feuerstein LLP will act as the Disbursing Agent in order to make Distributions under the Plan for all claims against the Debtor's Estate. The Disbursing Agent shall not be compensated for services rendered under the Plan. The Disbursing Agent shall not incur any liability, other than for gross negligence, willful misconduct, criminal conduct, or for any claim for liability pursuant to 28 U.S.C. § 959 in connection with carrying out its duties under the Plan, which liability shall be expressly limited to the period commencing from the date of the Disbursing Agent's receipt of the Available Cash and ending on the date that all disbursements contemplated by the Plan have been distributed.

Distributions shall be made: (1) at the addresses set forth on the Proofs of Claim or Proofs of Interests filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim or Proof of Interest; or (3) at the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Disbursing Agent has not received a written notice of a change of address.

**Unclaimed Distributions**. Any distribution that is returned to the Disbursing Agent shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

(each, an "Unclaimed Distribution").  A distribution becomes an Unclaimed Distribution if three months have elapsed since a distribution is returned to the Disbursing Agent as undeliverable or six months have elapsed since a distribution check has gone uncashed and if no notice has been provided to the Disbursing Agent by the holder of the claim to which such distribution relates containing a valid address for such holder.  If such a notice is provided, then, after receipt of such additional information as the Disbursing Agent may require confirming the identity, address and ownership of such Claim, the Disbursing Agent shall make a distribution of all amounts reserved for such undeliverable distribution or unclaimed check to such Claim holder at the address provided in such notice within 14 days thereafter.  All Unclaimed Distributions shall become Available Cash and shall be distributed in accordance with this Plan.

**Distributions With Respect to Disputed Claims**.  During the pendency of any objection to any Claim, no Distribution under the Plan will be made to the holder of such Claim.  However, there will be set aside and reserved on behalf of such disputed Claim such cash or property as the holder thereof would be entitled to receive in the event such Claim was an Allowed Claim on the date of such Distribution.  The Proponent may seek an order of the Bankruptcy Court estimating or limiting the amount of Cash or property that must be deposited in respect of any such Disputed Claims.  Cash held in reserve for Disputed Claims will be held in trust for the benefit of the holders of such Claims.

**Surrender of Instruments**.  No Creditor that holds a note or other instrument of the Debtor's evidencing such Creditor's Claim may receive any distribution with respect to such Claim or Interest unless and until the note or other instrument evidencing such Claim is surrendered pursuant to the provisions of the Plan except to the extent the Property and the Property Causes of Action is transferred to the Successful Bidder subject to the Proponent's lien and except if the purchaser of the Property is the Lender with a credit bid, in which case the Property is transferred subject to the Walsh Lien.  In the event an instrument evidencing a Claim has been lost, stolen or mutilated, the Disbursing Agent may request reasonable affidavits and

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

indemnification by a financially responsible party before making any distribution(s) to such Creditor.

### F. Compliance with Tax Requirements

In connection with the Plan, the Debtor shall not be relieved of, and shall comply with, all withholding and reporting requirements imposed by federal, state and local taxing authorities, and distributions under the Plan shall be subject to such withholding and reporting requirements.

### G. Effective Date

The Effective Date of the Plan is defined as the later of (i) one Business Day after the Confirmation Order becomes a Final Order; or (ii) the date all conditions to the Effective Date have been satisfied or waived by the entity entitled by this Plan to waive such condition and the Sale has closed.

### H. Treatment of Executory Contracts and Unexpired Leases

All Executory Contracts or Unexpired Leases to which the Debtor is a party as of the Effective Date, other than residential leases, which were not previously rejected, assumed, or assumed and assigned by the Debtor shall be rejected and disaffirmed under the Plan as of the Effective Date in accordance with the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code, unless an Executory Contract or Lease is listed as assumed and assigned to a Successful Bidder on a notice to be filed by the Successful Bidder with the Bankruptcy Court (the "**Assumption Notice**"), with such notice being served by the Successful Bidder on the counterparty to each such Executory Contract or Unexpired Lease, no later than the date of the Closing; provided, however, that all Unexpired Leases that are residential leases from the Debtor to lessee occupied residences (as opposed to entities that sublet the residence) shall be assumed and assigned to the Successful Purchaser as of the Closing.

**Rejection Claims**. Holders of Claims created by the rejection of executory contracts and unexpired leases or the expiration or termination of any executory contract or unexpired lease must file in the Bankruptcy Court and serve on the Proponent a proof of claim within 21 days

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

1  after service of the Assumption Notice or the expiration of the deadline to serve the Assumption

2  Notice.  Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed

3  as provided herein shall be treated as General Unsecured Claims under the Plan as against the

4  applicable Debtor, subject to objection by the Proponent.  After receipt of such proof of claim,

5  the Proponent shall have 21 days to file an objection, failing which such Claim shall be an

6  Allowed Claim.

### I.   Transfer of The Property

Except as otherwise provided in the Plan, on Effective Date, all of the assets and Property

of the Debtor's Estate shall vest in the Disbursing Agent or, as to the Property and the Property

Causes of Action, the Successful Bidder, free and clear of all Liens, Claims and encumbrances

(except to the extent such Property is sold subject to the Proponent's lien and except if the

purchaser of the Property is the Lender with a credit bid, in which case the Property is transferred

subject to the Walsh Lien).  The Debtor shall cooperate with the execution of any and all

documents needed to facilitate all transfers pursuant to the Plan, including the Property. On the

Effective Date, any and all Liens, Claims and encumbrances that have not been expressly

preserved under the Plan shall be deemed extinguished as of such date.  Furthermore, on the

Effective Date or as soon as practicable thereafter, all insurance claims and proceeds thereof to

which the Debtor was entitled, shall be assigned to the Disbursing Agent for liquidation and

distribution in accordance withLender or Successful Bidder, as the Plancase may be.

### J.   Funding

The Plan will be funded by monies made available from the Sale of the Property (and the

Property Causes of Action). However, the Proponent shall advance such funds as are necessary

to make payments required under the Plan if the Sale proceeds are insufficient to fund all

payments required under the Plan, as provided in section 6.2 of the Plan.

The Disbursing Agent shall take all necessary steps and perform all acts to consummate

the terms and conditions for the Plan, and the Debtor shall not interfere with the Disbursing Agent

AMENDED DISCLOSURE STATEMENT- 29

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

1    in the performance of its duties. The Confirmation Order shall contain appropriate provisions

2    consistent with Section 1142 of the Bankruptcy Code, directing the Debtor and any other

3    necessary party to execute or deliver or to join in the extension or delivery of any instrument

4    required to affect the Plan or to perform any act necessary to consummate the Plan.

5    Except as set forth elsewhere in the Plan, all payments required to be made under the Plan

6    shall be made by the Disbursing Agent for disbursement in accordance with the terms of the Plan.

7    **K.      Preservation of Rights of Action**

8    On the Effective Date: (a) all Causes of Action shall be transferred to the Proponent,

9    except for the Property Causes of Action, which shall be transferred to Successful Bidder, and

10   (b) all Privileges (including attorney-client and attorney work product) and all rights under any

11   confidentiality agreements owned by the Debtor on the Effective Date that relate to the Property

12   Causes of Action shall be transferred to the Successful Bidder.  The Successful Bidder shall have

13   the right to enforce or waive such Privileges and rights as it sees fit in its discretion except as to

14   any Privileges and any rights under any confidentiality agreements that relate to the Property

15   Causes of Action, which shall be transferred to the Successful Bidder and the Successful Bidder

16   shall have the right to enforce or waive such Privileges and rights as they see fit in their discretion.

17   No Causes of Action have been asserted by or on behalf of the Debtor against the Proponent, nor

18   have any other Causes of Action been asserted against the Proponent by third parties in

19   connection with the Debtor and the Property.  The Proponent is not aware that any such Causes

20   of Action against the Proponent exist.

21   **L.      Post-Confirmation Operating Reports and United States Trustee's Fees**

22   The Debtor's duty to prepare and file post-confirmation monthly operating reports shall

23   continue until the closing of this case by means of a final decree, dismissal or conversion of this

24   case, whichever is earlier. Within 10 days of the Effective Date or as soon as practicable

25   thereafter, the Disbursing agent shall file a closing report detailing all disbursements made at the

26   closing on the Property.  All outstanding quarterly fees and any applicable interest due thereon

AMENDED DISCLOSURE STATEMENT- 30

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

1     payable to the Office of the United States Trustee shall be paid by the Disbursing Agent until

2     entry of a final decree, conversion or dismissal, whichever is earlier.

3     **M.**     **Transfer Taxes**

4     Pursuant to Section 1146(a) of the Bankruptcy Code and WAC 458-61A-207, the initial

5     issuance, transfer, or exchange of any security and the making or delivery of any instrument of

6     transfer in connection with or in furtherance of the Plan (including any instrument executed in

7     furtherance of the transactions contemplated by the Plan including but not limited to the deed

8     conveying the Property in accordance with the Sale and any deed further conveying the Property

9     within two years following the Sale by the Successful Bidder or its affiliate or designee) shall be

10     exempt and shall not be subject to tax under any law imposing a Transfer Tax, mortgage

11     recording tax or similar tax as set forth in the Plan.  In connection therewith, the Successful

12     Bidder shall have the protections afforded under the "good faith" purchaser provisions of Section

13     363(m) of the Bankruptcy Code and all stay provisions under Bankruptcy Rule 6004(h) or

14     elsewhere will be waived.

15     **N.**     **Revocation of the Plan**

16     The Plan may be altered, amended, modified or withdrawn by the Proponent at any time

17     before Substantial Consummation of the Plan, as provided in Sections 1101(2)(A) and 1127 of

18     the Bankruptcy Code and Bankruptcy Rule 3019.  Section 1127 of the Bankruptcy Code

19     authorizes the proponent of a plan of reorganization to modify such plan at any time prior to

20     confirmation of the plan so long as the plan, as modified, continues to meet certain technical

21     requirements of Sections 1122 and 1123 of the Bankruptcy Code with respect to the classification

22     of Claims and Interests and the contents of a plan.  Prior to Confirmation, if the Proponent files

23     a modification to the Plan, pursuant to Section 1127(a) "the plan as modified becomes the plan."

24     No order of the Bankruptcy Court is required to modify the Plan under the terms of Section

25     1127(a); however, the proponent of a modification to a plan must comply with Section 1125 of

26     the Bankruptcy Code with respect to the plan as modified.

Foster Garvey PC
1111 Third Avenue, Suite 3000
Seattle, Washington 98101-3296
Phone (206) 447-4400 Fax (206) 447-9700

1    The Proponent may revoke or withdraw the Plan at any time prior to Substantial

2    Consummation of the Plan.  If the Proponent revokes or withdraws the Plan, or if no Confirmation

3    Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall constitute

4    a waiver or release of any Claims by or against, or any Interest in the Debtor in any further

5    proceedings involving the Debtor.

6    **O.    Retention of Jurisdiction**

7        The Plan contains detailed provisions providing for the retention of jurisdiction by the

8    Bankruptcy Court over the Case for the purposes of, *inter alia,* determining all disputes relating

9    to Claims or Interests and other issues presented by or arising under the interpretation,

10   implementation or enforcement of the Plan.

**RISK FACTORS**

11
12       Plan payments are to be made from the Sale proceeds and, if necessary, the funds

13   provided by the Proponent if there is a shortfall of the amounts necessary to make the Plan

14   Effective as provided in section 6.2 of the Plan. There can be no assurance that the Sale of the

15   Property will occur.
16

17   **CONFIRMATION OF THE PLAN**

18       All Distributions to holders of Allowed Claims are contingent on the Plan being

19   confirmed by this Court.  Otherwise, neither the Disbursing Agent nor the Proponent is obligated

20   to make the payments required hereunder.

21   **CONFIRMATION HEARING**

22       The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to

23   consider confirmation of the Plan. **The Confirmation Hearing is scheduled to commence on**

24   **December    January 9, 20242025 at 9:30 a1:30 p.m., prevailing western timePacific Time,**

25   **in the United States Bankruptcy Court for the Western District of Washington, United**

26

AMENDED DISCLOSURE STATEMENT- 32

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

1  **States Bankruptcy Court, 700 Stewart Street, Room 6301, Seattle, Washington, 98101,**
2  ~~Room 6301~~.

3      The Bankruptcy Court has directed that **objections, if any, to confirmation of the Plan**
4  **be filed and served on or before** ~~December~~ **January 2**, ~~2024~~**2025 at** ~~5:00~~**11:59 p.m.**
5  ~~(prevailing~~ **Pacific** ~~time)~~**Time.** Objections must be served upon (i) Counsel to the Proponent,
6  Foster Garvey PC, 111 Third Avenue, Suite 3000, Seattle, Washington 98101-3296, attn:
7  Deborah A. Crabbe, Esq., and Kriss & Feuerstein LLP., 360 Lexington Avenue, Suite 1200, New
8  York, New York 10017 – Attn: Jerold C. Feuerstein, Esq., Daniel N. Zinman, Esq. & Stuart L.
9  Kossar, Esq. and (ii) The Office of the United States Trustee, 700 Stewart Street, Suite 5103,
10 Seattle, Washington 98101, and be filed electronically in accordance with the Bankruptcy
11 Court's ECF procedures.

12                          **REQUIREMENTS FOR CONFIRMATION**

13      At the Confirmation Hearing, the Bankruptcy Court will determine whether the
14 requirements of Section 1129 of the Bankruptcy Code have been satisfied, in which event the
15 Bankruptcy Court will enter an order confirming the Plan. These requirements include
16 determinations by the Bankruptcy Court that: (i) the Plan has classified Claims and Interests in a
17 permissible manner, (ii) the contents of the Plan comply with various technical requirements of
18 the Bankruptcy Code, (iii) the Proponent has proposed the Plan in good faith, (iv) the Proponent
19 has made disclosures concerning the Plan that are adequate and include information concerning
20 all payments made or promised in connection with the Plan and the Case, (v) the Plan is in the
21 "best interests" of all Creditors and Interest Holders; and (vi) the Plan is feasible. The Proponent
22 believes that all of these conditions have been or will be met prior to the Confirmation Hearing.

23      **Best Interest Test.** The so-called ""best interest" test requires that each impaired
24 Creditor and impaired Interest Holder either (a) accepts the Plan or (b) receives or retains under
25 the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value
26

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

such entity would receive or retain if the Debtor were to be liquidated under chapter 7 of the Bankruptcy Code.

To determine what the holders in each Class of Claims or Interest would receive if the Debtor were liquidated under Chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets in a chapter 7 liquidation case. The amount that would be available for satisfaction of Allowed Claims against and Allowed Interests in the Debtor would consist of the proceeds resulting from the disposition of the Debtor's assets, augmented by the cash held by the Debtor. Such amount would be reduced by the amount of any Claim or Claims secured by the Debtor's assets, the costs and expenses of the liquidation, and such additional Administrative Claims and Priority Claims that may result from the termination of the Debtor's business. Such value is then juxtaposed against the amount creditors are receiving under the Plan to determine if the value each impaired creditor is receiving is the same or more than such creditor would receive from a Chapter 7 liquidation on the Confirmation Date.

The costs of liquidation under Chapter 7 would become Administrative Claims with the highest priority against the proceeds of liquidation. Such costs would include the fees payable to a Chapter 7 trustee, as well as those which might be payable to attorneys, financial advisors, appraisers, accountants and other professionals that such trustee may engage to assist in the liquidation. In addition, Chapter 7 costs would include any liabilities incurred or assumed pursuant to the transactions necessary to effectuate the liquidation. Moreover, claims entitled to administrative priority may arise by reason of any breach or rejection of any executory contracts entered into by the Debtor during the pendency of the Case in chapter 11.

After satisfying Administrative Claims arising in the course of the chapter 7 liquidation, the proceeds of the liquidation would then be payable to satisfy any unpaid expenses incurred

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

during the time this Case was pending under chapter 11, including compensation for attorneys, financial advisors, appraisers, accountants and other professionals retained by the Debtor.

**Liquidation Analysis.** The Proponent has concluded that the Plan provides to each Creditor and Interest Holder a recovery with a *present value* which equals or exceeds the distribution that such person would receive if the Debtor was to be liquidated under Chapter 7 of the Bankruptcy Code. The Plan provides for the liquidation of the Debtor's assets, but avoids the additional costs and expenses that would be incurred in Chapter 7, such as trustee's fees. In addition, the Plan provides for the payment by the Proponent to General Unsecured Claims in the amount of $~~75,000 if the Proponent is the Successful Bidder with a credit bid~~77,008.96 so long as the claim at Docket 1, Schedule F at 3.312 in the amount of $255,370.97 and the Lender Unsecured Claim, if any, are waived against the Debtor. In Chapter 7, such payment to holders of General Unsecured Claims would not occur.

**Feasibility.** For the Plan to be confirmed, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor. This Plan calls for the Sale of the Debtor's Property to the Successful Bidder and for the Proponent to satisfy any shortfall in the event such Sale does not generate sufficient ~~cash~~Cash to make the payments required under the Plan. Thus, the Plan meets the feasibility requirements of the Bankruptcy Code.

## EFFECT OF CONFIRMATION

### A. Limitation of Liability

Section 1125(e) of the Bankruptcy Code, commonly referred to as the "safe harbor," protects persons acting in good faith and in compliance with the applicable provisions of the Bankruptcy Code, from civil claims arising in connection with solicitations of acceptances of plans of reorganization or participating in the offer, issuance, sale or purchase of a security under the Plan. ~~Pursuant to~~ Section ~~1125~~105(~~e~~a)~~, as~~ of the Bankruptcy Code provides that the

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

Bankruptcy Court can "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." As set forth in ~~Article 8~~section 9.2 of the Plan, neither the Proponent ~~or its nominee(s)~~and the Disbursing Agent, nor any of their respective ~~officers, directors~~managers, members, ~~general partner, managers~~nor any of their agents or employees (acting in such capacity), nor any professional person employed by ~~any of~~ them, shall have or incur any liability to any ~~entity~~Entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, prosecution, dissemination, Confirmation ~~of,~~ consummation or administration of ~~the~~this Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or the distribution of property under this Plan, or any other action taken or omitted to be taken in connection with the Case or this Plan, except ~~in the case of fraud, gross negligence,~~as may be expressly provided for in such agreements or documents, and except for willful misconduct~~,~~ ~~malpractice~~ or gross negligence, breach of fiduciary duty, criminal conduct, ~~unauthorized use~~ultra vires actions or the disclosure of confidential information that causes actual damages~~, or ultra vires acts~~. ~~Nothing contained herein shall limit the liability of professionals pursuant to.~~ In addition, any release exculpation or limitation of liability provided for in this Plan shall not release any attorney from any obligations owed under Rule 1.8(h)~~(1)~~ of the Washington State Rules of Professional Conduct. ~~From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any claim or liability released to the extent provided by Article 9 of the Plan~~ for malpractice liability.

**B.    INJUNCTION**

Except (i) as otherwise provided in ~~this~~the Plan, (ii) as otherwise provided under a Final Order entered by the Bankruptcy Court, or (iii) with respect to the Debtor's and/or ~~Proponents'~~Proponent's obligations under ~~this~~the Plan, the entry of the Confirmation Order (and, if necessary, an order approving the Sale of the Property and the Property Causes of Action) shall forever stay, restrain and permanently enjoin on and after the Confirmation Date: (a) the

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from any property of the Estate, including the Property and the Property Causes of Action sold under ~~this~~the Plan (~~except to the extent such Property is sold subject to the Proponent's lien and~~ except if the purchaser of the Property is the Lender with a credit bid, in which case the Property is transferred subject to the Walsh Lien); or (b) the creation, perfection or enforcement of any lien or encumbrance against any property of the Estate, including the Property sold under ~~this~~the Plan (~~except to the extent such Property is sold subject to the Proponent's lien and~~ except if the purchaser of the Property is the Lender with a credit bid, in which case the Property is transferred subject to the Walsh Lien).  Since ~~this~~the Plan provides for the liquidation of all or substantially all of the property of the Estate, the Confirmation of the Plan will not result in a discharge of the Debtor's pre-Petition Date Claims.

~~Except as otherwise provided in the Confirmation Order, the entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset, from the Debtor, Proponent or from the Property or property of the Estate, any claim, obligation or debt that was held by any person or entity as of the Effective Date except pursuant to the terms of the Plan.~~

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

C. **Plan and Confirmation Order as** R̶ELEASE̶

Except (i) as otherwise provided in the Plan, (ii) as otherwise provided under a Final Order entered by the Bankruptcy Court, or (iii) with respect to the Debtor's obligations under this Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin on and after the Confirmation Date: (a) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the any property of the Estate, including the Property sold under this Plan (except to the extent such Property is sold subject to the Proponent's lien and except if the purchaser of the Property is the Lender with a credit bid, in which case the Property is transferred subject to the Walsh Lien); or (b) the creation, perfection or enforcement of any lien or encumbrance against any property of the Estate, including the Property sold under this Plan (except to the extent such Property is sold subject to the Proponent's lien and except if the purchaser of the Property is the Lender with a credit bid, in which case the Property is transferred subject to the Walsh Lien). Since this Plan provides for the liquidation of all or substantially all of the property of the Estate, the Confirmation of the Plan will not result in a discharge of the Debtor's pre-Petition Date Claims.

C.

D̶.̶ The Plan provides that the Debtor, its members, and anyone purporting to act or acting on their behalf, shall release and discharge Proponent (or its assignee, designee or nominee if it is the Successful Purchaser), its respective predecessors and successors-in-interest, including all shareholders, assigns, affiliates, partners, officers, directors, from all, any and all actions, causes of action, controversies, liabilities, obligations, rights, suits damages, judgments, claims, and demands whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertible directly or derivatively, existing or hereafter arising, in law, equity, or otherwise, other than from the obligations of Proponent (or its assignee, designee, or nominee) under the Plan, the Confirmation Order and any order(s) of this Court with respect to the Sale of the Property.

### ALTERNATIVES TO THE PLAN

If the Plan is not confirmed by the Bankruptcy Court the alternatives may include (a) liquidation of the Debtor under chapter 7 of the Bankruptcy Code or (b) the formulation, promulgation and confirmation or an alternative plan of reorganization involving a sale to a different purchaser; or (c) the dismissal of the Debtor's case.

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

1   The Proponent believes that the Plan provides a recovery to all Creditors and Interest

2   Holders equal to or greater than would be obtainable in chapter 7 liquidation or foreclosure sale

3   and believes that the Plan enables Creditors to realize the most value under the circumstances.

4   The Proponent reserves its right to file an amended plan and/or disclosure statement.

5   CERTAIN FEDERAL INCOME TAX CONSEQUENCES

6   The following summary of certain U.S. Federal income tax consequences is for

7   informational purposes only and is not a substitute for careful tax planning and advice based upon

8   the particular circumstances pertaining to each holder of an Allowed Claim. Each holder of an

9   Allowed Claim is urged to consult his own tax advisors. This summary does not cover all

10  potential U.S. federal income tax consequences that could possibly arise under the Plan and does

11  not address the Plan's U.S. federal income tax consequences for any holder of an Allowed Claim

12  that is a partnership (or other pass-through entity) or otherwise subject to special tax rules.

13  The Proponent has not requested any ruling from the Internal Revenue Service or any

14  other taxing authority with respect to such matters nor will the Proponent, with respect to the

15  federal income tax consequences of the Plan, obtain any opinion of counsel.  Consequently, there

16  can be no assurance that the treatment set forth in the following discussion will be accepted by

17  the IRS.  The Proponent offers no statements or opinions that are to be relied upon by the creditors

18  as to the treatment of creditors' claims under the Plan.  Matters not discussed in this Disclosure

19  Statement may affect the tax consequences of the Plan on any particular holder of a Claim or

20  Equity Interest

21  This summary is based upon the laws in effect on the date of this Disclosure Statement

22  and existing judicial and administrative interpretations thereof, all of which are subject to change,

23  possibly with retroactive effect. Holders of Allowed Claims should consult their own tax advisors

24  as to the Plan's specific federal, state, local and foreign income and other tax consequences.

25  The tax consequences to Creditors and Interest Holders will differ and will depend on

26  factors specific to each Creditor or Interest Holder, including but not limited to: (i) whether the

AMENDED DISCLOSURE STATEMENT- 39

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

1 Claim or Interest (or portion thereof) constitutes a claim for principal or interest; (ii) the origin

2 of the Claim or Interest; (iii) the type of consideration received by the Creditor or Interest Holder

3 in exchange for the Claim or Interest; (iv) whether the Creditor or Interest Holder is a United

4 States person or foreign person for tax purposes; (v) whether the Creditor or Interest Holder

5 reports income on the accrual or cash basis method; and (vi) whether the Creditor or Interest

6 Holder has taken a bad debt deduction or otherwise recognized loss with respect to a Claim or

7 Interest.

8       **THERE ARE MANY FACTORS WHICH WILL DETERMINE THE TAX**

9 **CONSEQUENCES TO EACH CREDITOR OR INTEREST HOLDER.**

10 **FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX, AND**

11 **IN SOME CASES, UNCERTAIN. THEREFORE, IT IS IMPORTANT THAT EACH**

12 **CREDITOR OR INTEREST HOLDER OBTAIN HIS, HER OR ITS OWN TAX ADVICE**

13 **REGARDING THE TAX CONSEQUENCES TO SUCH CREDITOR OR INTEREST**

14 **HOLDER AS A RESULT OF THE PLAN.**

15       **THE DISCUSSION HEREIN IS NOT INTENDED OR WRITTEN TO BE USED,**

16 **AND CANNOT BE USED, BY ANY CREDITOR OR INTEREST HOLDER FOR THE**

17 **PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON A TAX**

18 **PAYER. THE DISCUSSION HEREIN WAS WRITTEN TO SUPPORT THE**

19 **TRANSACTIONS DESCRIBED IN THIS DISCLOSURE STATEMENT. EACH**

20 **CREDITOR OR INTEREST HOLDER SHOULD SEEK ADVICE BASED UPON THE**

21 **CREDITOR'S OR INTEREST HOLDER'S PARTICULAR CIRCUMSTANCES FROM**

22 **AN INDEPENDENT TAX ADVISOR.**

23       **ADDITIONAL INFORMATION**

24      Requests for **information** and additional copies of this Disclosure Statement and the

25 other materials delivered together herewith and all deliveries, correspondence and questions, as

26 the case may be, relating to the Plan should be directed to:

AMENDED DISCLOSURE STATEMENT- 40

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

| | | |
|---|---|---|
| 1 | (i) Counsel to the Proponent: | Foster Garvey PC, |
| 2 | | 1111 Third Avenue, Suite 3000, |
| | | Seattle, Washington 98101-3296, |
| 3 | | Attn: Deborah A. Crabbe, Esq., and |
| 4 | | Kriss & Feuerstein LLP., |
| 5 | | 360 Lexington Avenue, Suite 1200, |
| | | New York, New York 10017 |
| 6 | | Attn: Jerold C. Feuerstein, Esq., |
| | | Daniel N. Zinman, Esq. |
| 7 | | Stuart L. Kossar, Esq., and/or |
| 8 | (ii) The U.S. Trustee: | Office of the United States Trustee, |
| | | 700 Stewart Street, Suite 5103, |
| 9 | | Seattle, Washington 98101 |

10     Documents submitted in these cases are on file in the Office of the Clerk of the United States

11     Bankruptcy Court, Western District of Washington, 700 Stewart Street, Suite 6301, Seattle,

12     Washington 98101, and are ordinarily available for public inspection Monday through Friday,

13     between the hours of 8:30 a.m. and 4:30 p.m.

14     DATED this ~~10~~19th day of ~~October~~November, 2024.

15

16     **FOSTER GARVEY P.C.**

16     By: */s/ Deborah A. Crabbe*

17         Deborah A. Crabbe, WSBA #22263

17         1111 Third Avenue, Suite 3000

18         Seattle, WA 98101

18         Telephone: (206) 447-5325

19         Email: deborah.crabbe@foster.com

19

20     *Attorneys for Pivot Apartment Lenders, LLC*

21     **KRISS & FEUERSTEIN LLP**

22

23     By:*/s/ Jerold C. Feuerstein*

23         Jerold C. Feuerstein, Esq., Pro Hac Vice

24         Daniel N. Zinman, Esq., Pro Hac Vice

24         360 Lexington Avenue, 12th Floor

25         New York, New York 10017

25         Telephone: (212) 661-2900

26         Email: jfeuerstein@kandfllp.com

26                 dzinman@kandfllp.com

AMENDED DISCLOSURE STATEMENT- 41

1                        *Attorneys for Pivot Apartments Lender LLC*

# Exhibit A

| | |
|---|---|
| In re: | Case No. 24-10088-~~MLB~~CMA |
| B-1208 PINE, LLC, | **BID PROCEDURES** |
| Debtor. | |

### BID PROCEDURES

The following bid procedures (the "Bid Procedures"), which were approved by an order [ECF No. _____] (the "Bid Procedures Approval Order") for the United States Bankruptcy Court for the Western District of Washington (the "Bankruptcy Court") dated November __, 2024 in the above captioned bankruptcy case of B-1208 Pine, LLC (the "Debtor"), shall govern the auction and sale of the real property and related fixtures (and the Property Causes of Action) commonly known as the Pivot Apartments, located at 1208 Pine Street, Seattle, Washington (the "Property"), described in that certain *Pivot Apartment Lender LLC's Amended Plan of Liquidation for the Debtor* filed in the Debtor's bankruptcy case (the "Plan") (ECF No. ___),[1] proposed and filed by Pivot Apartment Lender LLC (the "Lender" or the "Proponent"), a secured creditor of the Debtor. The Proponent is seeking confirmation of the Plan at a confirmation hearing scheduled to begin on ~~_____~~ January 9, 2025 at ~~_:00~~1:30 p.m. Following the auction, which shall take place

---

[1] All capitalized terms not defined herein shall have the definition set forth in the Plan.

BID PROCEDURES - 1

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

FG: 103107239.3

following the confirmation of the Plan, the Proponent will seek entry of an order from the Bankruptcy Court authorizing and approving the Sale of the Property free and clear of liens, claims, encumbrances, and interests (subject to certain exceptions listed in paragraph B(ii) and B(iii) below), to the Successful Bidder (as defined below) as may be made at the Auction (as defined below).

A. <u>Approvals</u>. The proposed sale shall in all respects be subject to approval by the Bankruptcy Court (including confirmation of the Plan) and in compliance with (i) the applicable provisions of the Bankruptcy Code, (ii) the Bankruptcy Rules, and (iii) other applicable rules and law.

B. <u>Assets to be Sold</u>. The assets to be sold shall consist of the Property, which will be sold as provided herein:

(i)    The sale (the "<u>Sale</u>") of the ~~Properties~~Property will be auctioned by Eastdil Secured or such other broker to whom Proponent and the Debtor agree (the "<u>Broker</u>") or its affiliates or agents, who has been ~~previously~~ retained by the ~~Debtors~~the Debtor as ~~their~~its exclusive broker. Such sale shall be free and clear of liens, claims, encumbrances and interests, except as provided in B.(ii) and (iii) below.

~~(ii) All unexpired leases and executory contracts (if any) shall be rejected unless the non-residential Successful Bidder files an assumption notice on or prior to the Effective Date of the Plan, as provided in section 5.1 of the Plan. Bidders should note that even if an unexpired lease is rejected, the lessee retains certain rights, including its rights under 11 U.S.C. § 365(h), which may include the right of the lessee to "retain its rights under such lease (including rights such as those relating to the amount and timing of payment of rent and other amounts payable by the lessee and any right of use, possession, quiet enjoyment, subletting, assignment,~~

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

FG: 103107239.3

~~or hypothecation) that are in or appurtenant to the [Properties] for the balance of the term of such lease and for any renewal or extension of such rights to the extent that such rights are enforceable under applicable nonbankruptcy law." 11 U.S.C. § 365(h)(1)(A)(ii). All residential leases from the Debtor to lessee occupied residences (as opposed to entities that sublease the residence to others) will be assumed and assigned to the successful bidder.~~

(i)    ~~(iii)  Under section 6.1(a) of the Plan, the Successful Bidder may take the Properties subject to the Proponent's mortgage which would be assigned to a lender to the Successful Bidder.~~

C.    <u>Sale As Is, Where Is</u>.  The Property shall be sold as is, where is, without any representation or warranty of any type whatsoever.

D.    <u>Qualification of Bidders</u>.  Any potential bidder, other than the Lender (or its nominee(s), designee(s) or assignee(s)), who is already a qualified bidder (the "<u>Secured Creditor</u>"), who wishes to submit a bid with respect to the Property must demonstrate to the satisfaction of the Broker and the Proponent that such potential bidder is a "Qualified Bidder." A Qualified Bidder is a potential bidder who delivers to the Broker a written and signed, binding offer **on or before the Bid Deadline** (as defined below) that:

(i)    is a bid for the Property in its entirety for a cash price equal to or greater than $~~           ~~33,000,000, which can be lowered by the Broker and the Proponent, with notice given by the Broker to all interested parties;

(ii)    states that the bidder is prepared to enter into a legally binding purchase and sale agreement ("<u>PSA</u>") for the acquisition of the applicable Property or Properties on terms and conditions reasonably acceptable to the Proponents and the Broker (as determined by the Proponents and the Broker in their

BID PROCEDURES - 3

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

FG: 103107239.3

reasonable business judgment), including by marking up the PSA, which will be provided to the Bidder at least 14 days prior to the Bid Deadline, to indicate what the Bidder would be willing to execute;

(iii)   states the bidder's offer is irrevocable, and not contingent;

(iv)   does not request or entitle the bidder to any transaction or break-up fee, expense reimbursement or similar type of payment;

(v)   fully discloses the identity of each entity that will be bidding for the Property (the "Potential Bidder") or otherwise participating in connection with such bid on behalf of the Potential Bidder, the terms of any such participation (including if the Potential Bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by the bid, the equity holder or other financial backer), the Potential Bidder's address, telephone number and email address where the bidder may be contacted;

(vi)   is accompanied by evidence that a good faith deposit in the amount of 10% (the "Good Faith Deposit"), in immediately available funds, has been made (or is concurrently being made) by wire transfer to a title company to be chosen by the Lender that will be identified to all interested potential bidders in advance of the Bid Deadline, as escrow agent (the "Escrow Agent"), pursuant to wire instructions to be provided by the Broker and/or the Escrow Agent, and acknowledges that the Good Faith Deposit shall be held by the Escrow Agent in a non-interest bearing, segregated, account of the Escrow Agent for the ~~Debtors~~Debtor's estate in accordance with the terms hereof;

BID PROCEDURES - 4

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

FG: 103107239.3

(vii)  states that the bidder is financially capable of consummating the transaction contemplated by the bidder's bid and any increased or modified bid that may be made at the Auction;

(viii)  is accompanied by financial information satisfactory to the Broker that fairly and reasonably demonstrates the Potential Bidder's ability (and the sources of the Potential Bidder's ability) to close on its purchase of the Properties if the Potential Bidder should be the Successful Bidder (as defined below), in an amount at least as much as its bid as necessary to consummate the transaction contemplated by the bidder's bid and any increased or modified bid that may be made at the Auction;

(ix)  includes an executed original of these Bid Procedures acknowledging and agreeing to these Bid Procedures and all the terms thereof, including the following:

1.  If the Potential Bidder is a partner, officer, director, stockholder, agent, employee, insider or affiliate of the Debtor, the Debtor's principal(s), the Broker or any relative of any of the foregoing, such a Potential Bidder must so disclose the exact nature of its relationship with the foregoing entities;

2.  the Potential Bidder relied solely on its own independent investigation, analysis, appraisal, and evaluation of the Property and it did not rely upon and did not receive any written or oral statements, representations, warranties, promises or guarantees whatsoever, whether express or implied or by operation of law or otherwise, with respect to the Property; and

BID PROCEDURES - 5

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

FG: 103107239.3

3.  the Potential Bidder's bid is irrevocable until the earlier of the Closing Date (as defined herein) or until its bid is affirmatively rejected;

(x)  includes evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of a PSA, if applicable;

(xi)  States that the Potential Bidder is not an "Insider" (as that term is defined under the Bankruptcy Code) of either or both of the Debtors Debtor; and

(xii)  contains other information reasonably requested by the Proponent and/or Broker.

A competing bid meeting the above requirements shall constitute a "Qualified Bid". The Broker shall make a determination regarding whether a bid is a Qualified Bid and shall notify bidders whether their bids have been determined to be qualified by no later than 4:00 p.m. three business days prior to the date of the applicable Auction.

E.  Buyer's Premium. Consistent with the retention agreement between the Debtor and the Broker approved by the Bankruptcy Court in an order, the Buyer's Premium shall be the amount of the Broker's expenses approved by the Bankruptcy Court and: (1) $50,000 to be paid by the Lender (or its designee, assignee or nominee), if the Lender or its nominee, designee or assignee is the Successful Bidder (or the Back-up Bidder if the sale closes with the Back-up Bidder) at the auction and closes on its purchase of the Property; or (2) 0.75% of the gross sales sale price of the Property. Gross sales sale price shall include, without limitation, any cash consideration paid or payable in connection with a sale, the then outstanding principal balances of any mortgages or deed of trust constituting a lien on the

BID PROCEDURES - 6

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

FG: 103107239.3

Property assumed, or to which the Property is taken subject, by the purchaser, the face amount of any seller financing provided by the Lender and the fair market value of all other consideration payable (including, without limitation, insurance proceeds) in connection with the sale of the Property, without deduction for closing expenses, adjustments or costs of any kind. For purposes of calculating fair market value, any securities constituting a part of such consideration that are publicly traded shall be valued at the last closing price thereof (or, if applicable, the mean between the latest bid and asked prices) prior to the date of the consummation of the acquisition; non-publicly traded securities or other assets shall be valued at their fair market value as determine by agreement among the purchaser, the Lender and the Broker. Any Buyer's Premium payable must be paid to the Broker at closing.

F.    Deposits Following Auction. Subject only to Section (E) hereinabove, if the Potential Bidder becomes the Successful Bidder as to the Property, it shall, within two (2) business days after the Auction, increase the Deposit as necessary to an amount equal to ten (10%) percent of (i) the final bid at the Auction, plus (ii) the Buyer's Premium (not counting to be approved expenses), within 48 hours of the Auction TIME BEING OF THE ESSENCE. Failure to comply with this requirement shall result in an immediate (i) default under the terms of these Bid Procedures; and (ii) forfeiture of the Successful Bidder's Deposit. If a Potential Bidder is not the Successful Bidder or the Back-up Bidder (as defined below) as to the Property, such Potential Bidder's Deposit shall be returned to such Potential Bidder within 5 business days after the conclusion of the Auction. The Successful Bidder and Back-up Bidder's Deposits shall be held pending the closing. If the Sale to the Successful Bidder closes as to the Property, the Back-up Bidder's Deposit for the Property shall be returned within 5 business days of such closing.

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

FG: 103107239.3

G. <u>Closing Deadline</u>. The Successful Bidder shall close on the purchase of the Property within 30 days of the Auction of the Property, TIME BEING OF THE ESSENCE. The obligation to close is contingent on the Bankruptcy Court entering an order approving the Sale of such Property to the Successful Bidder; provided, however, that the Closing Date may take place on such other date as the Proponent and the Successful Bidder may mutually agree to in writing, or on such other date as may otherwise be directed by Order of the Bankruptcy Court (such date, the "<u>Closing Date</u>"), with TIME BEING OF THE ESSENCE AS TO THE SUCCESSFUL BIDDER'S OBLIGATION TO CLOSE ON THE CLOSING DATE AND TO PAY THE BALANCE OF THE PURCHASE PRICE AT THE CLOSING. The Proponents will use their reasonable best efforts to obtain an order of the Bankruptcy Court approving each sale and a finding of good faith and non-collusive behavior of such sale pursuant to Section 363(m) and (n) of the Bankruptcy Code within two weeks of the completion of the Auction. The Successful Bidder and the Back-up Bidder will file any affirmation or similar document (with exhibits if necessary) that the Bankruptcy Court or the Proponent requires to enable the Proponent to obtain such an order from the Bankruptcy Court within two (2) business days of the Auction, TIME BEING OF THE ESSENCE.

H. <u>The Lender as a Qualified Bidder</u>. Notwithstanding anything herein to the contrary, the Lender or its nominee, designee or assignee is a Qualified Bidder and, although under no obligation to do so, is entitled to credit bid jointly up to and including the total Allowed amount of its claim as of the Auction Date for the Property pursuant to 11 U.S.C. § 363(k), without the need for any deposit or fulfilling the other requirements for a Potential Bidder to be a Qualifying Bidder, and, although under no obligation to credit bid more than the minimum bid amount set forth in the Bid

BID PROCEDURES - 8

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

FG: 103107239.3

Procedures.  In the event there are no other bidders for the Property other than the Lender (or its nominee(s), designee(s) or assignee(s)), the amount of such credit bid shall be the minimum bid amount set forth in the Bid Procedures.

I.  Bid Deadline.  **All Qualified Bids for the Property must be submitted on or before _____ April 30, 2025 (the "Bid Deadline")** unless extended by the Proponent in its discretion with notice to be provided to all parties that have expressed serious interest (as determined by the Broker) in potentially bidding on the Property**.**  On or prior to the Bid Deadline, Qualified Bidders shall deliver written copies of their bids to:  (1) the Broker; and (2) counsel to the Lender, Kriss & Feuerstein, LLP, 360 Lexington Avenue, Suite 1200, New York, NY 10017, Attn: Jerold C. Feuerstein, Esq., Jerold C. Feuerstein, Esq. and Daniel N. Zinman, Esq. with a copy to the following email addresses: jfeuerstein@kandfllp.com and dzinman@kandfllp.com.

J.  Auction.  In the event that the Broker and the Proponent receive before the Bid Deadline one or more bids that the Proponent and the Broker deem in their discretion to constitute Qualified Bids (other than by the Lender (or its nominee, designee or assignee)) as to the Property, the Broker shall conduct an auction with respect to the Property (the "Auction"). The Auction shall take place on _____ \_\_\_May 5, 2025 at \_\_:00 10:00 a.m. (prevailing Pacific time) for the Property (the "Auction Time") at the Property or such other place and time as the Broker shall notify all Qualified Bidders, the Debtor, the Proponent, and other invitees via e-mail or facsimile not later than one (1) business day before the Auction Time (or re-scheduled Auction Time, as applicable); provided, however, that the Broker may designate the Auction as an on-line auction and provide each Qualified Bidder with the appropriate instructions to participate in same, if the Broker deems it necessary

BID PROCEDURES - 9

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

FG: 103107239.3

or advisable, in the Broker's sole and absolute discretion. If, however, no such other Qualified Bid is received by the Bid Deadline with respect to the Property, then the Auction will not be held as to the Property, and the Broker shall so notify the Proponent no later than one (1) business day after the applicable Bid Deadline and the Proponent shall proceed to seek approval of the Bankruptcy Court of the sale of such Property to the Lender (or its nominee, designee, or assignee) based on the Lender's credit bid. The Auction shall be governed by the following procedures:

(i)     Only authorized representatives and respective counsel of each of the Qualified Bidders, the Proponent, the Debtor, and the Broker shall be permitted to attend and participate at the Auction, unless otherwise agreed to by the Broker in its sole discretion;

(ii)    Only the Lender (or its nominee(s), designee(s) or assignee(s)) and other Qualified Bidders shall be entitled to make any subsequent bids at the Auction;

(iii)   The Lender (or its nominee(s), designee(s) or assignee(s)) and each other Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

(iv)    Bidding shall commence at the amount of the highest and best Qualified Bid submitted by the Qualified Bidders by the Bid Deadline;

(v)     The Broker shall have the exclusive right to set the bidding increments;

(vi)    The Lender (or its nominee(s), designee(s) or assignee(s)), the Debtor, and other Qualified Bidders shall participate in person at the Auction (or through a method designated by Broker, including physically present or present

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

FG: 103107239.3

through electronic means, such as Zoom), through a duly authorized representative with authority to bind the entity;

(vii) The Auction will be conducted so that the Lender (or its nominee(s), designee(s) or assignee(s)), and each other Qualified Bidder will be informed of the previous bid;

(viii) The Auction shall continue until there is only one final offer for the Property that the Broker determines, subject to Bankruptcy Court approval, is the highest and best offer submitted at the Auction from among the Lender (or its nominee(s), designee(s) or assignee(s)) and the other Qualified Bidders (the "Successful Bid"). The bidder submitting such Successful Bid shall become a "Successful Bidder" as to the Property and shall have such rights and responsibilities set forth herein, in the applicable Plan and in the PSA;

(ix) At the end of the Auction, the Broker shall also announce the next highest and otherwise best offer after the Successful Bid (the "Next Highest Bid," and the Qualified Bidder that submitted such bid, the "Next Highest Bidder");

(x) The Proponent reserves the right to seek approval of the Next Highest Bid as a back–up bid and may seek approval at the Sale Hearing to close the Sale to the Next Highest Bidder if the Successful Bidder fails to close for any reason or if it otherwise fails to satisfy any requirements hereof or of the PSA;

(xi) if the Next Highest Bidder is determined by the Broker to have submitted the Next Highest Bid, or next best bid (the "Next Best Bid") at the Auction, it will be considered a back-up bid (the "Backup Bid") and, the Next Highest Bidder, therefore, to be designated the back-up bidder (the "Back-

BID PROCEDURES - 11

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400 FAX (206) 447-9700

FG: 103107239.3

up Bidder"), who shall be notified in writing that the Proponent has determined to proceed with the Back-up Bid after default by the Successful Bidder, the Potential Bidder shall close on the purchase of the Property on the Back-up Closing Date (as hereinafter defined), with TIME BEING OF THE ESSENCE AS TO THE BACK-UP BIDDER'S OBLIGATION TO CLOSE AND TO PAY THE BALANCE OF THE PURCHASE PRICE ON THE BACK-UP CLOSING DATE;

(xii)    if (a) a Qualified Bidder is a Successful Bidder as to the Property, the Deposit as to the Property shall become non-refundable and shall be forfeited by the Successful Bidder as liquidated damages in the event the Successful Bidder shall fail to close the purchase of the Property on the Closing Date, except as otherwise expressly permitted under the PSA entered into between Debtor (or the Proponent on behalf of Debtor) and the Successful Bidder; and (b) if the Proponent and the Broker determine to proceed with the Back-up Bid after default by the Successful Bidder, the applicable Deposit shall become non-refundable and shall be forfeited by such Back-up Bidder as liquidated damages if the Back-up Bidder shall fail to close the purchase of such Properties on the Backup Closing Date (as defined below), except as otherwise expressly permitted under the PSA entered into between Debtor (or the Proponent on behalf of ~~Debtors~~Debtor) and such Back-up Bidder.

(xiii)   If both the Successful Bidder and the Back-up Bidder as to a Property fail to timely close and if the Lender is neither the Successful Bidder or the Back-up Bidder with respect to such Property, the Debtor (or the Proponent

BID PROCEDURES - 12

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

FG: 103107239.3

on behalf of the Debtor, as provided in the Plan) shall be authorized to close with the Lender on a credit bid.

(xiv) <u>Closing on Back-up Bid</u>.  If for any reason the Successful Bidder shall fail to close the sale of the Property timely, and the Proponent determines to proceed with the Back-up Bid, the Back-up Bidder shall close on the purchase of the Property and pay the amount of the Back-up Bid, less its Deposit previously posted, on the later of the Closing Date and twenty one (21) days after written notice of the Successful Bidder's default in closing (the "<u>Back-up Closing Date</u>"), with TIME BEING OF THE ESSENCE AS TO THE BACK-UP BIDDER'S OBLIGATION TO CLOSE ON THE BACK-UP CLOSING DATE AND TO PAY THE BALANCE OF THE PURCHASE PRICE AT THE CLOSING.  In any case, the Proponent has until 80 days after the Auction to determine to proceed with the Back-up Bid.  If the Proponent proceeds with such Back-up Bid, then the Back-up Bidder shall be obligated to close title to the Property and there shall be no contingency of any kind or nature that will permit the Back-up Bidder not to proceed on the Back-up Closing Date other than the inability of Debtor (or the Proponent on behalf of Debtor) to deliver title to the Property.  In the event the Back-up Bidder shall be obliged, but shall fail, to close purchase of the Property timely in accordance with the provisions of the PSA entered into between Debtor (or the Proponent on behalf of Debtor) and the Back-up Bidder, the Back-up Bidder shall be in default, and the Back-up Bidder shall forfeit its Deposit.

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3296
PHONE (206) 447-4400  FAX (206) 447-9700

FG: 103107239.3

# Exhibit B

| | |
|---|---|
| In re: | Chapter 11 |
| B-1208 PINE, LLC, | Case No. 24-10088-CMA |
| Debtor. | |

**BALLOT FOR ACCEPTING OR REJECTING PIVOT APARTMENT LENDER LLC'S
PLAN OF LIQUIDATION FOR THE DEBTOR**

> **THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS ~~DECEMBER~~
> ~~——~~ JANUARY 2, ~~2024~~2025 AT 5:00 P.M. (PREVAILING PACIFIC TIME). YOUR
> BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THIS DEADLINE TO BE
> COUNTED.**

 This ballot (the "Ballot") is submitted to you to solicit your vote to accept or reject the Pivot Apartment Lender LLC's (the "Proponent") Plan of Liquidation (including all exhibits thereto and as the same may be amended, modified or supplemented from time to time, the "Plan") for the above captioned debtor and debtor in possession (the "Debtor") submitted by the Proponent, and described in the related Disclosure Statement for the Plan (including all exhibits thereto and as amended or supplemented from time to time, the "Disclosure Statement") which has been approved by the United States Bankruptcy Court for the Western District of Washington (the "Bankruptcy Court"). The Disclosure Statement provides information to assist you in deciding how to vote your Ballot. If you do not have a Disclosure Statement, you may obtain a copy by contacting the Proponent's counsel at Kriss & Feuerstein LLP, 360 Lexington Ave, Suite 1200, New York, New York 10017, Attn: Jerold C. Feuerstein, Esq., email: jfeuerstein@kandfllp.com, Daniel N. Zinman, Esq., dzinman@kandfllp.com.

 Copies of the Disclosure Statement are also available for inspection during regular business hours at the Office of the Clerk of the U.S. Courthouse, 700 Stweart Street, Seattle, Washington 98101 and may be viewed for a fee on the internet at the Bankruptcy Court's website (http://www.wawb.uscourts.gov/) by following the directions for accessing the ECF system on such website. You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Capitalized terms used in this Ballot or the attached instructions but not otherwise defined herein have the meanings given to them in the Plan.

The Plan may be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of the least two-thirds in amount and more than one-half in number of the Claims in each Impaired Class which is entitled to vote on the Plan and so votes, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) of Title 11 of the United States

Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

**PLEASE COMPLETE ITEM 1 BELOW. IF THIS BALLOT IS NOT SIGNED ON THE APPROPRIATE LINE, THIS BALLOT WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1. Class Vote.** The undersigned, a holder of a claim in **Class(es)** _____ as of the Voting Record Date established by the Bankruptcy Court, in the amount set forth below, votes to (check one box):

        ___ **Accept** the Plan           ___ **Reject** the Plan

Voting Amount: _____

Taxpayer Identification Number: _____

**Item 2. Acknowledgments.** By signing this Ballot, the undersigned acknowledges receipt of the Disclosure Statement and the other applicable solicitation materials and certifies that the undersigned is the claimant or has the power and authority to vote to accept or reject the Plan on behalf of the claimant. The undersigned understands that an otherwise properly completed and executed and timely returned Ballot that does not indicate either an acceptance or a rejection of the Plan or indicates both an acceptance and a rejection of the Plan, will not be counted.

_____
Name of Creditor

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

FG: 103125919.1

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING BALLOT

1.      In the boxes provided in Item 1 of the Ballot, please indicate either your acceptance or rejection of the Plan. Complete the Ballot by providing all of the information requested and sign, date and return the original, signed Ballot to the Proponent's counsel to: Kriss & Feuerstein LLP., 360 Lexington Avenue, Suite 1200, New York, New York 10017 – Attn: Jerold C. Feuerstein, Esq, Daniel N. Zinman, Esq.

2.      Ballots (with original signatures) must be received by the Proponents' counsel on or before ~~December, 2024~~January 2, 2025 at 5:00 p.m. (prevailing Pacific Time) (the "<u>Voting Deadline</u>"). If a Ballot is received after the Voting Deadline, it will not be counted. <u>Ballots submitted by Facsimile, email or other electronic transmission will not be counted, except as permitted in writing in the Proponent's sole discretion</u>. If neither the "Accept" nor the "Reject" box is ~~hecked~~checked in Item 1 for an otherwise properly completed and executed and timely returned Ballot, the Ballot will not be counted.

3.      **Please complete and return the Ballot you receive.** Your claims in each Class will be aggregated for voting purposes and you shall have one (1) vote in the aggregated amount. Please specify the Class(es) of Claims in which you are voting. If you happen to receive more than one Ballot on account of your Claims, you must vote all of your Claims under the Plan either to accept or to reject the Plan. Accordingly, if you return more than one Ballot voting different Claims under the Plan and the Ballots are not voted in the same manner, those Ballots will not be counted. An otherwise properly completed and executed and timely returned Ballot that attempts to partially accept and to partially reject the Plan likewise will not be counted.

4.      In the event you are the holder of a Claim, your Claim has been **temporarily allowed solely for purposes of voting** to accept or to reject the Plan in accordance with certain tabulation rules (the "<u>Tabulation Rules</u>") approved by the Bankruptcy Court. The Tabulation Rules are set forth in the Disclosure Statement Order. The temporary allowance of your Claim for voting purposes does not constitute an allowance of your Claim for purposes of distribution under the Plan and is without prejudice to the rights of the Proponent in any other context (*e.g.*, the right to contest the amount or validity of any Claim for purposes of allowance under the Plan). If you wish to challenge the temporary allowance of the amount your Claim for Plan voting purposes, you must file a motion, pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure, for an order temporarily allowing your Claim in a different amount or classification for purposes of voting to accept or reject the Plan and serve such motion on the Proponents so that it is received

FG: 103125919.1

not later than ~~December~~ **January 2,** ~~2024~~**2025 at** ~~5:00~~**12:59 p.m. (prevailing Pacific Time)**. Unless the Bankruptcy Court orders otherwise, your Claim will not be counted as a vote in excess of the amount as determined in accordance with the Tabulation Rules, regardless of the amount identified in Item 1 of the Ballot. If a lesser amount is identified in Item 1 of the Ballot, your Claim will be counted as a vote in such lesser amount.

5. The Ballot does not constitute, and will not be deemed, a Proof of Claim or an assertion of a Claim of Interest.

6. If you cast more than one Ballot voting the same Claim prior to the Voting deadline, the latest received valid Ballot will supersede any and all prior Ballots.

7. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN AS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

8. PLEASE RETURN YOUR BALLOT PROMPTLY. THE PROPONENT'S COUNSEL WILL **<u>NOT</u>** ACCEPT BALLOTS BY FACSIMILE, EMAIL OR OTHER ELECTRONIC TRANSMISSION UNLESS PRIOR WRITTEN CONSENT IS PROVIDED BY THE PROPONENT'S COUNSEL.

9. IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE PROPONENT'S COUNSEL BY TELEPHONE AT (212) 661-2900. THE PROPONENT'S COUNSEL IS NOT AUTHORIZED TO PROVIDE, AND WILL NOT PROVIDE, LEGAL ADVICE.